Pavel I. Pogodin, Ph.D., Esq. (SBN 206441)
CONSENSUS LAW
5245 Ave Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io

Sanjay Prasad, Esq. (SBN 191230)
APPLETON LUFF
221 Main Street, #496
Los Altos, CA 94023
United States of America
Telephone: (650) 918-7647
Email: prasad@appletonluff.com

Attorneys for Plaintiff
Anatoly Sorokin

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Anatoly Sorokin,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>HDR Global Trading Limited (A.K.A. BitMEX), ABS Global Trading Limited, Arthur Hayes and Samuel Reed,<br><br>　　　　　　Defendants. | Case No. 3:21-cv-03576-WHO<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' ADMINISTRATIVE MOTION AND CROSS-MOTION FOR LEAVE TO AMEND TO CORRECT INADVERTENT INACCURACIES IN THE COMPLIANT** |

Plaintiff's counsel made several inadvertent errors of technical nature in the First Amended Complaint filed on October 7, 2021,[1] see the attached Declaration of Pavel Pogodin. Plaintiff's counsel deeply apologizes for making these inadvertent technical mistakes. As soon as Plaintiff's counsel became aware of the mistakes, he in good faith notified Defendants and asked their consent to file a short notice of errata or a corrective complaint. On the other hand, Defendants' conduct in relation to this simple request can be best described as pure trickery.

Defendants first acted as if they were about to consent to the filing of the notice of errata or a corrective compliant, in exchange for a new 35 days period to respond, tricking Plaintiff into proposing a number of additional clarifying amendments he wanted to make, See Pogodin Declaration. But once Defendants received the *draft* of the proposed Second Amended Complaint from Plaintiff, they refused to consent to the filing thereof and first threatened to use, and then actually proceeded to use it to cast doubt on the allegations of the originally filed First Amended Complaint, by filing several pages of the received *draft* with the Court and using the discrepancies to claim that the original First Amended Complaint filed on October 7, 2021 was false. The aim of this abhorrent trickery is absolutely clear – to coerce Plaintiff into making a very minor corrective amendment of largely immaterial facts "as of right" under FRCP 15(a)(1) and thereby deprive Plaintiff of the future opportunity to make the "real" substantive amendments in response to Defendants' forthcoming motion to dismiss.

### ANY TECHNICAL INACCURACIES IN THE FAC ARE IMMATERIAL

Any inadvertent inaccuracies in the First Amended Complaint are of technical nature and have no bearing on the merits of the case. The technical details that need to be corrected are well beyond "a short and plain statement of the claim showing that the pleader is entitled to relief" required under FRCP 8. Thus, those minute details, such as specific names of the swap contracts traded by Plaintiff, or direction of the market moves, are simply unnecessary for the "short and plain statement of the claim" required by the rules of pleading.

What really matters from the substantive point of view is clearly present in the filed First

---

[1] Plaintiff's counsel notified Defendants' counsel of these inadvertent errors on October 11, 2021, or four days after filing of the First Amended Complaint.

Amended Complaint. Specifically, Plaintiff obtained and included hard trading data which not simply alleges, but conclusively *proves* that Defendants lied about liquidity on their exchange being 1500% higher than competition, see First Amended Complaint, pp. 21-23. Moreover, First Amended Complaint at pp. 26-28 alleges that Plaintiff suffered damages at the time of the respective swap contract *purchases*, when Defendants overcharged Plaintiff for the "cost" of purchasing each such swap contract by using the false and fraudulent representation, promising Plaintiff to provide 1500% more liquidity than any other platform. Due to overpaying for the "costs" of purchase of the riskier swap contracts, for purchase of which Plaintiff would not have paid the amounts he paid, had he known the true facts about BitMEX liquidity, Plaintiff suffered out-of-pocket losses in the form of the aforesaid overpayment at the time he purchased each of his swap contracts. The subsequent liquidation of Plaintiff's swap contracts was a mere consequence of the higher financial risk (as well as other substantial contributing factors, such as deliberate actions of the Insider Trading Desk) associated with them, but the financial loss in the form of contract purchasing "cost" overpayment was suffered by Plaintiff at the time of the respective contract purchase. Even if the subsequent liquidation of Plaintiff's swap contracts was the consequence of the natural market forces (which it was not due to the deliberate actions of the Insider Trading Desk) Plaintiff still suffered losses in the form of the aforesaid swap contract purchase "cost" overpayment at the time the respective swap contract was purchased.

