1   Stephen D. Hibbard (State Bar No. 177865)
    sdhibbard@jonesday.com
2   Matthew J. Silveira (State Bar No. 264250)
    msilveira@jonesday.com
3   Eric Tung (State Bar. No. 275063)
    etung@jonesday.com
4   Dennis F. Murphy, Jr. (State Bar No. 301008)
    dennismurphy@jonesday.com
5   JONES DAY
    555 California Street, 26th Floor
6   San Francisco, CA  94104
    Telephone:    +1.415.626.3939
7   Facsimile:    +1.415.875.5700

8   Attorneys for Defendants
    HDR GLOBAL TRADING LIMITED and ABS
9   GLOBAL TRADING LIMITED

10  Peter I. Altman (State Bar No. 285292)
    paltman@akingump.com
11  Marshall L. Baker (State Bar No. 300987)
    mbaker@akingump.com
12  Jessica H. Ro (State Bar No. 329737)
    jro@akingump.com
13  AKIN GUMP STRAUSS HAUER & FELD LLP
    1999 Avenue of the Stars, Suite 600
14  Los Angeles, CA  90067-6022
    Telephone:    +1.310.229.1000
15  Facsimile:    +1.310.229.1001

16  Attorneys for Defendant
    ARTHUR HAYES

    Douglas K. Yatter (State Bar No. 236089)
    douglas.yatter@lw.com
    LATHAM & WATKINS LLP
    1271 Avenue of the Americas
    New York, NY 10020
    Telephone:    +1.212.906.1200
    Facsimile:    +1.212.751.4864

    Matthew Rawlinson (State Bar No. 231890)
    matt.rawlinson@lw.com
    LATHAM & WATKINS LLP
    140 Scott Drive
    Menlo Park, CA  94025
    Telephone:    +1.650.328.4600
    Facsimile:    +1.650.463.2600

    Attorneys for Defendant
    SAMUEL REED

17
18                      **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
                         **SAN FRANCISCO DIVISION**
19

20   ANATOLY SOROKIN,                      Case No. 3:21-cv-03576-WHO

                  Plaintiff,
21
          v.
22                                          **DEFENDANTS' NOTICE OF**
     HDR GLOBAL TRADING LIMITED             **MOTION AND MOTION TO DISMISS**
23   (A.K.A. BitMEX), ABS GLOBAL            **PLAINTIFF'S SECOND AMENDED**
     TRADING LIMITED, ARTHUR HAYES,         **COMPLAINT; MEMORANDUM OF**
24   and SAMUEL REED,                       **POINTS AND AUTHORITIES IN**
                                            **SUPPORT THEREOF**
                  Defendants.
25
                                            Date:    March 2, 2022
26                                          Time:    2:00 p.m.
                                            Ctrm:    2 – 17th Floor
27                                          Judge:   Honorable William H. Orrick
28

1

## NOTICE OF MOTION

2      PLEASE TAKE NOTICE that at 2:00 p.m. on March 2, 2022, before the Honorable

3   William H. Orrick, in Courtroom 2, 17th Floor, San Francisco Courthouse, 450 Golden Gate

4   Avenue, San Francisco, California 94102, defendants HDR Global Trading Limited ("HDR"),

5   ABS Global Trading Limited ("ABS"), Arthur Hayes, and Samuel Reed (together, "Defendants"),

6   will and hereby do move to dismiss the Second Amended Complaint (ECF No. 30) pursuant to

7   rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds stated below.

8      The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities

9   in support of this Motion, the Proposed Order, Defendants' Request for Judicial Notice, and the

10   Declaration of Stephen D. Hibbard filed concurrently herewith, the pleadings and records on file

11   in this action, and upon such other matters as may be presented to the Court at or prior to the

12   hearing on this Motion.

13

## RELIEF REQUESTED

14      The Second Amended Complaint should be dismissed pursuant to Federal Rules of Civil

15   Procedure 12(b)(1) and 12(b)(6).

16

17   DATED:  December 17, 2021              Respectfully submitted,

                                            JONES DAY
18

19

20                                          By: */s/ Stephen D. Hibbard*
                                                Stephen D. Hibbard
21
                                            Counsel for Defendants
22                                          HDR GLOBAL TRADING LIMITED and
                                            ABS GLOBAL TRADING LIMITED
23

24

25

26

27

28

1

2

AKIN GUMP STRAUSS HAUER & FELD LLP

3

4

By: /s/ Peter I. Altman

Peter I. Altman

5

6

Counsel for Defendant
ARTHUR HAYES

7

8

LATHAM & WATKINS LLP

9

10

By: /s/ Douglas K. Yatter

Douglas K. Yatter
Matthew Rawlinson

11

12

Counsel for Defendant
SAMUEL REED

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF THE ISSUES ..................................................................... 2

III.    BACKGROUND .............................................................................................. 2

        A.    This Court Already Rejected in *BMA* the Same Core Allegations Plaintiff
              Makes Here. ......................................................................................... 2

        B.    Plaintiff's Counsel Files This Case. ........................................................... 4

        C.    Plaintiff Has Filed Numerous State Court Cases Alleging Nearly Identical
              Claims. ............................................................................................. 5

IV.     ARGUMENT ................................................................................................ 6

        A.    The Choice of Law Provision Requires Dismissal of Plaintiff's Claims. ............... 6

        B.    Plaintiff's Allegations Fail to State a Claim on Their Own Terms. ...................... 10

              1.    Plaintiff Fails to Plead Fraudulent Inducement Related to Purported
                    Market Manipulation by the HDR Trading Arm or Third Parties. .......... 12

                    (a)   Plaintiff has not pled facts to show a misrepresentation
                          about trading on BitMEX. ................................................. 12

                    (b)   Plaintiff has not pled facts showing that a representation
                          about trading on BitMEX caused his purported losses. ............... 15

              2.    Plaintiff Fails to Plead Fraudulent Inducement from the BitMEX
                    Website's Liquidity Statement. .................................................... 16

                    (a)   Plaintiff has not pled facts to show that a representation
                          about liquidity was false. ................................................ 16

                    (b)   Plaintiff has not pled facts to show that a representation
                          about liquidity was material. ............................................ 19

                    (c)   Plaintiff has not pled facts to show that he actually or
                          reasonably relied on a representation about liquidity. ................ 21

                    (d)   Plaintiff has not pled facts to show that the alleged liquidity
                          representation caused any purported damages. ....................... 23

        C.    Plaintiff's Federal Claims Are Deficient in Multiple Additional Respects. ......... 27

        D.    Plaintiff's State-Law Claims Are Likewise Deficient in Multiple Respects. ....... 29

              1.    The State Statutory Claims Fail. ................................................... 29

                    (a)   Plaintiff lacks standing to pursue his statutory claims. ............... 29

                    (b)   Plaintiff's UCL claims are independently deficient. ................... 30

                    (c)   Plaintiff's FAL claim is also independently deficient. ................ 31

                    (d)   Plaintiff's CLRA claim is independently deficient as well. .......... 31

                    (e)   Plaintiff's claim under Cal. Penal Code § 496 is also
                          deficient. ................................................................... 31

              2.    The State Common Law Claims Fail. ............................................ 32

1

(a)      Plaintiff's negligence-related claims fail. ...................................... 32

(b)      Plaintiff's remaining state-law claims fail. ................................. 34

V.      CONCLUSION ........................................................................................... 34

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

5

*1-800-Got Junk? LLC v. Superior Ct.*,
    189 Cal. App. 4th 500 (2010)..................................................................................8

6

*Aas v. Superior Ct.*,
7
    24 Cal. 4th 627 (2000) ...........................................................................................32

8

*Abat v. Chase Bank USA, N.A.*,
9
    738 F. Supp. 2d 1093 (C.D. Cal. 2010 ....................................................................9

10

*Alvarez v. MTC Fin. Inc.*,
11
    2017 WL 1861844 (N.D. Cal. May 9, 2017) ........................................................32

12

*Anderson v. Virga*,
    2017 WL 1179142 (E.D. Cal. Mar. 29, 2017) ...............................................13, 27
13

14

*Arroyo v. Chattem, Inc.*,
    926 F. Supp. 2d 1070 (N.D. Cal. 2012) ...............................................................18

15

*Ashcroft v. Iqbal*,
16
    556 U.S. 662 (2009)........................................................................................10, 20

17

*Beasley v. Lucky Stores, Inc.*,
18
    400 F. Supp. 3d 942 (N.D. Cal. 2019) .................................................................21

19

*Becerra v. Dr Pepper/Seven Up, Inc.*,
20
    945 F.3d 1225 (9th Cir. 2019)...............................................................................18

21

*Bell Atl. Corp. v. Twombly*,
22
    550 U.S. 544 (2007)...............................................................................................10

23

*Bennett v. Spear*,
    520 U.S. 154 (1997)...............................................................................................15
24

25

*Berk v. Coinbase, Inc.*,
    840 F. App'x 914 (2020)........................................................................................33

26

*Biakanja v. Irving*,
27
    49 Cal.2d 647 (1958) .............................................................................................33

28

*Bias v. Wells Fargo & Co.*,
   312 F.R.D. 528 (N.D. Cal. 2015) .................................................................9

*Bickoff v. Wells Fargo Bank N.A.*,
   2016 WL 3280439 (S.D. Cal. June 14, 2016), *aff'd*, 705 F. App'x 616 (9th Cir.
   2017) ...........................................................................................................19

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009)......................................................................26

*Block v. eBay, Inc.*,
   747 F.3d 1135 (9th Cir. 2014)....................................................................19

*BMA v. HDR Global Trading Ltd.*,
   No. 20-cv-03345 (N.D. Cal. Sept. 7, 2021) ..................................... passim

*Brown v. Bank of Am., N.A.*,
   457 F. Supp. 2d 82 (D. Mass. 2006) ...........................................................25

*Cal-State Business Products & Services, Inc. v. Ricoh*,
   12 Cal. App. 4th 1666 (1993)...................................................................8, 9

*Calderon v. Total Wealth Mgmt., Inc.*,
   2018 WL 1621397 (S.D. Cal. Apr. 4, 2018) ...............................................10

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021) .......................................................31

*Cansino v. Bank of Am.*,
   224 Cal. App. 4th 1462 (2014).....................................................................10

*Century 21 Real Estate LLC v. All Pro. Realty, Inc.*,
   600 F. App'x 502 (9th Cir. 2015) ..................................................................9

*Coates v. Newhall Land & Farming, Inc.*,
   191 Cal. App. 3d 1 (1987)............................................................................33

*Collins v. eMachines, Inc.*,
   202 Cal. App. 4th 249 (2011)........................................................12, 19, 20

*Consumer Advocs. v. Echostar Satellite Corp.*,
   113 Cal. App. 4th 1351 (2003).....................................................................31

*Cont'l Airlines, Inc. v. Mundo Travel Corp.*,
   412 F. Supp. 2d 1059 (E.D. Cal. 2006) .........................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006)................................................................................31

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012)...........................................................................21

*Dix v. Nova Benefit Plans, LLC*,
   2015 WL 12859221 (C.D. Cal. Apr. 28, 2015) ...............................................23

*Durrell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010)..........................................................................24

*Edmundson v. Proctor & Gamble Co.*,
   537 F. App'x 708 (9th Cir. 2013) .....................................................................17

*Ehrlich v. Hartford Life & Accident Ins. Co.*,
   2021 WL 4472845 (N.D. Cal. May 7, 2021) .....................................................8

*Forman v. Meridian Bioscience, Inc.*,
   367 F. Supp. 3d 674 (S.D. Ohio 2019)..............................................................17

*Frome v. Renner*,
   1997 WL 33308718 (C.D. Cal. Oct. 1, 1997) ..................................................24

*Goehring v. Chapman Univ.*,
   121 Cal. App. 4th 353 (2004)............................................................................27

*Graham v. Bank of Am., N.A.*,
   226 Cal. App. 4th 594 (2014)............................................................................12

*Great Pac. Sec. v. Barclays PLC*,
   2016 WL 11502178 (C.D. Cal. Oct. 19, 2016) ...........................................16, 31

*Guttmann v. La Tapatia Tortilleria Inc.*,
   2015 WL 7283024 (N.D. Cal. Nov. 18, 2015)..................................................23

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008)........................................................................24, 25

*Hardy v. HDR Global Trading Ltd.*,
   No. CGC-20-588283 (S.F. Super. Ct. June 28, 2021) .......................................6

*Hatfield v. Halifax PLC*,
   564 F.3d 1177 (9th Cir. 2009)............................................................................7

*Hilario v. Allstate Ins. Co.*,
    2020 WL 7643233 (N.D. Cal. Dec. 23, 2020) ..................................................14

*Hoffman v. 162 N. Wolfe LLC*,
    228 Cal. App. 4th 1178 (2014)......................................................................21

*In re Amaranth Nat. Gas Commodities Litig.*,
    730 F.3d 170 (2d Cir. 2013).........................................................................28

*In re Commodity Exch., Inc.*,
    213 F. Supp. 3d 631 (S.D.N.Y. 2016)...........................................................28

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008).......................................................................11

*In re Nat. Gas Commodity Litig.*,
    337 F. Supp. 2d 498 (S.D.N.Y. 2004)...........................................................29

