Stephen D. Hibbard (State Bar No. 177865)
sdhibbard@jonesday.com
Matthew J. Silveira (State Bar No. 264250)
msilveira@jonesday.com
Eric Tung (State Bar. No. 275063)
etung@jonesday.com
Dennis F. Murphy, Jr. (State Bar No. 301008)
dennismurphy@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:    +1.415.626.3939
Facsimile:     +1.415.875.5700

Attorneys for Defendants
HDR GLOBAL TRADING LIMITED and ABS
GLOBAL TRADING LIMITED

Peter I. Altman (State Bar No. 285292)
paltman@akingump.com
Marshall L. Baker (State Bar No. 300987)
mbaker@akingump.com
Jessica H. Ro (State Bar No. 329737)
jro@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Telephone:    +1.310.229.1000
Facsimile:     +1.310.229.1001

Attorneys for Defendant
ARTHUR HAYES

Douglas K. Yatter (State Bar No. 236089)
douglas.yatter@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY  10020
Telephone:    +1.212.906.1200
Facsimile:     +1.212.751.4864

Matthew Rawlinson (State Bar No. 231890)
matt.rawlinson@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
Telephone:    +1.650.328.4600
Facsimile:     +1.650.463.2600

Attorneys for Defendant
SAMUEL REED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ANATOLY SOROKIN,<br><br>Plaintiff,<br><br>v.<br><br>HDR GLOBAL TRADING LIMITED (A.K.A. BitMEX), ABS GLOBAL TRADING LIMITED, ARTHUR HAYES, and SAMUEL REED,<br><br>Defendants. | Case No. 3:21-cv-03576-WHO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS ON GROUND OF FORUM NON CONVENIENS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     February 9, 2022<br>Time:     2:00 p.m.<br>Ctrm:    2 – 17th Floor<br>Judge:   Honorable William H. Orrick |

# NOTICE OF MOTION

PLEASE TAKE NOTICE that at 2:00 p.m. on February 9, 2022, before the Honorable William H. Orrick, in Courtroom 2, 17th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, defendants HDR Global Trading Limited ("HDR"), ABS Global Trading Limited ("ABS"), Arthur Hayes, and Samuel Reed (together, "Defendants"), will and hereby do move to dismiss this action under the forum non conveniens doctrine for the reasons stated below.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support of this Motion, the Proposed Order, and the declarations of Stephen D. Hibbard and Alexander Höptner filed concurrently herewith, the pleadings and records on file in this action, and upon such other matters as may be presented to the Court at or prior to the hearing on this Motion.

# RELIEF REQUESTED

This action should be dismissed on ground of forum non conveniens.

DATED:  January 3, 2022

Respectfully submitted,

JONES DAY

By: */s/ Stephen D. Hibbard*
      Stephen D. Hibbard

Counsel for Defendants
HDR GLOBAL TRADING LIMITED and
ABS GLOBAL TRADING LIMITED

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Peter I. Altman*
      Peter I. Altman

Counsel for Defendant
ARTHUR HAYES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP


By: _/s/ Douglas K. Yatter_
    Douglas K. Yatter
    Matthew Rawlinson

Counsel for Defendant
SAMUEL REED

**NOTICE OF MOT. & MOT. TO DISMISS ON GROUND OF FORUM NON CONVENIENS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF THE ISSUE ............................................................................ 2

III.  BACKGROUND ................................................................................................... 2

    A.    Plaintiff's Trading on the BitMEX Platform ............................................ 2

    B.    Plaintiff's Counsel's Litigation Against Defendants in California ......... 4

    C.    Plaintiff's Claims .................................................................................... 5

IV.   ARGUMENT ....................................................................................................... 6

    A.    England Is an Adequate Alternative Forum............................................ 7

    B.    Dismissal is Favored Because English Law Applies. ............................ 8

    C.    The Balance of Public and Private Interests Compels Dismissal. ....... 11

V.    CONCLUSION .................................................................................................. 16

**NOTICE OF MOT. & MOT. TO DISMISS ON GROUND OF FORUM NON CONVENIENS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Altmann v. Republic of Austria,*
    317 F.3d 954 (9th Cir. 2002).................................................................6

*Ayco Farms, Inc. v. Ochoa,*
    862 F.3d 945 (9th Cir. 2017).................................................................11

*BMA v. HDR Global Trading Ltd.,*
    No. 20-cv-3345 (N.D. Cal. Sept. 7, 2021) ................................1, 4, 5, 12

*Cal-State Business Products & Services, Inc. v. Ricoh,*
    12 Cal. App. 4th 1666 (1993)...........................................................9, 10

*Carijano v. Occidental Petroleum Corp.,*
    643 F.3d 1216 (9th Cir. 2011)................................................................7

*Cook v. Champion Tankers AS,*
    2013 WL 1629136 (N.D. Cal. Apr. 16, 2013) .......................................11

*Daniels-Hall v. Nat'l Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010)..................................................................3

*Dibdin v. S. Tyneside NHS Healthcare Tr.,*
    2013 WL 327324 (C.D. Cal. Jan. 29, 2013) ...........................................7

*Ehrlich v. Hartford Life & Accident Ins. Co.,*
    2021 WL 4472845 (N.D. Cal. May 7, 2021) ...........................................9

*Gates Learjet Corp. v. Jensen,*
    743 F.2d 1325 (9th Cir. 1984)................................................................7

*Hardy v. HDR Global Trading Ltd.,*
    Case No. CGC-20-588283 (June 28, 2021) ............................................5

*Hatfield v. Halifax PLC,*
    564 F.3d 1177 (9th Cir. 2009)................................................................8

*Kanyshev v. HDR Global Trading Ltd.,*
    No. CGC-20-584483 (S.F. Super. Ct.)....................................................4

CASE NO. 3:21-cv-03576-WHO

**NOTICE OF MOT. & MOT. TO DISMISS ON GROUND OF FORUM NON CONVENIENS**

*Lewis v. Liberty Mut. Ins. Co.*,
    953 F.3d 1160 (9th Cir. 2020)................................................................7

*Lexington Ins. Co. v. Forrest*,
    263 F. Supp. 2d 986 (E.D. Pa. 2003) ......................................................7

*LLC v. Superior Ct.*,
    189 Cal. App. 4th 500 (2010)...................................................................9

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
    583 F.3d 656 (9th Cir. 2009)...............................................................7, 8