In addition, First Amended Complaint, p. 34 alleges that Defendants also used false representations to overcharge Plaintiff for trading commissions, compared with what competing exchanges charged their traders. This overcharging again does not depend on the specific contracts held by Plaintiff, the direction of the market moves and the causation of liquidations.

Therefore, it is absolutely immaterial for Defendants' liability if Plaintiff held short or long swap contracts and if the market went up or down. Irrespective of any of these factors, Plaintiff still suffered damages in the form of contract cost and trading commission overpayments at the time of contract *purchase* (and not at the time of swap *liquidations*), see First Amended Complaint, pp. 26-28, 34.

### THERE WERE NO "MULTIPLE ITERATIONS" OF COMPLAINT

At page 3 of their motion, Defendants inaccurately refer to the "multiple iterations that the complaint has gone through." This is red herring, as there was only one amendment to the compliant, pursuant to a stipulation, which resulted in the First Amended Complaint being filed on October 7, 2021. A single amendment can hardly be called "multiple iterations that the complaint has gone through."

### PLAINTIFF'S RIGHT TO AMEND UNSER FRCP 15(A)(1) SHOULD BE PRESERVED AS IT SAVES SCARCE JUDICIAL RESOURCES

The aim of Defendants' conduct, besides harassment, is very clear – to use gamesmanship and trickery to deprive Plaintiff of the important statutory right under FRCP 15(a)(1) to amend in response to Defendants' forthcoming motion to dismiss. On the other hand, this statutory right is very important for efficient administration of justice, as it streamlines litigation and permits Plaintiff to correct pleading errors identified in Defendants' motion without an intervention from the Court and without consuming scarce judicial resources. Thus, Plaintiff's right to amend as a matter of course under FRCP 15(a)(1) should not be abridged simply because Defendants tricked Plaintiff's counsel into sending them a proposed draft of the Second Amended Complaint.

### PLAINTIFF'S SHOULD BE GRANTED LEAVE TO FILE A CORRECTIVE PLEADING

Leave to amend is "freely granted when justice so requires" bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). The policy in favor of leave to amend must not only be heeded, *Foman v. Davis*, 371 U.S. 178, 182 (1962), it must be applied with "extreme liberality*," Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 712 (9th Cir. 2001).

Defendants do not oppose filing of the Plaintiff's Second Amended Compliant. Plaintiff does not oppose giving Defendants another 35 days to respond to it. Thus, the only issue is the Plaintiff's right under FRCP 15(a)(1) to amend as of course, in response to Defendants' forthcoming motion to dismiss, which should be preserved to save Honorable Court's judicial recourses. Thus, Plaintiff should be given a leave to amend to correct the identified technical inaccuracies.

A proposed Second Amended Complaint and corresponding redline are attached hereto.[2]

Dated: November 4, 2021

Respectfully submitted,

By:   /s/ Pavel I. Pogodin
      Pavel I. Pogodin

CONSENSUS LAW
Pavel I. Pogodin, Ph.D., Esq.
5245 Ave Isla Verde, Suite 302
Carolina, PR 00979
United States of America
Email: pp@consensuslaw.io
Attorneys for Plaintiff

---

[2] Additionally, Plaintiff intends to add claims for damages and attorney fees under CLRA, once 30 days pass from the date of the service of the corresponding notice on Defendants, which was on October 12, 2021. Thus, Plaintiff respectfully requests until November 12, 2021 to file the Second Amended Complaint.