*In re Seagate Tech. LLC Litig.*,
    233 F. Supp. 3d 776 (N.D. Cal. 2017) ..........................................................31

*In re Silicon Graphics, Inc. Sec. Litig.*,
    970 F. Supp. 746 (N.D. Cal. 1997) .........................................................11, 14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ...........................................................19

*J'Aire Corp. v. Gregory*,
    24 Cal. 3d 799 (1979) ...................................................................................33

*Kanyshev v. HDR Global Trading Ltd.*,
    No. CGC-20-584483 (S.F. Super. Ct.)............................................5, 6, 18, 33

*Khmel v. HDR Global Trading Ltd.*,
    Case No. CGC-21-596114 ...............................................................................6

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..........................................................24

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003).........................................................................18

*Laws. Funding Grp., LLC v. Dale Alan Harris, Esq.*,
    2015 WL 13298145 (C.D. Cal. Sept. 18, 2015)..............................................11

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lyashenko v. HDR Global Trading Ltd.*,
   No. CGC-21-595865 (S.F. Super. Ct.)................................................................6

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)...................................................................7, 9

*MBC Fin. Servs. Ltd. v. Bos. Merch. Fin., Ltd.*,
   2016 WL 5946709 (S.D.N.Y. Oct. 4, 2016 ..........................................10

*Medimatch, Inc. v. Lucent Tech. Inc.*,
   120 F. Supp. 2d 842 (N.D. Cal. 2000) ...................................................8

*Merton Co. v. PepsiCo Inc.*,
   874 F. Supp. 634 (S.D.N.Y. 1995)..........................................................8

*Messieh v. HDR Global Trading Ltd.*,
   No. 1:20-cv-3232 (S.D.N.Y.)..........................................................4, 14

*N. Am. Chem. Co. v. Superior Ct.*,
   59 Cal. App. 4th 764 (1997)................................................................33

*Nationwide Biweekly Admin., Inc. v. Superior Ct.*,
   9 Cal. 5th 279 (2020) .......................................................................30

*Nedlloyd Lines B.V. v. Superior Ct.*,
   3 Cal. 4th 459 (1992) ........................................................................7

*P.T. Adimitra Rayapratama v. Bankers Trust Co.*,
   1995 WL 495634 (S.D.N.Y. Aug. 21, 1995) ..........................................9

*Pac. Select Fund v. Bank of N.Y. Mellon*,
   2010 WL 11468787 (C.D. Cal. Sept. 20, 2010).....................................27

*Paulsen v. CNF Inc.*,
   559 F.3d 1061 (9th Cir. 2009).............................................................7

*Potter v. Chevron Prods. Co.*,
   2018 WL 4053448 (N.D. Cal. Aug. 24, 2018).......................................9

*Princess Cruise Lines, Ltd. v. Superior Ct.*,
   179 Cal. App. 4th 36 (2009)...............................................................22

*Quiroz v. Seventh Ave. Ctr.*,
   140 Cal. App. 4th 1256 (2006)............................................................32

*Roby v. Corp. of Lloyd's*,
  996 F.2d 1353 (2d Cir. 1993)............................................................9

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) ...........................................20

*Rossberg v. Bank of Am., N.A.*,
  219 Cal. App. 4th 1481 (2013)........................................................24

*Seeger v. Odell*,
  18 Cal. 2d 409 (1941) .....................................................................21

*Seidman & Seidman v. Wolfson*,
  50 Cal. App. 3d 826 (1975).............................................................9

*Serv. by Medallion, Inc. v. Clorox Co.*,
  44 Cal. App. 4th 1807 (1996)..........................................................27

*Servpro Inds., Inc. v. Woloski*,
  2019 WL 3552516 (M.D. Tenn. Aug. 5, 2019) ...............................9

*Shaeffer v. Califia Farms, LLC*,
  44 Cal. App. 5th 1125 (2020).....................................................23, 29

*Steckman v. Hart Brewing Inc.*,
  143 F.3d 1293 (9th Cir. 1998).........................................................11

*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*,
  143 Cal. App. 4th 1036 (2006)....................................................32, 33

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)......................................................10, 11

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003)...........................................................11

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003).........................................................10

*Walker Earle v. UNUM Life Ins. Co. of Am.*,
  2020 WL 4434951 (C.D. Cal. July 23, 2020) .................................8

*Walrus Master Fund Ltd. v. Citigroup Glob. Mkts., Inc.*,
  2009 WL 928289 (S.D.N.Y. Mar. 30, 2009) ..................................21

*Wash. Mut. Bank, FA v. Superior Ct.*,
    24 Cal. 4th 906 (2001) ..................................................................................7, 8

*Wilson-Chalkley v. HDR Global Trading Ltd.*,
    No. CGC-20-588042 (S.F. Super. Ct. June 28, 2021) ..................................6

*Zdilar v. HDR Global Trading Ltd.*,
    No. CGC-21-590192 (S.F. Super. Ct. Nov. 11, 2021) ..................................6

**STATUTES**

28 U.S.C. § 1331 ..........................................................................................7

28 U.S.C. § 1332(a) ......................................................................................7

28 U.S.C. § 1367(a) ......................................................................................7

Cal. Penal Code § 484(a) ...........................................................................31

Cal. Penal Code § 496 .........................................................................9, 29, 31, 32

**RULES**

Fed. R. Civ. P. 8 ........................................................................................10

Fed. R. Civ. P. 9(b) ............................................................................10, 11, 13, 26

**OTHER AUTHORITIES**

Andrey Sergeenkov, *What is a Perpetual Contract?*, CoinDesk (Oct. 5, 2021),
    *available at* https://www.coindesk.com/learn/what-is-a-perpetual-swap-
    contract ..............................................................................................17

Daniel M. Klerman, et al., *Legal Origin or Colonial History?*, 3 J. Legal Analysis
    379 (2011) ............................................................................................8

Huong Le & Andros Gregoriou, *How Do You Capture Liquidity? A Review of the
    Literature on Low-Frequency Stock Liquidity*, Journal of Economic Surveys
    (2020) Vol. 34, No. 5, at p. 1170, *available at*
    https://doi.org/10.1111/joes.12385 ......................................................17

Restatement (Second) of Conflicts of Laws § 187(2) ......................................7

1    **I.      INTRODUCTION**

2            On September 7, 2021, this Court dismissed with prejudice the complaint in an action

3    alleging that Defendants fraudulently induced the plaintiffs to use an offshore cryptocurrency

4    derivatives trading platform called BitMEX.  In that action—*BMA v. HDR Global Trading Ltd.*,

5    No. 20-cv-3345—the Court held among other things that the plaintiffs—represented by the same

6    counsel here—failed to allege with particularity the existence of any misrepresentation, or that

7    any such misrepresentation induced the plaintiffs' losses arising from their use of the platform,

8    which allows users to speculate on the future price of cryptocurrencies such as Bitcoin and

9    Ethereum by opening trading positions up to 100 times larger than the amounts they commit to

10   those positions.  The Court afforded the *BMA* plaintiffs repeated opportunities to remedy the

11   defects in their pleadings.  But instead of fixing those flaws, the plaintiffs pivoted from one

12   deficient theory to the next with each amendment—moving initially from a far-fetched market

13   manipulation theory to an equally defective fraudulent inducement theory based on

14   representations about the platform's trading arm and the liquidity of its market for certain

15   cryptocurrency derivatives compared to other cryptocurrency platforms.  This Court dismissed

16   the *BMA* action with prejudice.

17           This case is more of the same.  It is one of the latest in a long line of harassing lawsuits

18   brought by the same plaintiffs' counsel alleging the same core theories against the same

19   defendants.  In its order dismissing the *BMA* case with prejudice, this Court already noted that

20   Plaintiff Sorokin's complaint was "substantially similar" to the complaint in *BMA*, as Plaintiff's

21   counsel copied and pasted large portions of the *BMA* complaint, which in turn had copied and

22   pasted portions of a complaint filed in another federal court by different lawyers.  The complaint

23   here swaps in a different plaintiff—the *sixth* one represented by Plaintiff's counsel in this Court

24   alone—while retaining the same deficiencies that doomed the *BMA* complaint.

25           If anything, Plaintiff's complaint is even more deficient than the ones that came before.

26   Plaintiff's counsel now prioritizes state-law fraudulent inducement claims tied to the BitMEX

27   Terms of Service, dropping many of the federal claims originally pleaded in *BMA* and burying the

28   remainder.  But Plaintiff's allegations under both state and federal law are barred by the Terms'

choice-of-law clause mandating the application of English law.  And regardless of choice of law,

Plaintiff's allegations remain conclusory and largely rest on *neither* information and belief *nor*

personal knowledge, and so must be dismissed as lacking particularity or any factual basis.  In

fact, although Plaintiff claims that Defendants' purported misconduct resulted in *liquidations* of

BitMEX users' trading positions generally, Plaintiff prevaricates and fails to allege specifically

that his own positions were actually liquidated as opposed to being voluntarily closed.  Even after

Plaintiff twice amended his complaint, these defects persist.  Given these and other defects

discussed below, and Plaintiff's continued wasting of judicial resources by filing the same

deficient claims, this Court should dismiss this action with prejudice as it did in *BMA*.

## II.     STATEMENT OF THE ISSUES

1.      Whether Plaintiff's federal and state-law claims are barred by the choice-of-law

clause in BitMEX's Terms of Service mandating the application of English law.

2.      Whether Plaintiff's fraud claims—and thus, the causes of action that are based on

such claims—fail when the complaint lacks any particular facts showing that any Defendant

engaged in any fraudulent conduct, regardless of the choice-of-law clause.

3.      Whether Plaintiff fails to allege particular facts showing that any purported

fraudulent conduct caused losses to him.

4.      Whether Plaintiff's remaining claims meet baseline pleading requirements.

## III.    BACKGROUND

Plaintiff's complaint is one of the latest in a series of complaints filed in both federal and

state court by overseas traders of leveraged cryptocurrency derivatives alleging the same basic

claims against Defendants related to the operation of the BitMEX trading platform.  Just as this

Court previously dismissed the *BMA* complaint, and two state-court judges dismissed or sustained

demurrers in nearly identical actions alleging that Defendants fraudulently induced others to use

BitMEX, this Court should dismiss Plaintiff's complaint here.

### A.      This Court Already Rejected in *BMA* the Same Core Allegations Plaintiff Makes Here.

In May 2020, Plaintiff's counsel filed a complaint asserting RICO and Commodity

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

Exchange Act (CEA) claims on behalf of Puerto-Rico based BMA and later, on behalf of several other individual plaintiffs from Russia, relating to the operation of the cryptocurrency derivatives trading platform, BitMEX.  After Plaintiff's counsel sought to add new plaintiffs (from Russia or Romania) through new lawsuits and made amendments designed to moot Defendants' filed motions to dismiss, this Court consolidated the lawsuits and ordered an additional round of briefing.  In March 2021, this Court dismissed the plaintiffs' consolidated complaint—which alleged price manipulation on the platform in violation of federal and state law—as deficient in multiple respects, including the plaintiffs' failure to "sufficiently plead the elements of each claim and their standing to bring them."  *BMA* Dkt. 143 at 2.

In June 2021, Plaintiff's counsel amended the complaint again.  *BMA* Dkt. 153.  Whereas the prior versions of the complaint alleged market manipulation (which this Court had thoroughly rejected), the further amended complaint retained those allegations but pivoted to two new primary theories of fraudulent inducement based on the BitMEX Terms of Service—namely, that Defendants (1) misrepresented the service terms by operating an "insider trading desk" that supposedly had "God Access" to all customer information on the platform and, using this information, allegedly manipulated the market and engineered server freezes and lockouts to liquidate the plaintiffs' positions; and (2) misrepresented liquidity on the BitMEX platform.  *Id.* ¶¶ 499-501, 525-28.  Those alleged misrepresentations, the plaintiffs alleged, fraudulently induced them into making deposits and trades on BitMEX, which led to various losses (including "loss of use," trading commission, and trading loss damages).  *Id.* ¶ 512-14.

In September 2021, this Court rejected the plaintiffs' new fraudulent inducement theories and dismissed the action with prejudice.  *See BMA* Dkt. 186 ("*BMA* Order").  The plaintiffs had failed to remedy the defects that had plagued the earlier market manipulation claims and to plead standing to bring those claims.  *Id.* at 7-18.  And thus, as the Court held, the fraudulent inducement theories, based in part on the market manipulation claims, fared no better.  The Court observed that, instead of supporting their prior "information and belief" allegations of market manipulation, the plaintiffs had merely deleted that phrase without providing a factual basis for their new claim to personal knowledge of Defendants' supposed misconduct.  *Id.* at 8-9.

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1        Indeed, the Court found that the plaintiffs had simply copied nearly verbatim from a

2    federal court complaint drafted by other lawyers in *Messieh v. HDR Global Trading Ltd.*, No.

3    1:20-cv-3232 (S.D.N.Y.).  *See BMA* Order 8.  The Court also rejected, as conclusory, the claim

4    that Defendants had conspired with a purported market manipulator ("Ben Aabtc") to cause losses

5    to the plaintiffs.  *Id.* at 10.  According to the Court, "[w]ithout specific facts showing that the

6    Terms of Service were false—that defendants' insider trading desk was in fact engaging in

7    manipulative conduct—plaintiffs' fraudulent inducement theory fails."  *Id.* at 12.