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001)........................................................ passim

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012).............................................................9, 10

*Medimatch, Inc. v. Lucent Tech., Inc.*,
    120 F. Supp. 2d 842 (N.D. Cal. 2000) ...................................................10

*Merton Co. v. PepsiCo Inc.*,
    874 F. Supp. 634 (S.D.N.Y. 1995)...........................................................9

*Moletech Glob. H.K. Ltd. v. Pojery Trading Co.*,
    2009 WL 3151147 (N.D. Cal. Sept. 25, 2009) ......................................12

*Nedlloyd Lines B.V. v. Superior Ct.*,
    3 Cal. 4th 459 (1992) ...............................................................................8

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009)..................................................................9

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)..........................................................................11, 12

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998)..................................................................7

*Roby v. Corp. of Lloyd's*,
    996 F.2d 1353 (2d Cir. 1993)..................................................................10

*Seidman & Seidman v. Wolfson*,
    50 Cal. App. 3d 826 (1975).....................................................................10

**NOTICE OF MOT. &  MOT. TO DISMISS ON GROUND OF FORUM NON CONVENIENS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006)..................................................................................7, 11

*United States v. Macias*,
    789 F.3d 1011 (9th Cir. 2015)........................................................................................14

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009)..........................................................................11, 12, 13, 15

*Walker Earle v. UNUM Life Ins. Co. of Am.*,
    2020 WL 4434951 (C.D. Cal. July 23, 2020) ...............................................................9

*Wash. Mut. Bank, FA v. Superior Ct.*,
    24 Cal. 4th 906 (2001) ..............................................................................................9, 10

*Wilson-Chalkley v. HDR Global Trading Ltd.*,
    Case No. CGC-20-588042 (S.F. Super. Ct. June 28, 2021).........................................5

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018)......................................................................................7

*Zdilar v. HDR Global Trading Ltd.*,
    Case No. CGC-21-590192 (S.F. Super. Ct. Nov. 10, 2021) ...............................5, 15

**RULES**

Fed. R. Civ. P. 12 ...............................................................................................................12

**OTHER AUTHORITIES**

Daniel M. Klerman, et al., *Legal Origin or Colonial History?,* 3 J. Legal Analysis
    379 (2011) ...................................................................................................................9

*Senators Propose Largest Expansion Of Federal Judiciary In Decades To Help
    Overburdened District Courts*, Mondaq (Aug. 20, 2021),
    https://www.mondaq.com/unitedstates/constitutional-administrative-
    law/1103840/senators-propose-largest-expansion-of-federal-judiciary-in-
    decades-to-help-overburdened-district-courts..........................................................11

**NOTICE OF MOT. &  MOT. TO DISMISS ON GROUND OF FORUM NON CONVENIENS**

1    **I.    INTRODUCTION**

2         This case concerns claims governed by English law brought by a Russian citizen residing

3    in Europe involving the offshore cryptocurrency derivatives trading platform BitMEX.  Because

4    California is an inconvenient forum, the Court should dismiss this case so that this dispute can be

5    heard in England, where it belongs.

6         This lawsuit was filed in this Court primarily because Plaintiff's non-resident lead counsel

7    is licensed in California, which he views as a "plaintiff-friendly" forum.  Hibbard Decl. Ex. E.  In

8    fact, this is one of ten lawsuits Plaintiff's counsel has filed in California against Defendants—in

9    this Court or in state court—on behalf of plaintiffs from around the world who allege they lost

10   bitcoin after trading leveraged derivative contracts on BitMEX.

11        None of those lawsuits has made it past the pleading stage.  This Court dismissed one of

12   them with prejudice—*BMA v. HDR Global Trading Limited*, No. 20-cv-3345—after Defendants

13   had filed three Rule 12(b) motions.  In *BMA*, the plaintiffs' theories for their claims mutated from

14   vague market manipulation to California-law based fraudulent inducement arising from the

15   BitMEX Terms of Service, revealing Plaintiff's counsel's tactic to exploit California courts to

16   pursue claims that have no nexus to California.  In fact, three of Plaintiff's counsel's state-court

17   actions have already been dismissed on forum non conveniens grounds.  As in those cases,

18   Plaintiff Anatoly Sorokin—who resides in Europe—acknowledges that the BitMEX Terms of

19   Service constitute the "Agreement" underlying his claims (*see, e.g.*, Second Amended Complaint

20   ("SAC") ¶ 86), but ignores that those same Terms of Service provide that his claims be governed

21   by English law and also designate England as the non-exclusive forum for disputes.

22        These choice-of-law and forum-selection clauses reflect the fundamentally international,

23   non-U.S. (and certainly not California-based) nature of the BitMEX platform.  Defendant HDR

24   Global Trading Limited ("HDR"), the sole owner of BitMEX, is a Republic of Seychelles

25   corporation.  The platform itself is hosted on servers in Ireland.  The BitMEX trading engine was

26   originally developed in, and continues to be developed primarily from, Hong Kong.  Plaintiff

27   seeks to establish jurisdiction in California by naming ABS Global Trading Limited ("ABS"), a

28   Delaware subsidiary of HDR that historically maintained an office in San Francisco, as an

1   additional defendant.  But ABS's functions—providing system maintenance support, software

2   engineering, and digital security services to HDR—have, at best, a tenuous relationship to

3   Plaintiff's claims that he sustained trading losses when his trading positions were liquidated,

4   purportedly as a result of alleged misrepresentations in the Terms of Service and on the BitMEX

5   website.  In fact, Plaintiff's positions were not liquidated—he voluntarily closed them—a fact

6   Plaintiff tries to mask in the SAC by inconsistently alleging that his positions "were liquidated *or*

7   *otherwise closed*."  SAC ¶ 89 (emphasis added); *see also id.* ¶ 119; *cf. id.* ¶¶ 120, 350, 374, 398

8   (alleging unequivocally, and falsely, "liquidations" of his positions).