8        The Court further rejected the claim that defendants misrepresented the liquidity of the

9    platform.  The plaintiffs' assertions about liquidity, the Court ruled, were "not sufficient to state a

10    claim," which hanged on "one vague allegation" comparing the "bid-ask spread" on another

11    platform that failed to "explain why that show[ed] falsity."  *Id.* at 14.  Based on these and other

12    flaws, and in light of the plaintiffs' failure (despite many opportunities to amend) to remedy those

13    flaws, the Court dismissed the *BMA* case with prejudice.

14        **B.**      **Plaintiff's Counsel Files This Case.**

15        About a year after filing the *BMA* suit, Plaintiff's counsel filed a complaint on behalf of

16    Anatoly Sorokin, another citizen and resident of Russia.  *See* Compl., Dkt. 1 ¶ 32.  Sorokin was

17    the *sixth* plaintiff enlisted by Plaintiff's counsel to file suit in federal court alleging nearly

18    identical claims against Defendants.  As this Court recognized, "[t]he complaint in *Sorokin* is

19    substantially similar to the" second amended complaint in *BMA*, *see BMA* Order 3.  As a result,

20    the Court related the two matters.  *See* Dkt. 18.

21        Plaintiff subsequently amended his complaint—twice.  Plaintiff first amended his

22    complaint in response to the dismissal order issued by this Court in *BMA*, resequencing his causes

23    of action to prioritize fraudulent inducement claims under state law.  *See* Dkt. 22.  Plaintiff then

24    amended his complaint again, making substantive revisions to his First Amended Complaint

25    (FAC) as discussed in Defendants' Administrative Motion requesting the filing of Plaintiff's

26    Second Amended Complaint (SAC) to correct material misstatements in the FAC.  *See* Dkt. 28.

27    (Plaintiff petitioned to vacate the granting of the motion, but the Ninth Circuit summarily denied

28    the writ petition, *see* Dkt. 31.)  Among the substantive changes from the FAC, the SAC alleged

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

that (1) Plaintiff did not just trade *Bitcoin* perpetual contracts but also traded *Ethereum* perpetual contracts, (2) Plaintiff's positions were long and not short, and (3) the positions were "liquidated *or otherwise closed*," not just "liquidated" as the FAC had asserted. *See* Dkt. 23 at 3 (emphasis added).

Despite these amendments, the core allegations in the SAC have remained the same. Plaintiff's SAC alleges the same fraudulent inducement theories alleged in *BMA*, although the theories are now based more expressly on representations concerning the Terms of Service. This change in focus is not surprising. Because this Court had already twice rejected the market manipulation claims alleged in *BMA* (claims that did not expressly rely on the Terms of Service), Plaintiff has pivoted to emphasize fraudulent inducement theories based on the Terms of Service. Moreover, because the Court had so thoroughly rejected the market manipulation claims as well as the related "insider trading desk" claims in *BMA*, the SAC now alleges, as its primary theory, that Defendants misrepresented the platform's liquidity.

## C.   Plaintiff Has Filed Numerous State Court Cases Alleging Nearly Identical Claims.

In addition to filing multiple actions in this Court, Plaintiff's counsel has filed six suits in state court. As this Court is aware, around the same time Plaintiff's counsel filed suit in *BMA* in May 2020, he filed suit in *Kanyshev v. HDR Global Trading Ltd.*, No. CGC-20-584483 (S.F. Super. Ct.) ("*Kanyshev*"), in the San Francisco Superior Court, alleging materially identical theories of wrongdoing against a subset of Defendants here. Judge Massullo sustained the *Kanyshev* defendants' demurrer, and after the plaintiffs (one of whom now purports to reside in California) amended their complaint to allege fraudulent inducement theories (just like in *BMA*), the judge sustained the defendants' demurrer again (while allowing for limited discovery relating to the court's granting leave to amend under state-law pleading standards).

Plaintiff's counsel has now filed a fourth amended complaint in *Kanyshev*, which adds nothing of substance. In fact, that complaint adds only a handful of allegations based on the discovery permitted in that case for the express purpose of providing the plaintiffs an opportunity to test their market manipulation theory. And those allegations are general conclusions about

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1  HDR holding "short" positions on *BitMEX*, which the plaintiffs contend caused their losses

2  without explaining why or how, and without specifically alleging any trading by Defendants on

3  *other* platforms.  *See Kanyshev*, Fourth Am. Compl. ¶ 172.h (Nov. 22, 2021).  In short, the newest

4  theory alleged in *Kanyshev* contradicts the theory of *cross-market* manipulation asserted by

5  Plaintiff's counsel throughout all these cases against Defendants.

6        Three other cases filed by Plaintiff's counsel on behalf of European plaintiffs in state

7  court have been dismissed on grounds of *forum non conveniens* in favor of England, which

8  provides the governing law for, and is designated as a forum for dispute resolution in, the

9  BitMEX Terms of Service.  *See Hardy v. HDR Global Trading Ltd.*, Case No. CGC-20-588283

10 (S.F. Super. Ct. June 28, 2021); *Wilson-Chalkley v. HDR Global Trading Ltd.*, Case No. CGC-

11 20-588042 (S.F. Super. Ct. June 28, 2021); *Zdilar v. HDR Global Trading Ltd.*, Case No. CGC-

12 21-590192 (S.F. Super. Ct. Nov. 11, 2021).  And finally, two similar cases were recently filed in

13 state court by the same counsel, with responsive pleadings due later this month.  *See Lyashenko v.*

14 *HDR Global Trading Ltd.*, Case No. CGC-21-595865 (S.F. Super. Ct.); *Khmel v. HDR Global*

15 *Trading Ltd.*, Case No. CGC-21-596114 (S.F. Super. Ct.).

16 **IV.   ARGUMENT**

17       In *BMA*, this Court dismissed claims nearly identical to those asserted by Plaintiff

18 Sorokin.  The Court should do the same here, whether by enforcing the English choice-of-law

19 clause in the Terms of Service that Plaintiff relies on in his complaint or by applying the state and

20 federal law that Plaintiff seeks to exploit by filing suit thousands of miles away from the locus of

21 the alleged injury he claims to have sustained by trading cryptocurrency derivatives from Russia.

22       **A.   The Choice of Law Provision Requires Dismissal of Plaintiff's Claims.**

23       Under the Terms of Service agreed to by Plaintiff, English law applies to Plaintiff's

24 lawsuit, precluding his claims.  Plaintiff accepted the BitMEX Terms of Service when registering

25 for and using a BitMEX trading account.  SAC ¶ 136 & Ex. 17.  All of Plaintiff's claims arise out

26 of his use of that trading account and relate to the Terms of Service:  several expressly rely on the

27 Terms, *see, e.g.*, SAC ¶¶ 137-38, 187-88, 286, 291, 298, 303, 316; others challenge the provision

28 of services under the Terms, *see, e.g.*, SAC ¶¶ 228, 326, 339, 348, 373, 381, 395, 405, 410, 416,

1   426; and still others allege reliance on statements on the BitMEX website, *see, e.g.*, SAC ¶¶ 114,

2   285, 300, 311, 368, contrary to Plaintiff's representation and warranty under the Terms that

3   "general information" on the website "should not be relied upon without further enquiry," SAC

4   Ex. 17 § 6.1(d).  These claims must all be resolved under English law, pursuant to the choice-of-

5   law provision in the Terms of Service.[1]  *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182-83

6   (9th Cir. 2009) (noting that a choice-of-law clause "provid[ing] that the agreement 'shall be

7   governed by and construed under English law,' could not be clearer" and applying English law to

8   contract claims as well as related fraud and tort claims); *Nedlloyd Lines B.V. v. Superior Ct.*, 3

9   Cal. 4th 459, 470 (1992) ("[A] valid choice-of-law clause, which provides that a specified body

10  of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising

11  from or related to that agreement, regardless of how they are characterized . . . .").  Therefore,

12  Plaintiff cannot seek relief under the California and federal laws asserted in the SAC.

13        Where, as here, "a federal question action . . . involves supplemental jurisdiction over

14  state law claims, [courts] apply the choice of law rules of the forum state—here, California."

15  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009); *see also* SAC ¶¶ 43-44 (citing 28

16  U.S.C. §§ 1331, 1332(a), 1367(a)); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir.

17  2012) ("A federal court sitting in diversity must look to the forum state's choice of law rules to

18  determine the controlling substantive law.") (internal quotation marks and citation omitted).

19  California's choice-of-law rules require the application of English law.  California has a "strong

20  policy" of favoring the enforcement of choice-of-law clauses.  *Wash. Mut. Bank, FA v. Superior*

21  *Ct.*, 24 Cal. 4th 906, 916-17 (2001) (citing Restatement (Second) of Conflicts of Laws Section

22  187(2)).  This strong policy is bolstered here by the reasonableness of designating a single

23  jurisdiction's law to apply to agreements entered with many individuals in various jurisdictions.

24

25        [1] The choice-of-law clause in the version of the Terms of Service attached by Plaintiff to
26  the SAC provides that "[t]he Terms are governed by and construed in accordance with English
    common law" (SAC Ex. 17 § 15), while the choice-of-law clause in effect during the "Relevant
27  Period" alleged in the complaint (SAC ¶ 7) reinforced that "[t]he Terms and any non-contractual
    obligations arising out of or in connection with them are governed by and construed in
28  accordance with English common law" (Hibbard Decl. Ex. A § 16).  Both versions cover all of
    the claims alleged in the SAC.

NOTICE OF MOT. AND MOT. TO DISMISS
                                                     3:21-cv-03576-WHO

*See 1-800-Got Junk? LLC v. Superior Ct.*, 189 Cal. App. 4th 500, 514-15 (2010) (agreeing that "the desire for a uniform facilitation of the conduct of trade was valid reason for use of form contract") (internal quotation marks and citation omitted).[2]  Moreover, the reasonableness of the Terms' selection of English common law as the governing law for disputes with users across the globe is reinforced by the fact that England has a "great deal of expertise in commercial litigation," *Cal-State Business Products & Services, Inc. v. Ricoh*, 12 Cal. App. 4th 1666, 1682 (1993) (enforcing New York choice-of-forum clause for the same reason), and HDR's home forum of Seychelles applies English common law, *see* Daniel M. Klerman, et al., *Legal Origin or Colonial History?*, 3 J. Legal Analysis 379, 383 n.4 (2011) (recognizing Seychelles as "mixed legal system," applying English common law, "especially in commercial matters," to overlay its French civil law antecedents).[3]

No exception to the application of English law exists here.  If a "reasonable basis . . . exists for the choice of law, the parties' choice generally will be enforced unless . . . *both* . . . the chosen law is contrary to a fundamental policy of California *and* . . . California has a materially greater interest in the determination of the particular issue." *Wash. Mut. Bank*, 24 Cal. 4th at 917 (emphasis added).  The enforcement of English law is not contrary to any fundamental policy of California.  California "has no public policy against the enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate." *Id.*  And Plaintiff's inability to benefit from California laws if the choice-of-law clause is enforced does not contravene California public policy. *Medimatch, Inc. v. Lucent Tech. Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) ("The mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide

[2] *See also Ehrlich v. Hartford Life & Accident Ins. Co.*, 2021 WL 4472845, at *8 (N.D. Cal. May 7, 2021) (holding reasonable choice of Florida law governing employee benefits plan where plan sponsor had hundreds of thousands of employees in all 50 states); *Walker Earle v. UNUM Life Ins. Co. of Am.*, 2020 WL 4434951, at *11 (C.D. Cal. July 23, 2020) (determining application of Maine law to benefits plan was reasonable in part because defendant, "by applying the laws of one governing jurisdiction, . . . [ensured the terms were] uniformly administered").

[3] Moreover, Hong Kong, where the bulk of HDR's relevant operations are located, is a former British colony and has a legal system derived from English law.  *Merton Co. v. PepsiCo Inc.*, 874 F. Supp. 634, 638 (S.D.N.Y. 1995) ("British law, both common and statutory, is the law of Hong Kong.").

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1    protection while California law would, are not reasons for applying California law.").