9          On November 24, 2020, Plaintiff's counsel tweeted that BitMEX "can be sued in

10   California courts, which are very plaintiff-friendly. Hunting season is open! If you sustained

11   losses on #BitMEX, [direct message] me!"  Hibbard Decl. Ex. E.  Plaintiff's complaint followed a

12   few months later.  Like the other cases filed by Plaintiff's counsel, the present suit seeks to take

13   advantage of California's laws despite Plaintiff's claims lacking ties to California.  Plaintiff is not

14   a California resident, did not use BitMEX from California, and his decision to sue in California is

15   entirely tactical, not the product of any connection to the State.  This Court should dismiss

16   Plaintiff's action so that this dispute can proceed in England where it belongs.[1]

17   **II.     STATEMENT OF THE ISSUE**

18          Whether Plaintiff's action should be dismissed under the forum non conveniens doctrine.

19   **III.    BACKGROUND**

20          **A.     Plaintiff's Trading on the BitMEX Platform**

21          Plaintiff opened his account on the BitMEX trading platform on June 24, 2019.  SAC

22   ¶ 84.  He is a citizen of and resides in Russia.  SAC ¶ 6; Compl. ¶ 32.  To use the platform,

23   Plaintiff agreed to the Terms of Service.  *See* Höptner Decl. ¶ 7; *see also* SAC ¶ 86

24   (acknowledging Terms of Service as "agreement" underlying Plaintiff's claims).[2]

---

[1] Defendants have also filed a motion to dismiss the SAC under Rule 12(b), which the Court need not decide if the Court grants this motion.

[2] The SAC wrongly contends that Exhibit 17 contains the version of the Terms of Service in place when Plaintiff opened his account.  SAC ¶ 86; *compare* SAC Ex. 17, *with* Höptner Decl. ¶ 8, Ex. 1.  Plaintiff also incorrectly alleges that this version of the Terms is the version currently on the BitMEX website.  *See, e.g.*, SAC ¶ 136, n.16 (citing to BitMEX website for current version of Terms and also citing to Exhibit 17 as reflecting those terms); *compare* SAC Ex. 17, *with*

1   Among the provisions to which Plaintiff agreed, Section 16 ("Governing Law")
2   establishes that "[t]he Terms and any non-contractual obligations arising out of or in connection
3   with them are governed by and construed in accordance with English law." Höptner Decl. ¶ 8,
4   Ex. 1. Section 17 ("Dispute Resolution") further provides that "the courts of England have non-
5   exclusive jurisdiction to settle any dispute arising from or connected with these Terms." *Id.*
6   Moreover, the Terms expressly prohibit United States citizens and residents from trading on the
7   platform. *Id.* ¶ 8, Ex. 1, Introduction. Plaintiff does not allege that he made any trade, or
8   otherwise accessed the BitMEX platform, from the United States, let alone from California. In
9   fact, HDR's records show that Plaintiff accessed his account only from Russia and Greece during
10  the "Relevant Period" identified in the SAC. Höptner Decl. ¶ 9, Ex. 3; *see* SAC ¶ 7.

11  Plaintiff recognizes that "BitMEX is a Peer-to-Peer Trading Platform that offers leveraged
12  contracts that are bought and sold in cryptocurrency." *See* Hibbard Decl. Ex. F.[3] Cryptocurrency
13  itself is not listed for sale on BitMEX; rather, BitMEX offers for trading a variety of contracts—
14  including contracts that allow trading with leverage of up to 100 times the amount of collateral
15  the trader has deposited on account with BitMEX—whose value is determined with reference to
16  the price of the underlying cryptocurrency. *Id.*

17  Plaintiff regularly traded on the BitMEX platform for several weeks after registering his
18  account on June 24, 2019. Höptner Decl. ¶ 12 & Exs. 4, 5. Plaintiff opened and closed positions
19  on both XBTUSD and ETHUSD perpetual contracts—which allow traders to speculate on the
20  future price of the Bitcoin and Ethereum cryptocurrencies, respectively—realizing both gains and
21  losses. *Id.* ¶¶ 12-13 & Exs. 4-6. But none of Plaintiff's positions on BitMEX was ever
22  liquidated. *Id.* ¶ 12 & Ex. 5. Rather, Plaintiff closed his open, long XBTUSD and ETHUSD
23  positions on July 11, 2019 by executing sell orders via the BitMEX application programming
24  interface ("API"). *Id.* ¶ 12 & Exs. 4, 5. Plaintiff withdrew all remaining funds from his account
25  between July 16, 2019 and January 31, 2020. *Id.* ¶ 13 & Ex. 6. The logs storing this information
26  _____

    Höptner Decl. ¶ 8, Ex. 2.

27      [3] The BitMEX website is cited throughout the Complaint (*see, e.g.*, SAC ¶¶ 13, 40, 95,
    126-127, 136, 152) and thus incorporated by reference, and is otherwise subject to judicial notice.
28  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

1    are maintained on servers in Ireland.  *Id.* ¶ 10.  In fact, the BitMEX platform itself, including the

2    website, API data and all related code, along with relevant user data, including user activity logs,

3    transaction history, wallet balance, margin balance, passwords, and user preferences, is hosted on

4    servers in Ireland.  *Id.*

5           **B.      Plaintiff's Counsel's Litigation Against Defendants in California**

6           To date, Plaintiff's counsel has filed ten lawsuits, on behalf of plaintiffs from around the

7    world, against Defendants in this Court and in California state courts.  Hibbard Decl. ¶ 2.  None

8    of the other cases brought by Plaintiff's counsel has advanced beyond the pleading stage.  *Id.* ¶ 4.

9    In the first two cases filed—*BMA* and *Kanyshev v. HDR Global Trading Limited*, No. CGC-20-

10   584483 (S.F. Super. Ct.)—Plaintiff's counsel fundamentally alleged market manipulation, though

11   he gradually tried to transform the claims in those actions through repeated amendments.  *Id.*

12          This Court recently dismissed with prejudice all claims not already voluntarily dismissed

13   from the *BMA* action, which consolidated three separate complaints filed by plaintiffs based in

14   Puerto Rico, Russia, and Romania.  *See BMA* Dkt. 186 (dismissal order); *accord BMA* Dkt. 153

15   ¶¶ 32-36 (Second Amended Consolidated Complaint).  Judge Massullo has sustained two

16   demurrers in *Kanyshev*—which alleges claims by three Russian citizens, one of whom later

17   claimed to have moved to California after the initial complaint was filed, *compare Kanyshev*

18   Compl. ¶¶ 8-10 (May 19, 2020), *with Kanyshev* Second Am. Compl. ¶¶ 33-35 (Mar. 15, 2021)—

19   with leave to amend, describing the most recent amendment as "the last go-around."  Hibbard

20   Decl. Ex. A at 12-13.

21          Since filing the *BMA* and *Kanyshev* complaints in May 2020, Plaintiff's counsel has

22   removed any conceivable doubt that his choice of a California forum is tactical.  In November

23   2020, Plaintiff's counsel posted on his personal Twitter page that BitMEX "can be sued in

24   California courts, which are very plaintiff-friendly.  Hunting season is open!  If you sustained

25   losses on #BitMEX, [direct message] me!"  Hibbard Decl. Ex. E.  In every case, Plaintiff's

26   counsel has named ABS as a defendant to establish jurisdiction in this State, though in each case

27   ABS's supposed involvement with the conduct alleged is tenuous at best and propped up by

28   conclusory allegations made "on information and belief," with no supporting facts.