2         Nor does California—a jurisdiction in which use of the platform is prohibited—have a

3    materially greater interest than England in the determination of this action.  Plaintiff is a resident

4    of Russia (SAC ¶ 6), and "California's interest in applying its law to residents of foreign states is

5    attenuated."  *Mazza*, 666 F.3d at 594.  Meanwhile, England has a significant interest in the correct

6    application of its law to international commercial disputes.  *See, e.g.*, *Roby v. Corp. of Lloyd's*,

7    996 F.2d 1353, 1363 (2d Cir. 1993) (affirming enforcement of English choice-of-law and forum-

8    selection clauses "where the underlying transaction is fundamentally international in character"

9    because such clauses "eliminate uncertainty in international commerce and insure that the parties

10   are not unexpectedly subjected to hostile forums and laws").[4]

11        Applying these principles, the choice-of-law clause bars Plaintiff's state-law claims, all of

12   which are pleaded by reference to California statutes or decisional law.  *See, e.g.*, *Century 21 Real*

13   *Estate LLC v. All Pro. Realty, Inc.*, 600 F. App'x 502, 504, 506 (9th Cir. 2015) (dismissing

14   California UCL claim because "New Jersey law applies to this action, thus a California claim is

15   unavailable").[5]  Moreover, Plaintiff may not bring a federal CEA claim where the applicable law

16   is that of a foreign country.  *See P.T. Adimitra Rayapratama v. Bankers Trust Co.*, 1995 WL

---

17        [4] No more availing are Plaintiff's allegations of fraudulent inducement, as Plaintiff does
18   not—and cannot—allege that the choice-of-law clause itself was obtained by fraud.  *Ricoh*, 12
     Cal. App. 4th at 1676-77; *Seidman & Seidman v. Wolfson*, 50 Cal. App. 3d 826, 831 (1975)
19   (affirming validity of choice-of-law provision where plaintiff brought suit based on alleged
     misrepresentation but "there [was] no contention that inclusion of the choice of law clause itself
20   was obtained by misrepresentation or mistake"); *see also Roby*, 996 F.2d at 1363 (rejecting
     exception to enforceability of choice-of-law and forum-selection clauses on ground that "their
21   incorporation into the agreement was the result of fraud" because plaintiffs "do not contend that
     they were fraudulently induced into agreeing to" those particular clauses).

22        [5] *See also Potter v. Chevron Prods. Co.*, 2018 WL 4053448, at *12 (N.D. Cal. Aug. 24,
     2018) (dismissing CLRA, FAL, and UCL claims because plaintiffs' claims were governed by
23   Illinois rather than California law); *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 533 (N.D. Cal.
     2015) (holding enforceable Louisiana choice-of-law clause, which "barr[ed] plaintiffs] from
24   bringing claims under California law," including both UCL and fraud claims); *Abat v. Chase
     Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010) ("The choice of law provision
25   should be enforced, and its selection of Delaware law bars Plaintiff's California [UCL and
     CLRA] statutory claims as a matter of law."); *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F.
26   Supp. 2d 1059, 1070 (E.D. Cal. 2006) (dismissing UCL claim where Virginia choice of law
     provision applied because "[a] valid choice-of-law provision selecting another state's law is
27   grounds to dismiss a claim under California's UCL") (citation omitted); *Servpro Inds., Inc. v.
     Woloski*, 2019 WL 3552516, at *4 (M.D. Tenn. Aug. 5, 2019) (dismissing California Penal Code
28   Section 496 claim as not cognizable due to an enforceable Tennessee choice-of-law clause).

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

495634, at *4-6 (S.D.N.Y. Aug. 21, 1995) (granting defendants' motion to dismiss CEA claim and other federal statutory claims after determining that parties' contractual choice-of-law clause in favor of English law was enforceable); *see also MBC Fin. Servs. Ltd. v. Bos. Merch. Fin., Ltd.*, 2016 WL 5946709, at *7 (S.D.N.Y. Oct. 4, 2016) ("The Court is unconvinced that Plaintiff can plead a CEA violation and expect a United States Court to rule on such a violation, thereby completely disregarding an agreed-upon choice-of-law clause."). All of Plaintiff's claims should therefore be dismissed on this basis alone.

## B.    Plaintiff's Allegations Fail to State a Claim on Their Own Terms.

Regardless of the choice-of-law provision, Plaintiff fails to allege facts to support that Defendants engaged in fraudulent conduct causing Plaintiff's alleged losses. For Plaintiff to survive a motion to dismiss, he must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That baseline standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To satisfy Rule 8, the plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

More is required where, as here, a plaintiff brings claims sounding in fraud. Under Rule 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *see also Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014) ("[T]he requirement that '[f]raud must be pleaded with specificity' applies equally to a cause of action for fraud and deceit based on concealment.") (citation omitted). Plaintiff must make these allegations as to each defendant: "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant … and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (citation omitted). "[G]eneral allegations that the 'defendants' engaged in fraudulent conduct' with only specific allegations as to some, 'patently fail[s] to comply with Rule 9(b).'" *Calderon v. Total Wealth*

1   *Mgmt., Inc.*, 2018 WL 1621397, at *2 (S.D. Cal. Apr. 4, 2018) (quoting *Swartz*, 476 F.3d at 765).

2        When determining whether a complaint satisfies those standards, a court is not required to

3   accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

4   unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

5   (quotation marks and citation omitted).  Nor is a court "'required to accept as true conclusory

6   allegations which are contradicted by documents referred to in the complaint' or documents that

7   are proper subjects of judicial notice." *Laws. Funding Grp., LLC v. Dale Alan Harris, Esq.*, 2015

8   WL 13298145, at *5 (C.D. Cal. Sept. 18, 2015) (quoting *Steckman v. Hart Brewing Inc.*, 143 F.3d

9   1293, 1295–96 (9th Cir. 1998)).[6]  Plaintiff must base his allegations either on his personal

10  knowledge or on "information and belief." *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp.

11  746, 763 (N.D. Cal. 1997).  "For allegations made on information and belief, [plaintiff] must

12  allege with particularity all facts upon which [his] belief is based." *BMA* Order 9.

13        Plaintiff's entire case is premised on the sensational and unsupported belief that

14  Defendants designed BitMEX "to fraudulently induce unsuspecting victims to deposit their

15  bitcoins with Defendants and then rob them blind of all their property." SAC ¶ 2.  Plaintiff

16  asserts that Defendants fraudulently induced him in two ways to use the BitMEX platform:

17  (1) Defendants purportedly misstated in the BitMEX Terms of Service that HDR's trading arm

18  does not have trading privileges or access to any customer information on the platform on terms

19  that are not otherwise available to any other platform user, and concealed market manipulation by

20  the trading arm and/or third parties; and (2) Defendants purportedly misstated on the BitMEX

21  website that the platform had "1500% more Bitcoin/USD Liquidity than any other platform."

22  SAC ¶¶ 84-87.  These fraudulent inducement theories form the basis of all of Plaintiff's claims.

23        These theories fail.  Plaintiff fails to offer any facts—let alone facts with the requisite

24  particularity under Rule 9(b)—supporting his claims that he was induced to trade on BitMEX by

25  the alleged statements on the BitMEX website or in the BitMEX Terms of Service.  To plead

26

27        [6] Even "if a document is not attached to a complaint," if a "plaintiff refers extensively to
    the document or the document forms the basis of the plaintiff's claim," the "defendant may offer
    such a document" and the district court may consider it on a motion to dismiss. *United States v.*
28  *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1  these fraud claims, at a minimum, Plaintiff must allege with particularity:  (1) a misrepresentation

2  of fact (a false statement, concealment, or nondisclosure); (2) that the fact misstated or concealed

3  was "important" or "material"; (3) that Plaintiff "reasonably relied" on the misrepresentation; and

4  (4) the "causal connection" between the alleged damages and Plaintiff's "reliance" on the

5  misrepresentation.  *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 605-06, 609 (2014);

6  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011).  Plaintiff fails to allege particular

7  facts to satisfy all these elements with respect to each of his theories of fraudulent inducement.

8  The SAC should therefore be dismissed.

9
        **1.**      **Plaintiff Fails to Plead Fraudulent Inducement Related to Purported Market Manipulation by the HDR Trading Arm or Third Parties.**

10

11
        **(a)**      **Plaintiff has not pled facts to show a misrepresentation about trading on BitMEX.**

12        Plaintiff claims that Defendants falsely represented in the BitMEX Terms of Service that

13  HDR's "trading arm does not have access to any order flow, execution, customer or other

14  information of the Trading Platform on terms that are not otherwise available to any other

15  platform user."  SAC ¶¶ 137-38.  Plaintiff alleges that, instead of lacking access, the trading arm

16  possessed "God Access" to "all customer, order flow, execution and open position (contract)

17  information" on the platform, including "all order sizes, leverage amounts and liquidation prices,

18  all parameters of hidden orders," *id.* ¶ 138, and purportedly used that access to manipulate the

19  market to Plaintiff's detriment, *id.* ¶ 142.  Plaintiff further alleges that the trading arm engineered

20  "server freezes" and "lockouts" "offensively to liquidate regular traders including Plaintiff, while

21  itself not being subject to such freezes or lockouts."  *Id.* ¶ 146.  Defendants' service terms,

22  according to Plaintiff, were rendered false by such conduct and wrongly induced him to use

23  BitMEX, resulting in losses to him.  *Id.* ¶¶ 138, 146, 154.

24        Plaintiff's conclusory claims cannot survive dismissal.  In *BMA*, this Court already

25  dismissed with prejudice nearly identical claims of market manipulation and fraudulent

26  inducement as lacking particularity and plausibility.  Plaintiff's pleading suffers from the same

27  fatal defects, having alleged no particular facts to suggest market manipulation activity that would

28  have rendered the Terms of Service false, let alone false at the time Plaintiff opened his account

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1   on BitMEX, made deposits, or traded on the platform.  Simply put:  Plaintiff alleges no facts that

2   would permit an inference connecting his purported losses to any alleged market manipulation

3   supposedly carried out by Defendants.  Nor does Plaintiff provide any facts to support the claim

4   that any purported server freezes or lockouts occurred at times that affected his ability to close or

5   hedge positions, let alone any facts demonstrating that any such alleged freeze or lockout was

6   deliberately engineered by Defendants, or any one of them, as part of a market manipulation

7   scheme.

8        Plaintiff's attempt to masquerade his assertions as "fact" only further highlights the lack

9   of specifics.  *See* SAC ¶ 172.  Plaintiff vaguely asserts that the "insider trading desk" used

10  "automated software systems" to "liquidate traders" during "specific Manipulation Times" (*id.*

11  ¶ 172.a), but nowhere does he actually define what those "Manipulation Times" were.  Nor does

12  Plaintiff describe those "automated" systems, supposedly "operat[ing] on a 24 hours a day, 7 days

13  a week basis," with any clarity, or how they worked.  *Id.* ¶ 172.b.  Plaintiff next asserts, with no

14  factual support, that "*only* Defendants" could open trading positions "sufficiently large" to

15  manipulate markets, but he fails to support that bare conclusion with any details, and the only

16  example he provides of a "large" market move is from *two months prior* to his opening an

17  account on BitMEX.  *Id.* ¶ 172.e.  Plaintiff points in conclusory fashion to "highly suspicious"

18  bitcoin transfers that again he says, with no factual support, could *only* have been made by the

19  "insider trading desk."  *Id.* ¶ 172.h.  But Plaintiff again fails to connect such purported transfers to

20  any market manipulation.  Throughout the complaint, what Plaintiff lacks in factual substance he

21  tries to cover up with conclusory and inflammatory labels.  But lobbing accusations is no

22  substitute for pleading particular facts.  Rule 9(b) demands more.

23       More defects plague the pleadings.  Plaintiff's pleadings are marked by contradictions that

24  refute his ability to properly state a claim.  *See Anderson v. Virga*, 2017 WL 1179142, at *3 (E.D.

25  Cal. Mar. 29, 2017) ("[W]here the allegations contradict each other, very little can be inferred

26  factually to supply the essential elements of his claim.").  In several places, the SAC alleges that

27  "it was Defendants" who engaged in market manipulation causing Plaintiff's losses.  *Id.* ¶¶ 170,

28  172, 172.e, 173.  But then in other places, the SAC points to other, third-party purported market

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1    manipulators, in particular "Ben Aabtc." *Id.* ¶ 228.  Trying to square this, Plaintiff alleges that

2    Defendants *aided* Ben Aabtc's market manipulation. *Id.* ¶ 234.  But as this Court held in *BMA*,

3    the materially identical allegations (which rely primarily on Twitter screenshots) are

4    "speculative," *BMA* Order 10, and they remain so here.  Moreover, according to Plaintiff's own

5    pleading, the alleged "pump" engineered by Ben Aabtc occurred around April 2018 (*see* SAC

6    ¶¶ 232, 248), more than a year before Plaintiff even opened a BitMEX account, and so could not

7    have resulted in losses to Plaintiff.  *See also BMA* Order 10.  Tying itself in knots, Plaintiff's

8    pleading fails to state a claim.

9          Plaintiff's misrepresentation claims also fail because they lack any alleged factual basis.

10   Plaintiff does not allege that his claims about the so-called "insider trading desk" and its

11   purported inner-workings are based on personal knowledge.  But neither does Plaintiff base his

12   allegations on "information and belief"—the "only [other] alternative." *In re Silicon Graphics,*

13   *Inc. Sec. Litig.*, 970 F. Supp. at 763.  Plaintiff's failure to do even *that* warrants the complaint's

14   dismissal.  And even if Plaintiff's claims had been alleged on information and belief, those claims

15   would still fail, as Plaintiff never states a plausible "factual basis for [any] belief." *See Hilario v.*

16   *Allstate Ins. Co.*, 2020 WL 7643233, at *8 (N.D. Cal. Dec. 23, 2020) (dismissing "allegations"

17   that were "not supported by any clear factual basis") (quotation marks and citation omitted).