1    Accordingly, in every other case filed by Plaintiff's counsel in which a forum non

2    conveniens motion has been decided, the court has dismissed in favor of England.  *See* Hibbard

3    Decl. Ex. B (*Hardy v. HDR Global Trading Limited*, No. CGC-20-588283 (S.F. Super. Ct. June

4    28, 2021)); Ex. C (S.F. Super. Ct. *Wilson-Chalkley v. HDR Global Trading Limited*, No. CGC-

5    20-588042 (June 28, 2021); Ex. D (*Zdilar v. HDR Global Trading Limited*, No. CGC-21-590192

6    (S.F. Super. Ct. Nov. 10, 2021)).  In dismissing these complaints, Judge Cheng found that every

7    public and private interest factor favored dismissal or was neutral.  *See* Hibbard Decl. Ex. B at 9–

8    14; Ex. C at 7–11; Ex. D at 10–14.  For example, Judge Cheng emphasized in *Zdilar*—a case

9    brought by "a European Union citizen who currently resides in continental European Union"—

10   that English courts would be more familiar with the applicable law (English), that all parties

11   except ABS (which "was not involved with any of the operations relevant to Plaintiff's alleged

12   loss") reside outside of California, and that "the systems and witnesses with information relevant

13   to Plaintiff's claims are located abroad."  Ex. D at 2, 10–13.

14        **C.    Plaintiff's Claims**

15        Plaintiff Sorokin filed suit on May 12, 2021 and subsequently amended his complaint

16   twice, but the SAC still consists of substantially similar allegations to those that this Court

17   rejected in dismissing the related *BMA* action.  The SAC asserts claims against a Seychelles

18   corporation, HDR; two of its co-founders, Arthur Hayes and Samuel Reed (alleged to be residents

19   of Florida and Massachusetts, respectively); and HDR's U.S. subsidiary, ABS.  Plaintiff's entire

20   case is premised on the outlandish and unsupported assertion that Defendants designed BitMEX

21   "to fraudulently induce unsuspecting victims to deposit their bitcoins with Defendants and then

22   rob them blind of all their property."  SAC ¶ 2.  Plaintiff asserts that Defendants fraudulently

23   induced him in two ways to use the BitMEX platform:  (1) Defendants purportedly misstated in

24   the BitMEX Terms of Service that HDR's trading arm does not have trading privileges or access

25   to any customer information on the platform on terms that are not otherwise available to any other

26   platform user, and concealed market manipulation by the trading arm and/or third parties; and

27   (2) Defendants purportedly misstated on the BitMEX website that the platform had "1500% more

28   Bitcoin/USD Liquidity than any other platform."  SAC ¶¶ 84-87.  These fraudulent inducement

1    theories form the basis of all of Plaintiff's claims under state and federal law.

2          Plaintiff's claims are barred by the choice-of-law clause in BitMEX's Terms of Service

3    mandating the application of English law.  *See* Höptner Decl. Ex. 1 § 16.  But the SAC omits any

4    mention of that clause or of the Terms of Service's England forum-selection clause.

5          Searching for a toehold to keep this action in California, Plaintiff sues ABS, a Delaware

6    corporation with an office in San Francisco that is HDR's sole U.S. subsidiary.  Höptner Decl.

7    ¶ 5.  ABS is currently winding down its U.S. operations and will have no staff in California by the

8    beginning of this year.  *Id*.  But before winding down, ABS staff provided system maintenance

9    support, software engineering, and digital security services to HDR on a contractual basis.  *Id*.

10   And ABS staff had no alleged involvement in drafting the alleged liquidity statement on the

11   BitMEX website.  *See also id*. ¶ 6.  Likewise, the Terms of Service, which contain information

12   about the trading arm and which Plaintiff incorrectly claims were "transmitted" from servers in

13   San Francisco to Plaintiff's "personal computer" (SAC ¶ 136), were drafted and placed on the

14   BitMEX website from outside California, not by ABS personnel in California.  Höptner Decl. ¶ 8.

15   In fact, the Terms of Service, which are located on servers in Ireland, pre-date ABS's formation.

16   *Id*. ¶¶ 8, 10.  ABS also played no role in the Treasury Desk, which Plaintiff provocatively refers

17   to as the "Insider Trading Desk," as the Treasury Desk is based in Asia and has no team members

18   in the United States.  *Id*. ¶ 11.  ABS therefore has no material connection to Plaintiff's claims.

19   And all of the other material allegations in Plaintiff's SAC similarly involve people, systems, and

20   records outside of California.

21   **IV.   ARGUMENT**

22         "A district court may decline to exercise its jurisdiction . . . when it appears that the

23   convenience of the parties and the court and the interests of justice indicate that the action should

24   be tried in another forum."  *Altmann v. Republic of Austria*, 317 F.3d 954, 972 (9th Cir. 2002).  In

25   dismissing an action on forum non conveniens grounds, the court must first examine "whether an

26   adequate alternative forum exists," and then examine "whether the balance of private and public

27   interest factors favors dismissal."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir.

28   2001).  The court also "must make a choice of law determination in considering whether to

dismiss the action." *Id*. at 1143. While the forum non conveniens doctrine is discretionary, it is an "abuse of discretion" to "fail[] to balance the relevant factors," *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1334 (9th Cir. 1984), or to balance the factors "unreasonabl[y]." *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1163–64 (9th Cir. 2020). Here, because (1) England is a suitable forum, (2) Plaintiff's claims are governed by English law, and (3) no legitimate interest supports retaining this action in California, the Court should dismiss this case.