18   Notably, the near-identical allegations in *BMA* brought by Plaintiff's counsel here had previously

19   been made on "information and belief"; it was only after this Court dismissed those allegations,

20   as lacking any particular factual basis for that belief (among other reasons), that Plaintiff's

21   counsel struck from the complaint references to "information and belief" in an attempt to amend

22   the pleadings, arguing instead that the allegations were made "directly and positively." *BMA*

23   Order 8-9.  This Court rejected that maneuver too as implausible.[7] *Id.*  Plaintiff's current

24   _____

25         [7] The Court also recognized that Plaintiff's counsel had copied dozens of paragraphs
     "almost verbatim" from another action, *Messieh*, filed by different counsel in the Southern
26   District of New York, paragraphs which were "based on expert analysis and/or reports that
     [plaintiffs did] not produce." *BMA* Order at 8.  Plaintiff's counsel continues to repeat the
27   substance of many of the allegations from *Messieh* in the SAC, but has been careful this time not
     to copy the allegations verbatim.  Yet the SAC still fails to produce any of the expert analysis,
28   graphs, or reports underpinning the allegations in *Messieh*, leaving the borrowed parallel
     allegations in this case wholly unsupported.

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1    approach—basing his allegations on *neither* personal knowledge *nor* information and belief—

2    fares no better.

3                       **(b)    Plaintiff has not pled facts showing that a representation about
                                trading on BitMEX caused his purported losses.**

4

5          As this Court made clear in *BMA*, "[w]ithout factual allegations that [Plaintiff's] claimed

6    losses are 'fairly traceable' to defendants' alleged conduct, as opposed to acts by third parties or

7    inherent market forces, Article III standing is insufficiently pleaded." *BMA* Order 16.  Plaintiff

8    must plead "a causal connection between the injury and the conduct complained of," *Bennett v.*

9    *Spear*, 520 U.S. 154, 167 (1997), "explain[ing] why [he] think[s] that *defendants* were the

10   perpetrators," *BMA* Order 16 (emphasis in original).

11         Plaintiff fails to make this showing.  Nothing in the complaint permits the inference that

12   Plaintiff's purported losses can be fairly traced to Defendants' alleged conduct rather than market

13   forces or independent third party activity.  Plaintiff himself alleges the presence of external

14   "market manipulators" who are not Defendants (SAC ¶ 228), and also acknowledges the "high

15   volatility" of cryptocurrency markets (*id.* ¶ 193.g).  But Plaintiff fails to offer any facts to

16   distinguish Defendants' alleged actions from the purported conduct of those independent third

17   parties or market forces as the cause of his losses.  Just as the *BMA* plaintiffs could not survive a

18   motion to dismiss due to this pleading failure (*see* BMA Order 17-18), Plaintiff cannot do so here.

19   Indeed, Plaintiff does not even clearly allege trading losses from any purported *liquidation* as

20   opposed to his own *voluntary closure* of trading positions.  *See* SAC ¶ 89 ("[B]oth contracts were

21   liquidated *or otherwise closed*"); *see also id.* ¶ 119.  Seeking to mask these defects, Plaintiff

22   asserts several categories of losses in addition to purported "trading losses"—such as "loss of

23   use," trading commissions, and purchase "costs"—supposedly resulting from Defendants'

24   representations about the trading arm.  *See* SAC ¶ 181.  But those assertions fail because Plaintiff

25   does not properly plead facts, in the first place, to support a misrepresentation.

26         In any event, those claims to losses fail for other reasons too.  Plaintiff fails to allege

27   particular facts to support any damages due to loss of use, trading commissions, and purchase

28   costs arising from any purported misrepresentation about the trading arm, let alone particular

1  trades executed by the trading arm or anyone else purportedly acting in concert with Defendants.

2  *See infra* at § IV.B.2.d.  And as the reasoning in *BMA* makes clear, Plaintiff has "not adequately

3  connected the misrepresentations to [his] alleged damages because [his] damages only occurred

4  once [his] positions were [allegedly] liquidated, which as discussed above, could have been due

5  to the acts by third parties or inherent market forces."  *BMA* Order 17.  Indeed, Plaintiff has an

6  even more frivolous claim to damages than the *BMA* plaintiffs, since Plaintiff does not

7  specifically allege that he actually suffered any *liquidation* for which he is claiming losses.

**2.      Plaintiff Fails to Plead Fraudulent Inducement from the BitMEX Website's Liquidity Statement.**

**(a)      Plaintiff has not pled facts to show that a representation about liquidity was false.**

11      Plaintiff's claim that the BitMEX website's "1500% More Bitcoin/USD liquidity than any

12  other platform" statement was false is based solely on an illogical and inadequate comparison

13  between (1) purported liquidity numbers for a product he bought, and (2) purported liquidity

14  numbers for *different* products offered on other platforms.

15      Such a comparison does not suffice to support a claim that Defendants' liquidity statement

16  was false.  Plaintiff cites purported liquidity numbers (in the form of bid-ask spread and trading

17  volume numbers) for a specific product he purchased on BitMEX (XBTUSD perpetual contracts).

18  Plaintiff then tries to compare those numbers with purported liquidity numbers for products on

19  other trading platforms that he acknowledges are different (spot contracts on Binance and

20  unspecified futures contracts on OKEx).  *See* SAC ¶¶ 98 & n.7, 100, 365 n.28.  But Plaintiff

21  alleges no facts to show that those other products he selects, or their bid-ask spread or trading

22  volume numbers, are suitable points of comparison to argue, much less show with particularity,

23  that the statement on the BitMEX website was false.  *See Great Pac. Sec. v. Barclays PLC*, 2016

24  WL 11502178, at *7 (C.D. Cal. Oct. 19, 2016) ("Based on Plaintiff's own allegations, it is

25  unclear what these different figures represent, and therefore, if they can be compared.").

26      The perpetual contracts Plaintiff purchased (both XBTUSD and ETHUSD) are *derivative*

27  products; they are not contracts for the purchase or sale of cryptocurrency on a *spot* trading

28

1    market.  Nor are perpetual contracts the same as traditional futures contracts.[8]  Plaintiff's attempt

2    to compare the bid-ask spread and trading volume of these distinct products cannot support a

3    misrepresentation claim.  *See Edmundson v. Proctor & Gamble Co.*, 537 F. App'x 708, 709 (9th

4    Cir. 2013) (alleged false "claim must be sufficiently specific, either by reference to particular

5    product characteristics or 'criteria . . . such that the claim can be tested'") (citation omitted); *see*

6    *also Forman v. Meridian Bioscience, Inc.*, 367 F. Supp. 3d 674, 691 (S.D. Ohio 2019)

7    (dismissing misrepresentation claim as "mix[ing] up apples and oranges" because alleged false

8    "statement that *Meridian* would meet its fiscal . . . expectations is not disproven by a general

9    allegation [that another] business unit, *Magellan*, would not meet its quarterly expectations").

10           Plaintiff's claim of falsity fails in other ways too.  Plaintiff's allegation assumes, in

11    conclusory fashion and without providing any factual basis, that the website's liquidity statement

12    was based on bid-ask spread numbers.  Plaintiff's allegation also improperly assumes that

13    Defendants, in prior pleadings, admitted that the liquidity statement was based on trading volume.

14    Nowhere have Defendants made such a statement.[9]  Given such unsupported assumptions and

15    unfounded claims of admissions, Plaintiff fails to plead particular facts to make out a claim of

16    falsity.  Moreover, Plaintiff's failure to allege that liquidity can only be measured in either one of

17    the two ways he discusses (an allegation that would be implausible given the many ways in which

18    liquidity can be measured) renders his liquidity claim deficient as well.  *See* Huong Le & Andros

19    Gregoriou, *How Do You Capture Liquidity? A Review of the Literature on Low-Frequency Stock*

20    *Liquidity*, Journal of Economic Surveys (2020) Vol. 34, No. 5, at p. 1170, *available at*

21    https://doi.org/10.1111/joes.12385 ("In spite of abundant theoretical and empirical literature on

22    liquidity and related issues, there is not an appropriate definition of liquidity as well as a

23    _____

24           [8] For example, traditional futures contracts contain an expiry date resulting in a one-time
      payout and their pricing may reflect a premium or discount depending on the expiry date, whereas
25    perpetual contracts do not expire and have a periodic funding mechanism that mimics interest
      payments between buyers and sellers of the contract.  *See* Andrey Sergeenkov, *What is a*
26    *Perpetual Contract?*, CoinDesk (Oct. 5, 2021), *available at*
      https://www.coindesk.com/learn/what-is-a-perpetual-swap-contract.

27           [9] Defendants' motion to dismiss papers in *BMA* explained only that the plaintiffs there had
      no basis to allege that the liquidity statement reflected bid-ask spread, particularly when the only
28    metrics identified on the webpage containing the statement reflected the platform's trading
      volume.  *See BMA* Reply Br. 10 n.3 (ECF No. 172).

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1   consistent liquidity measure for all markets.").

2       Plaintiff also provides no "explanation of why or how" the differences in magnitude of the

3   bid-ask spread or trading volume numbers he purports to calculate show that Defendants'

4   liquidity statement was false. *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1077 (N.D. Cal.

5   2012) (dismissing fraud and concealment claim for failure to plead material falsity).  Plaintiff

6   appears merely to assume that the percentage difference in the bid-ask spread or trading volume

7   figures he provides automatically yields the *same* percentage difference in liquidity (*e.g.*, that a

8   200% bid-ask spread difference necessarily means a 200% difference in liquidity).  Not only is

9   such an assumption of arithmetic equivalence unsupported by any factual allegation, it is

10  implausible, as those figures again relate to *different* products.

11      Finally, Plaintiff claims that the comparison of liquidity on the website was an

12  "unqualified" statement that an "ordinary consumer" would understand as Plaintiff now purports

13  to have understood it.  SAC ¶ 100.  But even under the UCL, courts apply an "ordinary consumer

14  *acting reasonably under the circumstances*" standard, rather than a "least sophisticated

15  consumer" standard.  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 512 (2003)

16  (emphasis added).  And there is nothing reasonable about Plaintiff's purported understanding that

17  BitMEX provided, under any possible metric and at all times, precisely 1500% more liquidity

18  than any other platform offering trading of any USD-denominated bitcoin products, particularly

19  given the "constantly changing" nature of liquidity on cryptocurrency trading platforms.  Aug. 27,

20  2021 *Kanyshev* Order Sustaining Demurrer to Third Amended Complaint ("*Kanyshev* Order,"

21  Hibbard Decl. Ex. B) 9; *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th

22  Cir. 2019) ("Just because some consumers may unreasonably interpret the term differently does

23  not render the use of 'diet' in a soda's brand name false or deceptive.").

24      In fact, the BitMEX Terms of Service on which Plaintiff bases his fraudulent inducement

25  theory further establish that Plaintiff's understanding is entirely unreasonable.  Specifically, the

26  same section of the Terms that Plaintiff cites in support of his theory (Section 6) provides:  "The

27  information provided on the Website is for general information purposes only and is given in

28  good faith.  However, the information is selective and BitMEX may not verify all information,

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1    which may not be complete or accurate for your purposes and should not be relied on without

2    further enquiry.  The information should not be construed as a recommendation to trade or engage

3    the Service provided by BitMEX in a particular manner."  SAC Ex. 17, TOS § 6.1(d); *accord*

4    Hibbard Decl. Ex. A § 6.2(a).  The Terms also require users to acknowledge the "risks" involved

5    in trading, including the "high volatility risk of Bitcoin itself."  SAC Ex. 17, TOS § 1.4(e); *accord*

6    Hibbard Decl. Ex. A § 1.3(e), (f).  Given that (1) BitMEX users agree in the Terms that they will

7    not rely on "information provided on the Website . . . without further enquiry" and understand the

8    "high volatility risk" of trading, (2) the Terms do not promise any particular level of liquidity, and

9    (3) users had "live trading" data at their fingertips providing data about liquidity when trading on

10    the platform, SAC ¶ 84, no reasonable consumer would be led to believe that BitMEX promised

11    1500% more liquidity for all of its products than any other product on other platforms at any time

12    under any measure.  *See Bickoff v. Wells Fargo Bank N.A.*, 2016 WL 3280439, at *15 (S.D. Cal.

13    June 14, 2016), *aff'd*, 705 F. App'x 616 (9th Cir. 2017) (finding that "public would not be likely

14    to be deceived into thinking permanent financing was guaranteed" because Wells Fargo provided

15    "many statements of limitation and condition" that referenced permanent financing and the

16    absence of permanent financing in the agreement).[10]

17                                    **(b)    Plaintiff has not pled facts to show that a representation about
18                                             liquidity was material.**

19         To plead fraud, a plaintiff must allege a "misrepresentation of a *material* fact."  *Collins*,

20    202 Cal. App. 4th at 259 (emphasis added).  A fact is "material" if a "'reasonable consumer'

21    would deem it important in determining how to act in the transaction at issue."  *Id*. at 256

22    (discussing elements of CLRA claim based on fraudulent omission) (citation and alteration

23    omitted); *see also id.* at 258 (stating that under UCL's "fraud" prong, a plaintiff must show "that

24    members of the public are likely to be deceived") (quotation marks and citation omitted).