### A.     England Is an Adequate Alternative Forum.

An alternative forum is adequate when "the defendant is amenable to service of process and the forum provides 'some remedy' for the wrong at issue." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006) (citation omitted). "'[V]oluntary submission to service of process' suffices to meet the first requirement." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1225 (9th Cir. 2011) (citation omitted). The second, "some remedy," requirement is also "easy to pass; typically, a forum will be inadequate only where the remedy provided is so clearly inadequate or unsatisfactory, that it is no remedy at all." *Id*. Thus, a foreign forum may be adequate even if the "exact suit" could not be brought there, *Lueck*, 236 F.3d at 1144, and even if the foreign "law, or the remedy afforded, is less favorable," *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 666 (9th Cir. 2009).

Here, the first adequacy requirement is met because all Defendants consent to the jurisdiction of the courts of England to resolve Plaintiff's claims, which are subject to a permissive forum selection clause imbuing English courts with jurisdiction to resolve disputes arising from Plaintiff's use of the BitMEX platform. *See* Höptner Decl. ¶¶ 8, 15.

Moreover, Plaintiff "could still pursue relief for fraud . . . or negligent misrepresentation under British law." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1089 (9th Cir. 2018) (discussing *Richards v. Lloyd's of London*, 135 F.3d 1289, 1296 (9th Cir. 1998)); *see also Lexington Ins. Co. v. Forrest*, 263 F. Supp. 2d 986, 1000 (E.D. Pa. 2003) ("[L]egal remedies for fraud are available" in England.). England thus meets the "easy" requirement of providing "some remedy" for the harm Plaintiff has allegedly suffered. *Carijano*, 643 F.3d at 1225; *see also Dibdin v. S. Tyneside NHS Healthcare Tr.*, 2013 WL 327324, at *3 (C.D. Cal. Jan. 29, 2013)

1   ("This court is not aware of any Ninth Circuit case that has found England inadequate, but there

2   are a number finding England adequate.").  The adequacy of England as an alternative forum is

3   further supported by the fact that Plaintiff agreed to Terms of Service specifying both England as

4   a forum for dispute resolution and English law as governing.  *See* Höptner Decl. ¶ 8.  Any

5   argument by Plaintiff that he anticipates difficulty prevailing in England is insufficient to render

6   that forum inadequate.  *See Loya*, 583 F.3d at 666.

7        **B.        Dismissal is Favored Because English Law Applies.**

8        "[B]efore dismissing a case for forum non conveniens, a district court must first make a

9   choice of law determination." *Lueck*, 236 F.3d at 1148 (internal quotation marks and citation

10  omitted).  While the choice of law determination is not itself dispositive, it "weighs in favor of

11  dismissal" when "[foreign] law is *likely* to apply." *Id.* at 1148 & n.6. (emphasis added) (choice of

12  law inquiry favored dismissal because the court "would likely be required to interpret and apply

13  New Zealand law, law with which it is unfamiliar").

14       Here, Plaintiff accepted the BitMEX Terms of Service when registering for and using a

15  BitMEX trading account.  SAC ¶ 136 & Ex. 17.  All of Plaintiff's claims arise out of his use of

16  that account and relate to the Terms of Service:  several expressly rely on the Terms, *see, e.g.*,

17  SAC ¶¶ 137-138, 187-188, 286, 291, 298, 303, 316; others challenge the provision of services

18  under the Terms, *see, e.g.*, SAC ¶¶ 228, 326, 339, 348, 373, 381, 395, 405, 410, 416, 426; and

19  still others allege reliance on statements on the BitMEX website, *see, e.g.*, SAC ¶¶ 114, 285, 300,

20  311, 368, contrary to Plaintiff's representation and warranty under the Terms that "general

21  information" on the website "should not be relied upon without further enquiry," Höptner Decl.

22  Ex. 1 § 6.2(1).  These claims must all be resolved under English law, pursuant to the choice-of-

23  law provision in the Terms of Service.  *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182-83 (9th

24  Cir. 2009) (noting that a choice-of-law clause "provid[ing] that the agreement 'shall be governed

25  by and construed under English law,' could not be clearer" and applying English law to contract

26  claims as well as related fraud and tort claims); *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th

27  459, 470 (1992) ("[A] valid choice-of-law clause, which provides that a specified body of law

28  'governs' the 'agreement' between the parties, encompasses all causes of action arising from or

1    related to that agreement, regardless of how they are characterized . . . .").

2           Where, as here, "a federal question action . . . involves supplemental jurisdiction over

3    state law claims, [courts] apply the choice of law rules of the forum state—here, California."

4    *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009); *see also* SAC ¶¶ 43-44 (citing 28

5    U.S.C. §§ 1331, 1332(a), 1367(a)); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir.

6    2012) ("A federal court sitting in diversity must look to the forum state's choice of law rules to

7    determine the controlling substantive law.") (internal quotation marks and citation omitted).

8    California's choice-of-law rules require the application of English law in this case.  California has

9    a "strong policy" of favoring the enforcement of choice-of-law clauses.  *Wash. Mut. Bank, FA v.*

10   *Superior Ct.*, 24 Cal. 4th 906, 916-17 (2001) (citing Restatement (Second) of Conflicts of Laws

11   § 187(2)).  This strong policy is bolstered here by the reasonableness of designating a single

12   jurisdiction's law to apply to agreements entered with many individuals in various jurisdictions.

13   *See 1-800-Got Junk? LLC v. Superior Ct.*, 189 Cal. App. 4th 500, 514-15 (2010) (agreeing that

14   "the desire for a uniform facilitation of the conduct of trade was valid reason for use of form

15   contract") (internal quotation marks and citation omitted).[4]  Moreover, the reasonableness of the

16   Terms of Service's selection of English common law as the governing law for disputes with users

17   across the globe is reinforced by the fact that England has a "great deal of expertise in

18   commercial litigation," *Cal-State Business Products & Services, Inc. v. Ricoh*, 12 Cal. App. 4th

19   1666, 1682 (1993) (enforcing New York choice-of-forum clause for the same reason), and HDR's

20   home forum of Seychelles applies English common law, *see* Daniel M. Klerman, et al., *Legal*

21   *Origin or Colonial History?*, 3 J. Legal Analysis 379, 383 n.4 (2011) (recognizing Seychelles as

22   "mixed legal system," applying English common law, "especially in commercial matters," to

23   overlay its French civil law antecedents).[5]

24          [4] *See also Ehrlich v. Hartford Life & Accident Ins. Co.*, 2021 WL 4472845, at *8 (N.D.
     Cal. May 7, 2021) (holding reasonable choice of Florida law governing employee benefits plan
25   where plan sponsor had hundreds of thousands of employees in all 50 states); *Walker Earle v.*
     *UNUM Life Ins. Co. of Am.*, 2020 WL 4434951, at *11 (C.D. Cal. July 23, 2020) (determining
26   application of Maine law to benefits plan was reasonable in part because defendant, "by applying
     the laws of one governing jurisdiction, . . . [ensured the terms were] uniformly administered").