25    _____

26         [10] *See also Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (user agreement for
      online marketplace provider adequately described Automatic Bidding system such that plaintiff
      could not have relied on alleged misrepresentations); *In re Sony Gaming Networks & Customer*
27    *Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 990 (S.D. Cal. 2014) (in suit against online gaming
      system operator for misrepresenting users' ability to access system, alleged statement was not
28    misleading as a matter of law where User Agreement clearly stated access may be interrupted).

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1   Plaintiff has not and cannot allege the materiality of the "fact" allegedly misrepresented.

2   Plaintiff asserts in conclusory fashion that the "*amount* of liquidity" was "highly

3   material." SAC ¶ 96 (emphasis added). But that assertion fails to state a claim. Nowhere does

4   Plaintiff offer specific facts to support a plausible inference that the particular magnitude of

5   "Bitcoin/USD" liquidity on BitMEX compared to other platforms (1500%) was important to a

6   "reasonable consumer['s]" decision, *Collins*, 202 Cal. App. 4th at 259 (or as discussed, *infra*

7   § IV.B.2.c, that Plaintiff himself actually relied on it). Whether that magnitude was 100%,

8   1000%, or any other number less than 1500%, Plaintiff does not allege facts to show that the

9   specific number would have mattered. All Plaintiff says, in general terms, is that "the amount of

10  available liquidity determined the level of financial risk" and "potential profits that [he] could

11  realize." SAC ¶ 96 But that abstract assertion—devoid of facts suggesting that the specific

12  magnitude of liquidity would have made a difference in the decision-making process—is not

13  enough to overcome dismissal.[11] *See, e.g.*, *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101,

14  1113 (N.D. Cal. 2016) (dismissing complaint for failure to plausibly plead materiality because no

15  facts indicated that "the omitted information would otherwise have been important to Plaintiff's

16  decision").

17  Moreover, Plaintiff's liquidity argument lacks plausibility where he alleges no facts to

18  negate the far more plausible and "obvious" reasons for why a trader might use BitMEX (such as

19  the platform's leverage options or user interface). *Iqbal*, 556 U.S. at 682. Plaintiff does not and

20  cannot plead that the general "Bitcoin/USD" liquidity statement on the website alone would cause

21  a reasonable consumer to open a trading account, let alone to deposit bitcoins that could be used

22  to trade a variety of derivative products (including many that were tied to neither the price of

23  bitcoin nor the U.S. dollar) for purposes of trading "Bitcoin/USD" products or to make specific

24  leveraged trades in any of those products after having viewed the "live trading" data available for

25  _____

26  [11] Plaintiff's assertion is all the more implausible considering the small size of the
    positions that he claims to have opened, which would easily be absorbed by a market that Plaintiff
    alleges had billions of dollars in daily trading volume when he traded. *See* SAC ¶¶ 118-19

27  (alleging the "purchase" and liquidation or "clos[ure]" of XBTUSD and ETHUSD contracts
    between July 5 and July 11, 2019 at the cost of approximately one bitcoin each), ¶ 100 (alleging

28  daily trading volume of $5,465,341,825 on July 5 and $8,846,927,738 on July 11).

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

those products on the user interface.  SAC ¶ 84.  Absent such allegations, Plaintiff fails to show

that the liquidity statement actually mattered.  And commonsense dictates otherwise.

        **(c)**      **Plaintiff has not pled facts to show that he actually or**
                          **reasonably relied on a representation about liquidity.**

For similar reasons, Plaintiff fails to plead reliance.  The "reliance" element for a fraud

claim under California and federal law is not satisfied "[i]f the conduct of the plaintiff in the light

of his own intelligence and information was manifestly unreasonable."  *Hoffman v. 162 N. Wolfe*

*LLC*, 228 Cal. App. 4th 1178, 1194 (2014) (quoting *Seeger v. Odell*, 18 Cal. 2d 409, 415 (1941));

*see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012) (affirming

dismissal where "reliance on the purported misrepresentation was manifestly unreasonable" in

light of information provided in terms and conditions); *Walrus Master Fund Ltd. v. Citigroup*

*Glob. Mkts., Inc.*, 2009 WL 928289, at *3 (S.D.N.Y. Mar. 30, 2009) (dismissing CEA claim on

pleadings when plaintiff failed to "adequately plead[] justifiable reliance") (quotation marks and

citation omitted).  Plaintiff has alleged no facts showing that the representation of a particular

level of liquidity induced him to use the platform, make deposits, or engage in trades, let alone

that any reliance on such a representation would be reasonable.

To begin, no specific facts in the pleadings suggest that Plaintiff himself would have

ceased activities on the platform if the liquidity statement had *not* included the 1500% number

(for example, if it said 500% or 100% instead).  In *Beasley v. Lucky Stores, Inc.*, this Court

dismissed a similar misrepresentation claim due to a failure to plead reliance on an allegedly false

number in an advertisement, explaining that the plaintiff did not "draw a connection" between the

purported false statement that the product contained "0g Trans Fat" and "his decision to

purchase" the product.  400 F. Supp. 3d 942, 960 (N.D. Cal. 2019).  According to the Court, the

plaintiff's allegation that he "was seeking a product made with safe and lawful ingredients" did

"not suffice to allege he was seeking to purchase a product without *any* trans fat."  *Id.* (emphasis

added).  Similarly here, Plaintiff fails to allege with specific facts any connection between the

*magnitude* of the represented liquidity and his decision to trade on the platform.  That failure

alone requires dismissal of the misrepresentation claim about liquidity.

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1    Worse still, the alleged facts affirmatively show a complete *lack* of reliance.  As Plaintiff

2    himself concedes, he traded Bitcoin perpetual contracts (XBTUSD) at the same time and in the

3    same manner that he traded Ethereum perpetual contracts (ETHUSD).  *See* SAC ¶ 89.  Yet the

4    liquidity statement pertained only to Bitcoin products.  One cannot conclude that Plaintiff's

5    decision to open an account on BitMEX and subsequent trading behavior was motivated by the

6    Bitcoin-specific 1500% liquidity statement—given that he traded non-Bitcoin products on

7    BitMEX, and his Bitcoin-related trades mirrored those other trades.  Stripped of conclusory

8    statements, Plaintiff's own factual pleadings demonstrate that he traded *regardless* of the liquidity

9    statement.

10    Nor would any claim to reliance be reasonable.  The numerical liquidity representation

11    relates to "Bitcoin/USD" only generally.  But Plaintiff traded specific "XBTUSD" *perpetual*

12    contracts, and the only liquidity representation relating to the market for that specific product (as

13    being the "most liquid," SAC ¶ 95) is *not* alleged to be false by Plaintiff.  Plaintiff cannot claim

14    actual or reasonable reliance on a statement that does not pertain to the specific product that he

15    purchased when there was an accompanying statement that spoke directly to that specific product.

16    Moreover, Plaintiff purports to have personally relied on the Terms of Service, including

17    the warranties and representations.  *See, e.g.*, SAC ¶ 137 (quoting Section 6.3 of version of Terms

18    attached as Ex. 17), ¶ 153 (alleging reliance).  But Plaintiff fails to mention that in those same

19    warranties and representations, he acknowledged that "[t]he information provided on the Website

20    is for general information purposes," "may not be complete or accurate for your purposes and

21    should not be relied upon without further enquiry," nor should such information be "construed as

22    a recommendation to trade or engage the Service provided by BitMEX in a particular manner."

23    SAC Ex. 17 § 6.1(d) *accord* Hibbard Decl. Ex. A § 6.2(a).  Plaintiff cannot claim to have relied

24    on the liquidity statement while at the same time invoking the warranties and representations in

25    the Terms of Service that disclaim such reliance.  *See Princess Cruise Lines, Ltd. v. Superior Ct.*,

26    179 Cal. App. 4th 36, 43-44 (2009) (applying "pragmatic perspective" in reviewing inconsistent

27    reliance contentions and finding "*no reliance*").

28    Still more authorities compel dismissal of the complaint for its failure to plead reliance.

1  In *Dix v. Nova Benefit Plans, LLC*, the court dismissed a misrepresentation claim when, although

2  the plaintiffs alleged that they relied on the defendant's misrepresentations in deciding to

3  purchase a tax planning instrument, the plaintiffs' other "affirmative allegations" showed that

4  they were still unsure of whether to purchase the instrument after reading the misrepresentations.

5  *See* 2015 WL 12859221, at *6 (C.D. Cal. Apr. 28, 2015).  Similarly, in *Guttmann v. La Tapatia*

6  *Tortilleria Inc.*, the court held that the plaintiff failed to plausibly plead reliance when, although

7  the plaintiff claimed to have relied on the defendant's misrepresentation that its tortillas contained

8  "0g Trans Fat," that allegation was undercut by the plaintiff's own admissions that he had

9  extensive knowledge of trans-fats and labeling practices.  2015 WL 7283024, at *4 (N.D. Cal.

10  Nov. 18, 2015).  Further, in *Shaeffer v. Califia Farms, LLC*, the court affirmed the dismissal of a

11  complaint alleging a misrepresentation where plaintiff's own "affirmative allegations [showed]

12  that she actually relied on *other* reasons in deciding whether to buy" the product at issue.  44 Cal.

13  App. 5th 1125, 1144 (2020).  Just as the alleged facts in those cases negated any inference of

14  reliance, so too here.  Plaintiff's own alleged trading activity—*e.g.*, trading Ethereum-related

15  products even though the liquidity statement related only to Bitcoin—and his acknowledgment

16  that he would not rely upon information on the Website "without further enquiry" refute any

17  actual or reasonable reliance on the liquidity statement.

18              **(d)      Plaintiff has not pled facts to show that the alleged liquidity
                          representation caused any purported damages.**
19

20         Plaintiff alleges that he suffered losses because of Defendants' purported

21  misrepresentation pertaining to the platform's liquidity.  But that conclusory allegation of

22  causation is not supported by particularized facts, and thus Plaintiff lacks Article III standing.  *See*

23  *supra* at § IV.B.1.b.

24         Plaintiff's causation allegation lacks particularity.  Plaintiff contends (repeatedly) that the

25  platform's "insufficient" liquidity caused "price slippage" and "staggering price plunges" to his

26  detriment.  SAC ¶¶ 96, 120.  But nothing in the SAC suggests that Plaintiff actually experienced

27  any "price slippage"—or, as defined in the SAC, the "inability to fill market orders at the current

28  market price."  SAC ¶ 96 n.4.  Nor does Plaintiff explain, with facts, how allegedly insufficient

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1  liquidity on the platform led to "staggering price plunges" resulting in any loss to him.  Stating in

2  generalities that "insufficient" liquidity may contribute to price plunges is not enough.  Plaintiff

3  must explain how the liquidity on BitMEX (and not on its index constituents) specifically resulted

4  in a price drop that caused him harm.

5      Plaintiff fails to do that.  For example, nowhere does Plaintiff explain what he means by

6  "insufficient" liquidity, or how one determines what amount of liquidity is "sufficient."  The

7  wholesale absence of any particularity here compels dismissal.  *See, e.g.*, *Hall v. Time Inc.*, 158

8  Cal. App. 4th 847, 857 (2008) (affirming order sustaining demurrer for lack of causation where

9  plaintiff "did not allege he did not want" the product or that defendant's misrepresentations

10  "induced him to keep [the product] he otherwise would have returned").[12]

11      Plaintiff's own pleadings further refute causation.  As the pleadings demonstrate, Plaintiff

12  had access to "live trading" information, which provided him with direct access to the platform's

13  liquidity in real time.  *See* SAC ¶ 84.  Further evidencing Plaintiff's direct access to liquidity

14  information, the screenshots of actual trading metrics (including bid and ask figures) in the

15  complaint undermine the claim that the liquidity statement on the website was the cause of his

16  trading activity and purported losses, as Plaintiff made trades against the backdrop of such data.

17  *See* SAC ¶ 104.  And Plaintiff previously acknowledged that he had access to and relied on the

18  "visible order book" when trading.  *See* Compl. ¶ 408.  Put another way, Plaintiff's active trading,

19  along with his undisputed access to real-time liquidity information, "interrupt[s] the causal chain"

20  between the liquidity statement on the website and his alleged damages.  *Frome v. Renner*, 1997

21  WL 33308718, at *2 (C.D. Cal. Oct. 1, 1997) (dismissing complaint where damages were not

22  "proximately caused by" defendant's "misrepresentation" of his identity in conducting

23

24  [12] *See also Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005)
(dismissing complaint because, even though "Plaintiffs [had] meticulously describe[d] the
allegedly misleading advertisements," plaintiffs failed to allege facts showing "they entered into

25  the transaction *as a result* of those advertisements"); *Rossberg v. Bank of Am., N.A.*, 219 Cal.
App. 4th 1481, 1500 (2013) (plaintiffs' "conclusory allegation [that they] could have sold their

26  home and paid off their loans does not state a cause of action" where they did not allege the value
of their home at the relevant time, how much they owed on their loan, or whether they could have

27  sold their home for more than they owed); *Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350,
1355, 1363 (2010) (affirming demurrer of complaint alleging UCL claim based on

28  misrepresentations because of plaintiff's failure to satisfy causation requirement).

investigation into plaintiff's medical practices but by plaintiff's own actions); *Hall*, 158 Cal. App. 4th at 856 ("Even if the plaintiffs could have established the fee notice posted on Bank of America's ATM's was insufficient, they could not establish causation of loss because the ATM customer was required to accept the imposition of an additional fee by means of an on-screen prompt during the ATM transaction.") (citing *Brown v. Bank of Am.*, *N.A.*, 457 F. Supp. 2d 82, 89 (D. Mass. 2006)).  With such trading information at hand, causation cannot be properly pled.