27          [5] Moreover, Hong Kong, where the bulk of HDR's relevant operations are located, is a
28   former British colony and has a legal system derived from English law.  *Merton Co. v. PepsiCo*
     *Inc.*, 874 F. Supp. 634, 638 (S.D.N.Y. 1995) ("British law, both common and statutory, is the law

                                                9                    CASE NO. 3:21-cv-03576-WHO

No exception to the application of English law exists here.  If a "reasonable basis . . . exists for the choice of law, the parties' choice generally will be enforced unless . . . *both* . . . the chosen law is contrary to a fundamental policy of California *and* . . . California has a materially greater interest in the determination of the particular issue."  *Wash. Mut. Bank*, 24 Cal. 4th at 917 (emphasis added).  The enforcement of English law is not contrary to any fundamental policy of California.  California "has no public policy against the enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate." *Id.*  And Plaintiff's inability to benefit from California laws if the choice-of-law clause is enforced does not contravene California public policy.  *Medimatch, Inc. v. Lucent Tech., Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) ("The mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law.").

Nor does California—a jurisdiction in which use of the platform is prohibited—have a materially greater interest than England in the determination of this action.  Plaintiff is a resident of Russia (SAC ¶ 6), and "California's interest in applying its law to residents of foreign states is attenuated."  *Mazza*, 666 F.3d at 594.  Meanwhile, England has a significant interest in the correct application of its own law to international commercial disputes.  *See, e.g.*, *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362-63 (2d Cir. 1993) (affirming enforcement of English choice-of-law and forum-selection clauses "where the underlying transaction is fundamentally international in character" because such clauses "eliminate uncertainty in international commerce and insure that the parties are not unexpectedly subjected to hostile forums and laws").[6]

Given that English law governs Plaintiff's claims, an English court would naturally be

_____

of Hong Kong.").

[6] No more availing are Plaintiff's allegations of fraudulent inducement, as Plaintiff does not—and cannot—allege that the choice-of-law clause itself was obtained by fraud.  *Ricoh*, 12 Cal. App. 4th at 1676-77; *Seidman & Seidman v. Wolfson*, 50 Cal. App. 3d 826, 831 (1975) (affirming validity of choice-of-law provision where plaintiff brought suit based on an alleged misrepresentation but "there [was] no contention that inclusion of the choice of law clause itself was obtained by misrepresentation or mistake"); *see also Roby*, 996 F.2d at 1363 (rejecting exception to enforceability of choice-of-law and forum-selection clauses on ground that "their incorporation into the agreement was the result of fraud" because plaintiffs "do not contend that they were fraudulently induced into agreeing to" those particular clauses).

1   more familiar with the applicable law and better suited to adjudicate those claims.  And English

2   courts have a far greater interest in applying their own law consistently than California courts

3   have in applying foreign law to claims brought by foreign citizens.[7]  This case will serve only to

4   "burden . . . local courts and juries" with Plaintiff's claims arising in Europe and governed by

5   English law.  *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009).

6          **C.     The Balance of Public and Private Interests Compels Dismissal.**

7          The interest-factor balancing analysis "compare[s] the burdens and benefits of litigation in

8   a foreign country against the burdens and benefits of litigation in a particular state."  *Ayco Farms,*

9   *Inc. v. Ochoa*, 862 F.3d 945, 949 (9th Cir. 2017).  Here, both the relative public interests of

10  England and California and the private interests of the parties establish that England is the most

11  appropriate forum for Plaintiff's claims.

12         **1.     The Public Interest Factors Overwhelmingly Favor England.**

13         In analyzing whether to dismiss a case for forum non conveniens, "[c]ourts consider the

14  following public interest factors:  (1) local interest of lawsuit; (2) the court's familiarity with

15  governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs

16  of resolving a dispute unrelated to this forum."  *Lueck*, 236 F.3d at 1147.  The "local interest"

17  factor "ask[s] only if there is an identifiable local interest in the controversy, not whether another

18  forum also has an interest."  *Tuazon*, 433 F.3d at 1182.  "California has little interest in litigation

19  arising out of events that took place [abroad]" between largely out-of-state parties.  *See Cook v.*

20  *Champion Tankers AS*, 2013 WL 1629136, at *9 (N.D. Cal. Apr. 16, 2013).

21         Here, there is no reason to tax the already overburdened federal court system in California

22  with the trial of claims bearing no connection to California.[8]  Potential jurors and judges in this

---

23         [7] Further, the Court need not conclusively resolve the choice-of-law question in granting
24  this motion.  The forum non conveniens doctrine "is designed in part to help courts *avoid*
    conducting complex exercises in comparative law."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235,
25  251 (1981) (emphasis added).  As a result, the choice-of-law inquiry favors dismissal when it is
    "*likely*" that foreign law will apply.  *Lueck*, 236 F.3d at 1148 & n.6 (emphasis added).

26         [8] The Northern District of California is one of the "busiest district courts" in the country.
    Andrew Robertson, *Senators Propose Largest Expansion Of Federal Judiciary In Decades To*
27  *Help Overburdened District Courts*, Mondaq (Aug. 20, 2021),
    https://www.mondaq.com/unitedstates/constitutional-administrative-law/1103840/senators-
28  propose-largest-expansion-of-federal-judiciary-in-decades-to-help-overburdened-district-courts.

State have no interest in resolving a dispute brought by a Russian citizen residing in Russia based on his use, from Europe, of an offshore cryptocurrency exchange, where the Terms of Service are governed by English law and establish English courts as a forum for dispute resolution. "Because California has little, if any, interest in this case, there is no reason to impose the burdens of trial and jury service on citizens of this forum." *Moletech Glob. H.K. Ltd. v. Pojery Trading Co.*, 2009 WL 3151147, at *7 (N.D. Cal. Sept. 25, 2009); *see also Vivendi*, 586 F.3d at 696 ("The burden on local courts and juries unconnected to the case and the costs of resolving a dispute unrelated to the forum also favor dismissal.").