Plaintiff also asserts various categories of damages that supposedly resulted from the website's liquidity statement.  But all of these claims to damages fail, since Plaintiff cannot properly plead causation as to *any* damages, as discussed above.  In any event, each of these categories of damages is insufficient on its own terms.

Loss of Use Damages.  Plaintiff claims that he would have opened an interest-bearing account and not a BitMEX trading account had he known about the actual amount of liquidity on the platform.  *See* SAC ¶ 117.  That conclusory assertion does not state a claim.  Plaintiff alleges no particular facts to suggest that he ever sought to invest Bitcoin in interest-bearing accounts (rather than to trade).  For example, Plaintiff does not allege that he made deposits in interest-bearing accounts before trading on BitMEX or that he withdrew Bitcoin from such interest-bearing accounts in order to make deposits on BitMEX.  Indeed, Plaintiff concedes that he still would have traded on other platforms.  *See* SAC ¶ 122.  Any loss of interest is thus the result of Plaintiff's own, independent decisions to *trade* in the cryptoderivative marketplace, which as discussed were not induced by the alleged liquidity representations.  *See supra* at § IV.B.2.c.

Trading Commissions.  Plaintiff next claims that he would not have engaged in trades on the platform (thus incurring expenses to pay "commissions") had he known "the truth about liquidity on BitMEX."  *See* SAC ¶ 122.  But as discussed, Plaintiff provides no facts to suggest that the website's liquidity statement actually induced him to make trades in the first place or that he did not have real-time access to data reflecting the liquidity of the products he traded on BitMEX.  *See supra* at § IV.B.2.c.  Moreover, although Plaintiff contends that he would have paid less in "trading commissions" on other platforms, he fails to account for the differences in products that those platforms offered (*e.g.*, Plaintiff alleges OKEx offered undefined futures, not

1    perpetual contracts with up to 100x leverage, SAC ¶¶ 98, 100 n.8) and the different fee structures

2    the platforms offered (*e.g.*, Plaintiff focuses solely on fees for "taker" positions, rather than

3    averaging the rebates and fees associated with "maker" and "taker" positions, respectively, *id.*

4    ¶ 122, presumably because BitMEX offered a rebate for "maker" positions that results in lower

5    average fees than alleged).  Because Plaintiff alleges no facts to indicate that the alleged trading

6    "commissions" relate even to comparable products, Plaintiff's allegation about incurring damages

7    in the form of higher trading "commissions" fails.  In any event, trading "commissions" cannot as

8    a matter of law be conceived as damages when, through payment of those fees, Plaintiff received

9    the benefit of the bargain agreed upon in the Terms of Service by opening, maintaining, and

10   closing trading positions.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)

11   (affirming dismissal of UCL claim where plaintiffs had "not alleged that they were deprived of an

12   agreed-upon benefit" but rather their alleged injury was premised on loss of a "benefit that was

13   not part of the bargain to begin with").

14            <u>Contract Costs</u>.  Plaintiff further contends that he incurred higher costs than he should

15   have for purchasing contracts due to the allegedly misrepresented liquidity.  *See* SAC ¶ 106.  But

16   Plaintiff does not allege any facts showing that the alleged contract costs failed to reflect

17   appropriate risk levels at the time he purchased the contracts.  Nonetheless insisting he was

18   "overcharged," Plaintiff offers no particulars as to how he was overcharged or by how much.

19   SAC ¶ 107.  Instead, Plaintiff includes a sketch of a graph with a hand-drawn curve that purports

20   to show the "damages" resulting from the increased "cost" due to the alleged liquidity

21   misrepresentation.  *Id.* ¶ 108.  But as acknowledged in Plaintiff's own pleadings, contract "costs"

22   were related to "leverage" (not "liquidity").  SAC ¶ 104.  In any event, the graph contains no

23   numbers or metrics (as one would expect there to be) that would allow an inference that damages

24   were incurred from the liquidity statement.  Neither Plaintiff's skeletal allegations nor his attempt

25   at a graph comes close to satisfying the particularity requirements of Rule 9(b).

26            <u>Trading Losses</u>.  Plaintiff further asserts that the liquidity representation caused his trading

27   losses.  *See* SAC ¶¶ 105, 120.  But that assertion also lacks merit.  Plaintiff alleges no facts to

28   support an inference that any liquidity representation proximately caused his trading losses.  No

1    facts are pled showing that Plaintiff's trading losses were caused by anything other than the

2    closing of his positions (as opposed to a liquidity representation).  *See Pac. Select Fund v. Bank*

3    *of N.Y. Mellon*, 2010 WL 11468787, at *4 (C.D. Cal. Sept. 20, 2010) (no proximate causation

4    where "alleged losses were not the result of relying on Defendant's alleged misrepresentations,

5    but were the result of Sigma's financial downfall").[13]  Indeed, Plaintiff does not even plausibly

6    allege that his positions were, in fact, ever *liquidated*; rather, he revised his core allegations to

7    claim that his "contracts were wrongfully liquidated *or otherwise closed*."  SAC ¶ 119 (emphasis

8    added); *see also* Dkt. 23 at 3.  Without specifically alleging liquidation, Plaintiff cannot claim

9    recovery of trading loss damages from liquidations.  And even assuming his positions were

10   liquidated, Plaintiff's contention that the purported manipulation by the "insider trading desk"

11   caused those liquidations (*see* SAC ¶ 154) contradicts his claim here that the liquidity statement

12   was the cause—an inconsistency that additionally warrants the claim's dismissal.  *See Anderson*,

13   2017 WL 1179142, at *3 ("[W]here the allegations contradict each other, very little can be

14   inferred factually to supply the essential elements of his claim.").

15        **C.    Plaintiff's Federal Claims Are Deficient in Multiple Additional Respects.**

16        Plaintiff's federal claims (Counts 14-19, brought under the CEA) fail for the reasons

17   stated above, as those claims are premised on the fraudulent inducement and related market

18   manipulation theories for which Plaintiff has failed to state a claim.  Even if Plaintiff could clear

19   the threshold hurdles identified above, Plaintiff's federal claims fail because Plaintiff does not

20   properly plead claims under the CEA.  Plaintiff brings a claim of fraudulent solicitation based on

21   purported misrepresentations (Count 14); claims of using a manipulative device or contrivance

22   through the "insider trading desk" (Count 15) and server freezes and overloads (Count 16); a

23   claim of price manipulation by the "insider trading desk" (Count 17); a claim of "principal agent

24

25        [13] *See also Goehring v. Chapman Univ.*, 121 Cal. App. 4th 353, 365 (2004) (former student's "damages were not caused by alleged misrepresentations that induced him to attend Chapman, but by his academic dismissal…. [H]is complaint was not based on wrongful dismissal, but on false representations that induced him to enroll and reenroll in Chapman."); *Serv. by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1819 (1996) (holding that "the termination [of the contract], not the misrepresentation . . . resulted in the alleged harm" and thus the plaintiff's supposed "reliance" on that misrepresentation does *not* constitute 'detriment proximately caused' by [the defendant's] conduct").

26

27

28

1    liability" based on alleged operations of the "insider trading desk" and alleged fraudulent

2    solicitations (Count 18); and a claim of aiding and abetting purported CEA violations involving

3    the "insider trading desk" and market manipulation by third party "Ben Aabtc" (Count 19).

4           None of these claims under the CEA can survive dismissal.  This Court already dismissed

5    with prejudice nearly identical claims alleged in *BMA* (*see BMA* Order 18-22), and should

6    similarly dismiss the claims here.  With respect to his manipulation-related claims (Counts 15, 16,

7    17, 19), Plaintiff must allege that "(1) Defendants possessed an ability to influence market prices;

8    (2) an artificial price existed; (3) Defendants caused the artificial prices; and (4) Defendants

9    specifically intended to cause the artificial price."  *BMA* Order 18 (quoting *In re Amaranth Nat.*

10   *Gas Commodities Litig.*, 730 F.3d 170, 173 (2d Cir. 2013)).  But Plaintiff has alleged no adequate

11   facts to support any of those elements.  *See also BMA* Order 19.  Nor has Plaintiff alleged "facts

12   that give rise to a strong inference of scienter."  *Id.* (quoting *In re Commodity Exch., Inc.*, 213 F.

13   Supp. 3d 631, 668 (S.D.N.Y. 2016)).  Put another way, Plaintiff's conclusory allegations of

14   specific intent "are not as least as strong as competing inferences that [his] losses were caused by

15   natural market forces or manipulation by third parties."  *BMA* Order 19.

16          Plaintiff's claims relating to fraudulent solicitation likewise fail (Counts 14, 18).  To the

17   extent those claims are even cognizable under the CEA, Plaintiff must allege:  "(1) a material

18   misrepresentation (or omission); (2) scienter; (3) a connection with the purchase or sale of

19   security; (4) reliance (transaction causation); (5) economic loss; and (6) loss causation."  *BMA*

20   Order 19.  But Plaintiff provides no specific allegations as to what any of the purported

21   misrepresentations were that form the basis of his fraudulent solicitation claims.  And to the

22   extent those claims refer to the purported representations about the trading arm and liquidity, the

23   claims fail for the reasons discussed above.  *See supra* at § IV.B.2.  Because Plaintiff does not

24   allege viable manipulation or fraudulent-solicitation claims, Plaintiff's claim for principal-agent

25   liability (Count 18) also fails.  *See also BMA* Order 20.

26          Plaintiff's claim for aiding and abetting CEA violations (Count 19) fails too.  To plead

27   such a claim, Plaintiff must allege that Defendants "(1) had knowledge of the principal's intent to

28   violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

of the principal's objective." *BMA* Order 21 (quoting *In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498, 511 (S.D.N.Y. 2004)).  Plaintiff alleges that Defendants aided and abetted each other, "Gregory Dwyer, Stuart Elkington, and Nick Andrianov, the notorious market manipulator Ben Aabtc and unknown third persons" in the "manipulation of cryptocurrency prices through manipulative trades, and substantially and willfully intended to assist these manipulations to cause artificial prices[.]"  SAC ¶ 410.  But absent any specificity regarding the manner in which Defendants aided and abetted, or how their purported conduct caused Plaintiff's supposed losses in July 2019, these conclusory assertions do not state a claim.  *See also* BMA Order 21 (holding nearly identical assertions to be "conclusory and speculative").

**D.      Plaintiff's State-Law Claims Are Likewise Deficient in Multiple Respects.**

The pleading deficiencies discussed above require dismissal of Plaintiff's statutory and common-law claims under California law as well.  This Court already rejected nearly identical state-law claims made in *BMA* (*see BMA* Order at 24-28), and so the claims here should be rejected too.  Those claims are premised on the same fraudulent inducement theories alleging purported market manipulation and misrepresented liquidity.  Because those theories have been inadequately pleaded, the state-law causes of action alleged in the SAC fail.  They are also deficient for the reasons discussed below.

**1.      The State Statutory Claims Fail.**

Plaintiff alleges claims under several California statutes—the Unfair Competition Law (Counts 1-4, 11, 12), the False Advertising Law (Count 9), the Consumers Legal Remedies Act (Count 10), and Cal. Penal Code § 496 (Count 21).  None of these claims can overcome dismissal.

**(a)      Plaintiff lacks standing to pursue his statutory claims.**

To start, Plaintiff lacks standing to pursue claims under the UCL, FAL, and CLRA.  To obtain relief under those statutes, Plaintiff must allege facts that he suffered harm because of Defendants' statutory violation.  *See, e.g.*, *Shaeffer*, 44 Cal. App. 5th at 1137.  Plaintiff here does not satisfy this threshold element.  Like his fraudulent inducement claims, Plaintiff's statutory claims are predicated upon purported misrepresentations and omissions from the BitMEX Terms

1    of Service, website, or otherwise.  But Plaintiff offers no facts supporting that his purported

2    reliance on those misrepresentations was the cause of his purported losses.  *See supra* at

3    §§ IV.B.1.b, IV.B.2.d.  Indeed, and again, Plaintiff does not even clearly state that his positions

4    were liquidated as opposed to voluntarily closed.  Plaintiff's failure to tie any purported losses

5    back to any conduct by Defendants bars his statutory claims.

6                    **(b)**      **Plaintiff's UCL claims are independently deficient.**

7          Plaintiff alleges UCL violations predicated on the statute's prohibitions against "unfair,"

8    "fraudulent," and "unlawful" business practices.  Those claims fail for lack of standing, as

9    discussed above, and they are deficient for other reasons as well.

10         Plaintiff asserts UCL claims predicated on the statute's "unfair" prong alleging

11    misrepresentations about the platform's liquidity (Count 1), misrepresentations about the "insider

12    trading desk" (Count 2), omission of material facts about the "insider trading desk" (Count 3),

13    and aiding and abetting market manipulation by Ben Aabtc (Count 4).  But a practice is "unfair"

14    under the UCL only when it is "'tethered' to specific constitutional, statutory or regulatory

15    provisions."  *Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 9 Cal. 5th 279, 303 n.10 (2020).