The potential burden in this case is particularly acute. Sifting through the expansive and scattershot allegations in the 141-page, 431-paragraph SAC, and each of its 18 exhibits, is likely to demand considerable judicial resources. Indeed, several of the lawsuits brought by Plaintiff's counsel against Defendants have already required extensive motion practice, and every application for complex designation decided in state court has been granted. Hibbard Decl. ¶¶ 3–4. The *BMA* case provides a stark example of the judicial resources that would be required by this case, as the complaint there was repeatedly amended to add additional plaintiffs (including through consolidation), add and remove defendants and claims, and mutate the legal and factual theories in an effort to avoid dismissal under Rule 12. Moreover, "lack of familiarity with foreign law counsel[s] in favor of dismissal." *Vivendi*, 586 F.3d at 696. In short, California's interest in this case "is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Piper*, 454 U.S. at 261; *see also Vivendi*, 586 F.3d at 696 (affirming dismissal of case brought by foreign plaintiff when "the conduct underlying [the plaintiff's] claims occurred overseas, and all of the witnesses but three reside" overseas). This Court simply has no interest in managing this litigation.

### 2.  The Private Interest Factors Strongly Favor England.

"Courts consider the following private interest factors [in determining whether to dismiss a case for forum non conveniens]:  (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to

1  trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of

2  a case easy, expeditious and inexpensive." *Lueck*, 236 F.3d at 1145 (internal quotation marks

3  and citation omitted).  Because Plaintiff does not reside in California and no evidence material to

4  Plaintiff's claimed injury is located in California, none of these factors supports the convenience

5  of California as a forum for this lawsuit.

6        Plaintiff's forum choice is not entitled to a presumption of convenience here.  "[A] foreign

7  plaintiff's choice of forum merits less deference than that of a plaintiff who resides in the selected

8  forum, and the showing required for dismissal is reduced." *Id.*  A foreign plaintiff's forum choice

9  is entitled to even less deference when the plaintiff has engaged in "forum shopping." *Vivendi*,

10  586 F.3d at 694 (plaintiff's forum choice is entitled to little deference when plaintiff chooses the

11  forum for its more favorable law).  Because Plaintiff is not a California or U.S. resident, his

12  opportunistic choice of California as a forum—laid bare by his California-licensed counsel's

13  solicitation of clients by promising that "California courts . . . are very plaintiff-friendly"

14  (Hibbard Decl. Ex. E)—is not entitled to deference.

15        Defendants' respective residences do not establish California as a convenient forum

16  either.  The private-interest analysis "should not rest on the number of witnesses or quantity of

17  evidence in each locale"; rather, the "court should evaluate the materiality and importance of the

18  anticipated [evidence and] witnesses' testimony and then determine their accessibility and

19  convenience to the forum." *Lueck*, 236 F.3d at 1146 (internal quotation marks and citation

20  omitted).  Accordingly, private interests may favor dismissal even when a defendant resides in the

21  chosen forum.  *See id.* at 1147 (private interests favored dismissal from District of Arizona even

22  though defendant resided in Arizona).

23        Here, HDR—the owner of the BitMEX platform and the service provider to Plaintiff

24  under the Terms of Service—is incorporated and located abroad.  Höptner Decl. ¶¶ 3-4.  Mr.

25  Hayes and Mr. Reed are alleged to reside on the Atlantic coast in Florida and Massachusetts,

26  respectively.  SAC ¶¶ 37-38.  Although ABS has historically had an office in California, it is

27  currently winding that office down and will have no staff in the United States by the end of 2021.

28  Höptner Decl. ¶ 5.  More significantly, however, ABS's connection to Plaintiff's claims is

**NOTICE OF MOT. &  MOT. TO DISMISS ON GROUND OF FORUM NON CONVENIENS**

1  tenuous at best.  Prior to ABS's winding down, ABS staff provided system maintenance support,

2  software engineering, and digital security services to HDR on a contractual basis.  *Id.*  ABS staff

3  did not play any role in preparing the BitMEX Terms of Service, which were drafted in Hong

4  Kong *before ABS was formed. Id.* ¶ 8.  Nor did ABS staff have any role in drafting the liquidity

5  statement on the BitMEX website or work on the Treasury Desk.  *Id.* ¶¶ 6, 11.  Accordingly, any

6  purported ABS witnesses located in California are neither "material[]" nor "importan[t]" to

7  Plaintiff's claims.  *Lueck*, 236 F.3d at 1146.

8      Further, Plaintiff resides in Europe, all of Plaintiff's logins to the BitMEX platform

9  originated in Europe, and the effect of the alleged damages would be felt by Plaintiff where he

10  resides in Europe.  SAC ¶ 6; Höptner Decl. ¶ 9.  Likewise, the key evidence from Plaintiff

11  bearing on his claims—his personal computer and any records relating to his cryptocurrency

12  trading—is located with him in Europe.

13      Other potential sources of proof for the claims and defenses in this action are also located

14  outside of California (indeed, outside of the U.S.).  For example, user activity logs, transaction

15  history, wallet balance, and margin balance data are stored in Ireland.[9]  Höptner Decl. ¶ 10.

16  Plaintiff alleges his position was wrongfully liquidated because of certain actions by HDR's

17  Treasury Desk (SAC ¶ 212), which operates in Asia.  Höptner Decl. ¶ 11.  The Terms of Service

18  and statement on the website that Plaintiff identifies were also drafted without ABS staff's

19  involvement, and are transmitted to users from servers in Ireland.  *Id.* ¶¶ 6, 8, 10.  All of this

20  evidence is either closer to England than California (e.g., records in Europe) or nearly equidistant

21  from either forum (e.g., witnesses and records in Hong Kong).[10]  Accordingly, England is the

22  more convenient place for trial.[11]  Indeed, Judge Cheng relied on these same fundamental facts in

23  [9] Plaintiff's counsel attached a declaration to the SAC asserting that webpages for "bitmex.com" were transmitted from South Florida to Puerto Rico when he pinged that URL in September 2021.  SAC, Pogodin Decl. ¶¶ 9-11.  But that says nothing of where the servers

24  hosting the BitMEX platform are located, either now or at the relevant time.  Nor does any of this relate to California; if anything, Plaintiff's counsel's declaration contradicts the SAC's

25  unsupported allegations that webpages were transmitted to Plaintiff in Europe directly from San

26  Francisco.  *See* SAC ¶ 95.

27  [10] *See* Hibbard Decl. ¶ 9 (outlining flight times between different forums).  The Court can "take judicial notice of the distance between . . . two locations."  *United States v. Macias*, 789 F.3d 1011, 1021 n.6 (9th Cir. 2015).