16    Plaintiff's conclusory allegations—which do not state with specificity any misrepresentation, let

17    alone any misrepresentation tied to any specific provision that was actually relied upon and

18    caused his alleged losses—fail to satisfy that standard.[14]

19         Plaintiff's UCL claim predicated on the "fraudulent" prong (Count 11) based on the same

20    purported misrepresentations fares no better.  Because Plaintiff does not adequately allege any

21    misrepresentation, reliance on a material misrepresentation, or causation, as discussed above, the

22    "fraudulent" UCL claim fails.

23         Plaintiff's UCL claim predicated on the "unlawful" prong (Count 12) also cannot survive

24    dismissal.  This claim is based on violations of the CEA, FAL, and CLRA.  Because Plaintiff

25    cannot state a claim with respect to any of those statutes (*supra* at § IV.C; *infra* at § IV.D.1.c-d),

26

27        [14] Appellate courts are divided as to the proper test for evaluating the "unfair" prong of the UCL.  *See Nationwide Biweekly Admin.*, 9 Cal. 5th at 303 n.10.  Regardless of the test applied, Plaintiff's claim fails because he does not allege any plausible misconduct by Defendants or that

28    Defendants' conduct caused his alleged losses.

1   this UCL claim fails.

2           **(c)**      **Plaintiff's FAL claim is also independently deficient.**

3          Plaintiff's FAL claim is predicated on the same purported misrepresentations about

4   HDR's trading arm and BitMEX's liquidity that underlie his fraudulent inducement claims.  SAC

5   ¶ 311.  He cannot prevail under the FAL if the representations were true.  *See Consumer Advocs.*

6   *v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).  Because Plaintiff has not

7   adequately pleaded that the alleged representations were false or that he relied upon them,

8   Plaintiff's FAL claim fails.  *See Great Pac. Sec.*, 2016 WL 11502178, at *16 (dismissing UCL

9   and FAL claims for failure to adequately plead reliance).

10          **(d)**      **Plaintiff's CLRA claim is independently deficient as well.**

11         Like Plaintiff's FAL claim, the CLRA claim here is predicated on the same purported

12  misrepresentations underlying his fraudulent inducement claims.  To prevail, Plaintiff must allege

13  that Defendants represented that a good or service "had any characteristic they do not have, or are

14  of a standard or quality they are not"—*i.e.*, a misstatement or omission.  *See, e.g., Daugherty v.*

15  *Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 834 (2006).  But as discussed, Plaintiff fails to

16  establish that Defendants made any such misrepresentation.  *See also In re Seagate Tech. LLC*

17  *Litig.*, 233 F. Supp. 3d 776, 790 (N.D. Cal. 2017) ("Plaintiffs must plead the falsity of affirmative

18  representations with specificity," such as by identifying "other source[s] of information"

19  revealing the true facts).  Plaintiff's conclusory statement that "Defendants' acts alleged in

20  paragraphs above violate the [CLRA]" (SAC ¶ 320)—where the paragraphs above are themselves

21  deficient—does not come close to satisfying basic pleading requirements.

22          **(e)**      **Plaintiff's claim under Cal. Penal Code § 496 is also deficient.**

23         Plaintiff bases this statutory claim on the same alleged misrepresentations concerning the

24  trading arm and purported market manipulation.  *See* SAC ¶¶ 426-27.  Section 496(a) of the Penal

25  Code "prohibits the obtaining of property 'in any manner constituting theft.'"  *Calhoun v. Google*

26  *LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021).  "Theft" includes obtaining property "by any

27  false or fraudulent representation or pretense."  Cal. Penal Code § 484(a).  As discussed, Plaintiff

28  fails to allege specifics facts supporting any false or fraudulent representation or pretense, and so

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1    his claim under § 496 fails.

2              **2.      The State Common Law Claims Fail.**

3         Plaintiff also asserts a series of common law claims under California law.  *See* SAC Count

4    5 (deceit), Count 6 (fraudulent inducement), Count 7 (negligent misrepresentation), Count 8

5    (rescission for negligent misrepresentation), Count 13 (negligence), Count 20 (restitution under

6    quasi-contract).  None of these claims alleges sufficient facts to survive dismissal.

7                   **(a)     Plaintiff's negligence-related claims fail.**

8         Plaintiff's negligence-related claims (Counts 7, 8, 13) rely on an argument this Court has

9    already rejected multiple times in the related *BMA* action:  that Plaintiff and Defendants have a

10   "special relationship" giving rise to a duty to "maintain a functional and fair cryptoderivatives

11   trading marketplace."  SAC ¶¶ 353, 355; *see BMA* Order 26-27.  While the specific plaintiff

12   advancing that argument has changed, the argument's fatal flaws remain the same.

13        Namely, the parties are in privity of contract and the duty alleged by Plaintiff merely

14   restates HDR's contractual obligation "to maintain an orderly market."  SAC Ex. 17 § 1.11

15   (BitMEX Terms of Service); Hibbard Decl., Ex. A § 1.12.  As this Court correctly held in

16   dismissing the pleadings in *BMA*, any such argument that Defendants are liable for "'negligent

17   breach of contractual duties owed directly to plaintiffs' has been squarely rejected by *Aas v.*

18   *Superior Ct.*, 24 Cal. 4th 627, 643 (2000)."  *BMA* Order 27; *see Aas*, 24 Cal. 4th at 643 ("A

19   person may not ordinarily recover in tort for the breach of duties that merely restate contractual

20   obligations."); *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*, 143 Cal. App. 4th

21   1036, 1042–43 (2006) (holding that a party in privity with defendant "may not recover in tort for

22   [defendant's] breach of a contractual obligation.").  Accordingly, Plaintiff has failed to allege a

23   duty on which his negligence claims may be based.[15]

24   _____

25        [15] This is true not only for Plaintiff's general negligence theory, but also for his negligence
     per se theory, which he explicitly bases on the same duty to "maintain a functional and fair
26   cryptoderivatives trading market place."  SAC ¶ 355.  The negligence per se doctrine "does not
     provide a duty of care, but may establish a relevant *standard when a duty already exists*."  *See*
27   *Alvarez v. MTC Fin. Inc.*, 2017 WL 1861844, at *4 n.9 (N.D. Cal. May 9, 2017) (emphasis
     added).  Thus, the statutes and regulations cited in Plaintiff's negligence per se allegations do not
28   separately provide a duty on which his claims may be based.  Put otherwise, the negligence per se
     doctrine "does not provide a private right of action for violation of a statute."  *Quiroz v. Seventh*

     NOTICE OF MOT. AND MOT. TO DISMISS
     3:21-cv-03576-WHO

1           Plaintiff attempts to avoid this result by citing Judge Massullo's decision in *Kanyshev* (*see*

2    SAC ¶ 353), which ultimately sustained Defendants' demurrer on causation grounds but first held

3    that Defendants owed a duty of care.  *Kanyshev* Order 22.  Judge Massullo reached that incorrect

4    conclusion by relying on *North American Chemical* for the proposition that a special relationship

5    may exist under *J'Aire* and *Biakanja* when parties are in contract for services.  *Id.* at 19 (citing *N.*

6    *Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 774 (1997); *J'Aire Corp. v. Gregory*, 24

7    Cal. 3d 799 (1979); *Biakanja v. Irving*, 49 Cal.2d 647 (1958)).  But Judge Massullo's decision did

8    not address *Stop Loss*, which—nine years after *North American Chemical*—held that *J'Aire*

9    applies only when the negligent performance of a contract injures a *third party*.  143 Cal. App.

10   4th at 1042–43.  As *Stop Loss* explained, neither *J'Aire* nor *Biakanja* involved situations where

11   the parties were in privity of contract, and "[i]nvoking the *Biakanja* factors to create a tort duty in

12   the absence of injury to a third party would circumvent [the economic loss] rule and blur the

13   law's distinction between contract and tort remedies."  *Id.* at 1043.

14          The Ninth Circuit's recent decision in *Berk* confirms that *Stop Loss*, not *North American*

15   *Chemical*, provides the governing rule here.  *Berk v. Coinbase, Inc.*, 840 F. App'x 914 (2020).

16   Like Plaintiff here, the plaintiff in *Berk* argued that the defendant "owed an independent duty of

17   care to ensure a functioning marketplace for [Bitcoin Cash] pursuant to [*Biakanja*]."  *Id.* at 915.

18   The Ninth Circuit rejected that argument, citing *Stop Loss* and reasoning that *J'Aire* and *Biakanja*

19   did not apply because the parties were in privity through Coinbase's user agreement.  *Id.* at 915–

20   16.  Here too, because the parties are in privity through the BitMEX Terms of Service, *J'Aire* and

21   *Biakanja* are inapplicable.[16]

22          In any event, as both Judge Massullo and this Court have consistently held in the face of

23

*Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006).

24       [16] Moreover, HDR expressly disclaims liability for service interruptions and warns users
that the website is dependent on technical systems that may intermittently prevent access.  The

25   Terms of Service specifically provide that no warranties exist as to users' trading activity or the
use of the platform, including related service interruptions, and that users "assume full

26   responsibility and risk of loss resulting from your use of the Service."  SAC Ex. 17 § 7.5; Hibbard
Decl. Ex. A § 7.4.  "By contractually agreeing to assume all the risks of" trading on BitMEX,

27   including the risk that Service may be interrupted, Plaintiff "consented to [the] acts or
omissions … which [may] otherwise be negligent."  *Coates v. Newhall Land & Farming, Inc.*,

28   191 Cal. App. 3d 1, 10 (1987).

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1    substantially similar allegations, Plaintiff's negligence claims also fail because Plaintiff has failed

2    to adequately allege causation.  *See Kanyshev* Order 22; *BMA* Order 27.  The SAC alleges that

3    Plaintiff sustained losses due to (a) server freezes on the BitMEX platform on July 11, 2019, and

4    (b) Defendants' failure to prevent market manipulation.  SAC ¶ 349, 356–58.  But Plaintiff does

5    not plead any non-conclusory factual allegations regarding any server outages that purportedly

6    occurred on July 11.  And as this Court held in *BMA*, Plaintiff's speculative third-party market

7    manipulation allegations fail to adequately plead a temporal connection between the third-party

8    manipulation and Plaintiff's losses.  *See* SAC ¶ 356; *see also* ¶¶ 252, 253, 262; *BMA* Order 9-10.

9    To the extent Plaintiff also claims market manipulation through insider trading by Defendants'

10   employees, *see* SAC ¶ 350, such allegations involve intentional—rather than negligent—conduct.

11   Thus, Plaintiff's negligence claims must be dismissed.

12                  **(b)      Plaintiff's remaining state-law claims fail.**

13          Plaintiff's remaining state-law claims—deceit (Count 5), fraudulent inducement (Count 6)

14   and restitution under quasi-contract (Count 20)—fail for the reasons stated above.  Nothing in the

15   pleadings offers particular facts to support these claims.  The deceit count fails because it is

16   merely derivative of Plaintiff's flawed theories of fraud.  With respect to the fraudulent

17   inducement count, addressed in detail above, Plaintiff further asserts that the Service Agreement

18   between the parties is also "voidable" and "unenforceable" because the agreement is "both

19   procedurally and substantively unconscionable."  SAC ¶ 293 & n.25.  But beyond such

20   conclusory legal assertions, Plaintiff provides no facts as to why that is so.  Even sparser is

21   Plaintiff's restitution claim, as it relies merely on the deficient allegations made elsewhere in the

22   complaint in arguing that Defendants derived "unjust enrichment" from their alleged conduct.  *Id.*

23   ¶¶ 415, 422.  These lingering state-law claims should be dismissed.

24   **V.     CONCLUSION**

25          For the foregoing reasons, and because Plaintiff has now had three attempts to state a

26   claim, this Court should dismiss the SAC with prejudice.

27

28

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1    DATED:  December 17, 2021                Respectfully submitted,

2                                             JONES DAY

3

4                                             By: /s/ Stephen D. Hibbard
                                                  Stephen D. Hibbard
5

6                                             Counsel for Defendants
                                              HDR GLOBAL TRADING LIMITED and
7                                             ABS GLOBAL TRADING LIMITED

8                                             AKIN GUMP STRAUSS HAUER & FELD
                                              LLP
9

10

11                                            By: /s/ Peter I. Altman
                                                  Peter I. Altman
12

13                                            Counsel for Defendant
                                              ARTHUR HAYES

14

15                                            LATHAM & WATKINS LLP

16

17                                            By: /s/ Douglas K. Yatter
                                                  Douglas K. Yatter
18                                                Matthew Rawlinson

19                                            Counsel for Defendant
                                              SAMUEL REED
20

21

22

23

24

25

26

27

28

NOTICE OF MOT. AND MOT. TO DISMISS
3:21-cv-03576-WHO

1    I, Stephen D. Hibbard, am the ECF User whose ID and password are being used to file

2    this DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S

3    SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN

4    SUPPORT THEREOF.  In compliance with Civil L.R. 5-1(h)(3), I hereby attest that all

5    signatories concur in this filing.

6    DATED:  December 17, 2021

7

8                                                          */s/ Stephen D. Hibbard*
                                                        STEPHEN D. HIBBARD

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28