28  [11] Moreover, the places where the primary individuals and evidence are located have long

1    granting Defendants' forum non conveniens motion in *Zdilar*. *See* Hibbard Decl Ex. D at 13

2    (finding "California is a seriously inconvenient forum" where "there are no material witnesses in

3    California and [the] systems and witnesses with information relevant to Plaintiff's claims are

4    located abroad, and in some cases closer to England than to San Francisco").

5         Finally, any allegations regarding the locations of system engineers and traders on the

6    Treasury Desk are of no moment.  While Plaintiff suggests that his trading positions were

7    liquidated as a result of server freezes and market manipulation, HDR's records show that *none* of

8    Plaintiff's positions on the BitMEX platform were ever liquidated.  Höptner Decl. ¶ 12.  Rather,

9    Plaintiff himself closed his open, long XBTUSD and ETHUSD positions on July 11, 2019 by

10   executing sell orders via the BitMEX API.  *Id.*  Those who Plaintiff contends are responsible for

11   liquidations that never occurred are neither "material[]" nor "importan[t]" witnesses. *Lueck*, 236

12   F.3d at 1146.

13        In short, any evidence in California would have, at best, a tenuous connection to

14   Plaintiff's claims and would be duplicative of the primary sources of evidence, which are outside

15   of California.  The inclusion of ABS in the SAC is a transparent attempt by Plaintiff's counsel to

16   manufacture jurisdiction in California.[12]  Moreover, even where cases have some limited

17   connection to a U.S. forum, courts have still dismissed on forum non conveniens grounds where,

18   as here, the plaintiff and the material evidence is located outside of the United States.  *See*

19   *Vivendi*, 586 F.3d at 696 (affirming dismissal of case brought by foreign plaintiff when "the

20   conduct underlying [the plaintiff's] claims occurred overseas, and all of the witnesses but three

21   reside in Europe"); *Lueck*, 236 F.3d at 1147 (affirming dismissal when Arizona's interest was

22   histories of cooperation with the English courts, while Hong Kong (a former British colony) has a
     legal system largely based on English law.

23        [12] Plaintiff's assertion that various third party "service providers" are located in the Bay
     Area is irrelevant. SAC ¶¶ 40-41.  Plaintiff has no basis to argue that these third parties store *any*
24   documents or data relevant to Plaintiff's claims, let alone have exclusive access to such evidence.
     Judge Cheng rejected this same argument in *Zdilar* in granting the defendants' forum non
25   conveniens motion in that action.  *See* Hibbard Decl. Ex. D at 13 ("Plaintiff describes categories
     of *Defendants'* records that he believes these third parties possess, but the Court is not persuaded
26   that Plaintiff must subpoena these records from the third parties rather than seek them from
     Defendants directly through available discovery mechanisms.  Plaintiff's decision to pursue
27   discovery of Defendants' own documents through non-party subpoenas does not support a finding
     that Plaintiff will have easier access to Defendants' evidence if this case were to proceed in
28   California.") (emphasis in original).

**NOTICE OF MOT. &  MOT. TO DISMISS ON GROUND OF FORUM NON CONVENIENS**

1    "slight compared to the time and resources the district court in Arizona would expend if it were to

2    retain jurisdiction over th[e] dispute").

3         Here, California has little to no connection to the underlying dispute.  Plaintiff, a Russian

4    citizen and resident, created a BitMEX account and accessed and traded on the BitMEX platform

5    from Europe.  In doing so, Plaintiff agreed that English law governs any dispute arising from his

6    use of the platform and that English courts have jurisdiction over such disputes.  Those same

7    Terms of Service also designated HDR, not ABS, as the service provider.  By any measure, the

8    overwhelming weight of evidence relating to Plaintiff's lawsuit is based outside of California.

9    England, not California, is thus the most convenient forum for Plaintiff's claims.  The Court

10   should decline exercising jurisdiction over Plaintiff's SAC, providing Plaintiff the opportunity to

11   re-file in England, as contemplated by the Terms of Service to which he agreed.

12   **V.      CONCLUSION**

13        For the foregoing reasons, the Court should grant Defendants' motion and dismiss this

14   action on the ground of forum non conveniens.

15

16   DATED:  January 3, 2022                    Respectfully submitted,

17                                              JONES DAY

18

19                                              By:  */s/ Stephen D. Hibbard*
                                                     Stephen D. Hibbard

20
                                                Counsel for Defendants
21                                              HDR GLOBAL TRADING LIMITED and ABS
                                                GLOBAL TRADING LIMITED
22

23                                              AKIN GUMP STRAUSS HAUER & FELD LLP

24

25                                              By:  */s/ Peter I. Altman*
                                                     Peter I. Altman

26
                                                Counsel for Defendant
27                                              ARTHUR HAYES

28

**NOTICE OF MOT. &  MOT. TO DISMISS ON GROUND OF FORUM NON CONVENIENS**

LATHAM & WATKINS LLP


By: */s/ Douglas K. Yatter*
       Douglas K. Yatter
       Matthew Rawlinson

Counsel for Defendant
SAMUEL REED

         CASE NO. 3:21-cv-03576-WHO

**NOTICE OF MOT. &  MOT. TO DISMISS ON GROUND OF FORUM NON CONVENIENS**

1    I, Stephen D. Hibbard, am the ECF User whose ID and password are being used to file

2    this DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS ON GROUND OF

3    FORUM NON CONVENIENS; MEMORANDUM OF POINTS AND AUTHORITIES IN

4    SUPPORT THEREOF.  In compliance with Civil L.R. 5-1(h)(3), I hereby attest that all

5    signatories concur in this filing.

6    DATED:  January 3, 2022

7

8                                                        */s/ Stephen D. Hibbard*
                                                          STEPHEN D. HIBBARD

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28