1  Stephen D. Hibbard (State Bar No. 177865)
   sdhibbard@jonesday.com
2  Matthew J. Silveira (State Bar No. 264250)
   msilveira@jonesday.com
3  Eric Tung (State Bar. No. 275063)
   etung@jonesday.com
4  Dennis F. Murphy, Jr. (State Bar No. 301008)
   dennismurphy@jonesday.com
5  JONES DAY
   555 California Street, 26th Floor
6  San Francisco, CA  94104
   Telephone:   +1.415.626.3939
7  Facsimile:   +1.415.875.5700

8  Attorneys for Defendants
   HDR GLOBAL TRADING LIMITED and ABS
9  GLOBAL TRADING LIMITED

10 Peter I. Altman (State Bar No. 285292)
   paltman@akingump.com
11 Marshall L. Baker (State Bar No. 300987)
   mbaker@akingump.com
12 Jessica H. Ro (State Bar No. 329737)
   jro@akingump.com
13 AKIN GUMP STRAUSS HAUER & FELD LLP
   1999 Avenue of the Stars, Suite 600
14 Los Angeles, CA  90067-6022
   Telephone:   +1.310.229.1000
15 Facsimile:   +1.310.229.1001

16 Attorneys for Defendant
   ARTHUR HAYES

Douglas K. Yatter (State Bar No. 236089)
douglas.yatter@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY  10020
Telephone:   +1.212.906.1200
Facsimile:   +1.212.751.4864

Matthew Rawlinson (State Bar No. 231890)
matt.rawlinson@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
Telephone:   +1.650.328.4600
Facsimile:   +1.650.463.2600

Attorneys for Defendant
SAMUEL REED

17
### UNITED STATES DISTRICT COURT

18
### NORTHERN DISTRICT OF CALIFORNIA

19
### SAN FRANCISCO DIVISION

20

21  ANATOLY SOROKIN,

22          Plaintiff,

23      v.

24  HDR GLOBAL TRADING LIMITED (d/b/a
    BitMEX), ABS GLOBAL TRADING
25  LIMITED, ARTHUR HAYES, and
    SAMUEL REED,

26          Defendants.

27

28

Case No. 3:21-cv-03576-WHO

**DECLARATION OF STEPHEN D. HIBBARD IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS ON GROUND OF FORUM NON CONVENIENS**

Date:    February 9, 2022
Time:    2:00 p.m.
Ctrm:    2 – 17th Floor
Judge:   Honorable William H. Orrick

I, Stephen D. Hibbard, declare as follows:

1.      I am a member in good standing of the State Bar of California and a partner of the law firm Jones Day, attorneys of record for defendants HDR Global Trading Limited and ABS Global Trading Limited (together, "Defendants") in this matter.  I submit this declaration in support of Defendants' Motion to Dismiss on Ground of Forum Non Conveniens.  I believe the facts stated herein to be true based upon my own personal knowledge or upon my review of the records and files maintained in my firm's files.  I could and would testify competently thereto if called and sworn as a witness.

2.      Plaintiff's lead counsel in this action, Pavel Pogodin, has filed nine other lawsuits against Defendants HDR Global Trading Limited, ABS Global Trading Limited, and Arthur Hayes in state or federal court in San Francisco (collectively, the "Pogodin Actions"), naming Defendant Samuel Reed in five of them.  The respective case names, case numbers, and filing dates are:

> a.  *BMA LLC v. HDR Global Trading Limited, et al.*, No. 3:20-cv-03345-WHO (N.D. Cal. May 16, 2020) (two other federal lawsuits filed by Mr. Pogodin— *Dolgov v. HDR Global Trading Limited, et al.*, No. 3:20-cv-7140 (N.D. Cal. Oct. 14, 2020) and *Razvan v. HDR Global Trading Limited, et al.*, No. 3:20-cv-8034 (N.D. Cal. Nov. 13, 2020)—have been consolidated with this action);
>
> b.  *Kanyshev v. HDR Global Trading Limited, et al.*, No. CGC-20-584483 (S.F. Super. Ct. May 19, 2020);
>
> c.  *Hardy v. HDR Global Trading Limited, et al.*, No. CGC-20-588283 (S.F. Super. Ct. Nov. 20, 2020);
>
> d.  *Wilson-Chalkley v. HDR Global Trading Limited, et al.*, No. CGC-20-588042 (S.F. Super. Ct. Nov. 30, 2020);
>
> e.  *Zdilar v. HDR Global Trading Limited., et al.*, No. CGC-21-590192 (S.F. Super. Ct. Mar. 9, 2021);
>
> f.  *Lyashenko v. HDR Global Trading Limited, et al.*, No. CGC-21-595865 (S.F. Super. Ct. Oct. 12, 2021); and

g. *Khmel v. HDR Global Trading Limited, et al.*, No. CGC-21-596114 (S.F.

Super. Ct. Oct. 20, 2021).

3. The *Kanyshev*, *Hardy*, *Wilson-Chalkley*, and *Zdilar* actions were approved for Complex Designation and assigned for all purposes to the Complex Litigation Department. *See* Orders Granting Complex Designation and for Single Assignment for *Kanyshev* on October 28, 2020, for *Hardy* and *Wilson-Chalkley* on March 4, 2021, and for *Zdilar* on June 10, 2021.

4. None of the other Pogodin Actions has advanced beyond the preliminary pleading stage. In the first two cases filed—*BMA* and *Kanyshev*—Mr. Pogodin fundamentally alleged market manipulation, though he gradually tried to transform the claims in those actions through repeated amendments.

5. Judge Massullo has sustained two demurrers in *Kanyshev* with leave to amend, describing the most recent opportunity for amendment as "the last go-around." Attached hereto as **Exhibit A** is a true and correct copy of excerpts of the transcript from Judge Massullo's August 24, 2021 demurrer hearing.

6. Judge Cheng dismissed *Hardy* on *forum non conveniens* grounds. Attached hereto as **Exhibit B** is a true and correct copy of Judge Cheng's June 28, 2021 order dismissing *Hardy*.

7. Judge Cheng dismissed *Wilson-Chalkley* on *forum non conveniens* grounds. Attached hereto as **Exhibit C** is a true and correct copy of Judge Cheng's June 28, 2021 order dismissing *Wilson-Chalkley*.

8. Judge Cheng dismissed *Zdilar* on *forum non conveniens* grounds. Attached hereto as **Exhibit D** is a true and correct copy of Judge Cheng's November 10, 2021 order dismissing *Zdilar*.

9. To determine the distances and travel times between the locations where purported defense witnesses are located and the two potential forums for this action, I directed my colleague, Diana Calla, to use the Google.com travel search engine to review current available flight routes between the following airport pairs, from the witness location to the potential forum. The shortest travel time available for each pair is provided below:

a. Hong Kong (HKG) to London (LHR): 13:00.

b.  Hong Kong (HKG) to San Francisco (SFO):  12:00.

c.  Boston (BOS) to London (LHR):  6:30.

d.  Boston (BOS) to San Francisco (SFO):  6:50.

e.  Miami (MIA) to London (LHR):  8:15.

f.  Miami (MIA) to San Francisco (SFO):  6:31.

10.    Attached hereto as **Exhibit E** is a true and correct copy of a November 24, 2020 post by Mr. Pogodin on his personal Twitter account, in which he states that BitMEX "can be sued in California courts, which are very plaintiff-friendly.  Hunting season is open!  If you sustained losses on #BitMEX, DM me!"

11.    For the Court's convenience, attached hereto as **Exhibit F** is a true and correct copy of the "Trading on BitMEX" webpage, available at https://www.bitmex.com/app/tradingOverview (last accessed January 3, 2022).

12.    On October 13, 2021, Mr. Pogodin emailed me and my co-counsel to identify the email used by Mr. Sorokin in connection with the BitMEX account that is the subject of Mr. Sorokin's complaint.  That email address was used to locate the account records referenced in the Motion.

13.    As discussed in the Motion, the records from Mr. Sorokin's account establish that trading positions that he claims in the Second Amended Complaint were "liquidated or otherwise closed" were, in fact, voluntarily closed by Mr. Sorokin.  Before Plaintiff filed his Second Amended Complaint, Defendants filed an administrative motion emphasizing that allegations in the First Amended Complaint, including allegations that Mr. Sorokin's trading positions were liquidated, appeared to be false.  *See, e.g.*, Dkt. 23 at 3-4.   Plaintiff's counsel nonetheless reaffirmed those false allegations by alleging in the Second Amended Complaint that Plaintiff's positions were "liquidated *or otherwise closed*" (*see, e.g.*, ¶¶ 89, 119 (emphasis added)) or that the positions were liquidated (*see, e.g.*, ¶¶ 120, 350, 374, 398).

1       I declare under penalty of perjury under the laws of the United States of America that the

2 foregoing is true and correct.

3       Executed this 3rd day of January 2022 at Tiburon, California.

4

5                         */s/ Stephen D. Hibbard*
                        Stephen D. Hibbard

Hibbard Decl. iso Defs.' FNC Motion
3:21-cv-03576-WHO

# EXHIBIT A

1

```
 1              SUPERIOR COURT OF CALIFORNIA
 2                 COUNTY OF SAN FRANCISCO
 3    DEPARTMENT 304      HON. ANNE-CHRISTINE MASSULLO, JUDGE
 4    ALEKSANDR KANYSHEV, NIKITA       )
      LUZHBIN, AND MIGUEL VILLAGRA,    )
 5                                     )
                   PLAINTIFF,          )
 6                                     )
      VS.                              )CASE NO.: CGC-20-584483
 7                                     )
      HDR GLOBAL TRADING LIMITED       )
 8    (D/B/A BITMEX), ABS GLOBAL       )
      TRADING LIMITED, ARTHUR HAYES,   )
 9    AND DOES 1-10,                   )
                                       )
10                 DEFENDANT.          )
      _____ )
11
12           REPORTER'S TRANSCRIPT OF PROCEEDINGS
13                TUESDAY, AUGUST 24, 2021
14    APPEARANCES:
15        FOR THE PLAINTIFF:
16            CONSENSUS LAW
              BY:  PAVEL POGODIN (VIA COURT CALL)
17                 ATTORNEY AT LAW
              5245 AV. ISLA VERDE, SUITE 302
18            CAROLINA, PR, USA 00979
              TELEPHONE: 650.469.3750
19            EMAIL: PP@CONSENSUSLAW.IO
20            APPLETON LUFF
              BY:  SANJAY PRASAD (VIA COURT CALL)
21                 ATTORNEY AT LAW
              221 MAIN STREET, #496
22            LOS ALTOS, CA 94023
              TELEPHONE: 650.918.7647
23            EMAIL: PRASAD@APPLETONLUFF.COM
24
25
26
27        REPORTED BY:          JUSTUS BALENTINE, CSR 13859
28    APPEARANCES CONT. NEXT PAGE
```

2

```
 1   APPEARANCES CONT.
 2       FOR THE DEFENDANT:
 3           JONES DAY
             BY:  STEPHEN HIBBARD
 4                MATTHEW J. SILVEIRA
                  DENNIS MURPHY (VIA COURT CALL)
 5                DIANA L. CALLA (VIA COURT CALL)
                  ATTORNEYS AT LAW
 6           555 CALIFORNIA STREET, 26TH FLOOR
             SAN FRANCISCO, CALIFORNIA 94104
 7           TELEPHONE: 415.626.3939
             EMAIL: DENNISMURPHY@JONESDAY.COM
 8                  SDHIBBARD@JONESDAY.COM
                    MSILVEIRA@JONESDAY.COM
 9                  DCALLA@JONESDAY.COM
10
11           AKIN GUMP STRAUSS HAUER & FELD
             BY:  PETER I. ALTMAN (VIA COURT CALL)
12                MARSHALL L. BAKER (VIA COURT CALL)
                  JESSICA H. RO (VIA COURT CALL)
13                ATTORNEYS AT LAW
             1999 AVENUE OF THE STARS, SUITE 600
14           LOS ANGELES, CA 90067
             TELEPHONE: 310.229.1000
15           EMAIL: PALTMAN@AKINGUMP.COM
                    MBAKER@AKINGUMP.COM
16                  JRO@AKINGUMP.COM
17
18
19
20
21
22
23
24
25
26
27
28
```

                                                            3

1    CASE NUMBER:              CGC-20-584483

2    CASE NAME:                KANYSHEV

3                              V. HDR GLOBAL, ET AL.

4    LOS ANGELES, CALIFORNIA        TUESDAY, AUGUST 24, 2021

5    DEPARTMENT 304    HON. ANNE-CHRISTINE MASSULLO, JUDGE

6    COURT REPORTER:           JUSTUS BALENTINE, CSR NO. 13859

7    TIME:                     A.M. SESSION

8

9

10            THE COURT:  CALLING THE MATTER OF KANYSHEV

11   VERSUS HDR GLOBAL AND ARTHUR HAYES.  STARTING WITH

12   COUNSEL FOR PLAINTIFFS WHO ARE ON THE PHONE.

13            GOOD MORNING.

14            THE CLERK:  MR. POGODIN AND MR. PRASAD, ARE YOU

15   STILL ON THE LINE?

16            MR. POGODIN:  GOOD MORNING, YOUR HONOR.  PAVEL

17   POGODIN FOR PLAINTIFFS.

18            THE COURT:  OKAY.  GOOD MORNING.

19            MR. PRASAD:  GOOD MORNING, YOUR HONOR.  SANJAY

20   PRASAD FOR PLAINTIFFS.

21            THE COURT:  THANK YOU.

22            AND FOR DEFENDANTS HDR?

23            MR. SILVIERA  GOOD MORNING, YOUR HONOR.  MATT

24   SILVIERA FOR HDR AND ABS GLOBAL TRADING LIMITED.

25            THE COURT:  THANK YOU.

26            MR. HIBBARD:  GOOD MORNING, YOUR HONOR.  STEPHEN

27   HIBBARD OF JONES DAY, ALSO APPEARING FOR THE SAME

28   DEFENDANTS.

1    THERE'S NO QUESTION.  DO THEY ADMIT THEY HAVE ACCESS TO

2    IT?  SO THAT'S THE POINT, IN TERMS OF THE REAL-TIME

3    ACCESS TO THIS INFORMATION.

4         WITH THAT, I'M GOING TO TURN TO THE ONE LEGAL

5    ISSUE.  MAYBE YOU GUESSED THIS ONE.  IT'S NEGLIGENCE,

6    WHERE ESSENTIALLY THE COURT FINDS A SIGNIFICANT PORTION

7    OF THE TENTATIVE RULING ON THE NEGLIGENCE CLAIM, DESPITE

8    PLAINTIFFS' FAILURE TO ACTUALLY ADDRESS THAT CAUSE OF

9    ACTION IN THEIR OPPOSITION.

10        WE RECOGNIZE THAT THE COURT HAS THE AUTHORITY TO

11   CONSIDER THE MERITS OF THE CLAIM, WE RECOGNIZE THAT, BUT

12   THE DETAILED DISCUSSION IN THE TENTATIVE, WHICH GOES WELL

13   BEYOND ANY SORT OF ALLEGATIONS IN THE COMPLAINT IN TERMS

14   OF LEGAL AUTHORITY, THINGS OF THAT NATURE, MAKES IT A

15   LITTLE BIT HARD FOR US TO ADDRESS THIS AT THE HEARING.

16   AND TYPICALLY YOU WOULD HAVE -- THE PLAINTIFF WOULD

17   ACTUALLY MAKE THE ARGUMENT, SO WE'RE A LITTLE BIT

18   HAMSTRUNG ON THAT, BUT WE ALSO RECOGNIZE THAT YOU'RE

19   SUSTAINING THE -- YOU'RE TENTATIVELY SUSTAINING THE

20   DEMURRER.  AND WE CAN ADDRESS SOME OF THESE ARGUMENTS ON

21   THE NEXT ROUND, BECAUSE OBVIOUSLY, WHEN YOU'RE --

22        THE COURT:  THERE WON'T BE A NEXT TIME.  IT

23   SEEMS TO THE COURT THAT, AGAIN, WHY THIS DISCOVERY MOTION

24   TARGETED DISCOVERY, THIS INFORMATION IS EITHER THERE OR

25   IT ISN'T THERE, PERIOD.  SO, YOU KNOW, THE INTENT IS TO

26   PROVIDE THE PLAINTIFFS THE OPPORTUNITY TO SECURE THE

27   INFORMATION THAT THEY'VE TOLD THE COURT THAT THEY NEED.

28   AND IF IT DOESN'T EXIST, THEY NEED TO THINK LONG AND HARD

1    BECAUSE, MR. PRASAD, I'LL TELL YOU, YOU KNOW, THIS IS

2    KIND OF THE LAST GO-AROUND.

3          COURTS CERTAINLY ARE PERMITTED AND ENCOURAGED BY

4    APPELLATE AUTHORITY TO, YOU KNOW, ALLOW FOR A CASE TO

5    PROCEED ON THE MERITS.  THERE ARE LIMITS.  AND WE'RE

6    COMING CLOSE TO THOSE LIMITS WITH THIS CASE, IN THIS

7    CASE.  SO JUST TO LET YOU KNOW, HOPEFULLY YOU'LL BE ABLE

8    TO GET WHAT YOU NEED IN DISCOVERY, BUT IF NOT, THEN I'M

9    NOT SURE WHAT YOU'RE GOING TO DO.

10          MR. SILVIERA:  WELL, LET ME MAKE THE LEGAL POINT

11    I WANT TO MAKE ON NEGLIGENCE REAL QUICK, AND I WILL MAKE

12    THEM BRIEFLY, BECAUSE, AGAIN, WE WILL HAVE THE ABILITY TO

13    DO THAT ON THE NEXT ROUND.  BUT, FIRST OFF, THE COURT'S

14    LAST DEMURRER DID FIND THAT PLAINTIFF HAD NOT ALLEGED A

15    SPECIAL RELATIONSHIP THAT WOULD GIVE RISE TO A DUTY

16    UNDERLYING A NEGLIGENCE CAUSE OF ACTION.

17          NOW, IF THE COURT NOW RELIES ON THE NORTH

18    AMERICAN CHEMICAL PROPOSITION THAT THE SPECIAL

19    RELATIONSHIP EXCEPTION MAY APPLY TO PARTIES IN

20    CONTRACTUAL PRIVITY IF THE UNDERLYING CONTRACT IS ONE

21    PRESERVED.  SO WE READ THAT, THAT REASONING.  WE DON'T

22    BELIEVE IT SUPPORTS A NEGLIGENCE CLAIM BASED ON TRADING

23    ON A CRYPTOCURRENCY PLATFORM.  AND WE THINK IT'S JUDGE

24    ORIFF'S (PHONETIC) ORDER IN THE DMA CASE FINDS THAT HE

25    RELIES ON A VERY RECENT 9TH CIRCUIT CASE, THE COINBASE

26    CASE, WHICH IS ANOTHER ONE WHERE A COURT REALLY DID LOOK

27    THROUGH THIS AND SAID, YOU'VE SIGNED UP, THERE ARE TERMS

28    OF SERVICE GOVERNING YOUR USE OF THE PLATFORM, AND SO YOU

68

1   STATE OF CALIFORNIA        )

2                             )   SS.

3   COUNTY OF LOS ANGELES      )

4

5

6            I, JUSTUS BALENTINE, CERTIFIED SHORTHAND

7   REPORTER NO. 13859, HEREBY CERTIFY THAT THE FOREGOING

8   PROCEEDING WAS TAKEN BY ME AT THE TIME AND PLACE HEREIN

9   SET FORTH;

10           THAT THE SAID PROCEEDING WAS TAKEN DOWN BY ME

11  IN SHORTHAND AND THEREAFTER TRANSCRIBED UNDER MY

12  DIRECTION AND SUPERVISION, AND I HEREBY CERTIFY THE

13  FOREGOING PROCEEDING IS A FULL, TRUE, AND CORRECT

14  TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

15           THAT DISMANTLING THIS TRANSCRIPT WILL VOID THE

16  CERTIFICATION BY THE CERTIFIED SHORTHAND REPORTER.

17           I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR

18  NOR AM I IN ANY WAY RELATED TO ANY PARTY TO SAID ACTION,

19  NOR AM I IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.

20

21           IN WITNESS WHEREOF, I HAVE SUBSCRIBED MY NAME

22  THIS 27TH DAY OF AUGUST, 2021.

23

24

25

26

27

28           JUSTUS BALENTINE, CSR NO. 13859

# EXHIBIT B

**FILED**

San Francisco County Superior Cou.

JUN 2 8 2021

CLERK OF THE COURT

BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 613

| | |
|---|---|
| NICKY HARDY and MARK ERICKSON,<br><br>Plaintiffs,<br><br>v.<br><br>HDR GLOBAL TRADING LIMITED (d/b/a BitMEX); ABS GLOBAL TRADING LIMITED; ARTHUS HAYES; and DOES 1-10,<br><br>Defendants. | Case No. CGC-20-588283<br><br>ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS OR STAY ON GROUNDS OF INCONVENIENT FORUM |

## **INTRODUCTION**

This matter came on regularly for hearing on June 6, 2021 in Department 613, the Honorable Andrew Y.S. Cheng, presiding. Pavel I. Pogodin appeared for plaintiffs Nicky Hardy and Mark Erickson ("Plaintiffs"). Stephen D. Hibbard and Matthew J. Silveira appeared for defendants HDR Global Trading Limited ("HDR") and ABS Global Trading Limited ("ABS"). Peter I. Altman appeared for defendant Arthur Hayes ("Hayes").[1] Having reviewed and considered the arguments, pleadings, and written submissions of all parties, the Court **GRANTS** Defendants' motion to Dismiss or Stay on Grounds of Inconvenient Forum.

///

///

---

[1] HDR, ABS and Hayes are collectively referred to as "Defendants".

1

*Hardy v. HDR Global Trading Limited.* CGC-20-588283 Order Granting Defendants' Renewed Motion to Dismiss or Stay on Grounds of Inconvenient Forum

**BACKGROUND**

I.    **Procedural History**

Defendants responded to Plaintiffs' original complaint on January 11, 2021 by filing a motion to dismiss or stay on the ground of inconvenient forum. On February 8, 2021, Judge Schulman took the hearing of that fully briefed motion off calendar and found that this case should be designated complex. On March 2, 2021, before the case was reassigned, Plaintiffs filed a first amended complaint ("FAC"). Defendants filed their Renewed Motion on April 5, 2021.

II.    **Relevant Facts**

a.    **Plaintiffs' Allegations**

Plaintiff Hardy is a United Kingdom citizen who currently resides in London. (FAC ¶ 22.) Plaintiff Erickson is a United States citizen who currently resides in Puerto Rico. (*Id.* at ¶ 23.) HDR is a Republic of Seychelles company and is the owner and operator of an online digital asset trading platform called BitMEX. (*Id.* at ¶ 24; Declaration of Alexander Höptner in Support of Defendants' Renewed Motion to Dismiss or Stay on the Ground of Inconvenient Forum ["Höptner Decl."] ¶ 4.) ABS, HDR's U.S. affiliate, is a Delaware corporation and maintains an office in San Francisco, California. (FAC ¶ 40; Höptner Decl. ¶ 5.) Hayes is a U.S. citizen living abroad and one of three co-founders of HDR. (FAC ¶¶ 24, 54.) The FAC asserts sixteen common law and statutory claims against Defendants.

Between March 2019 and June 2019, Plaintiffs deposited over 1,500 bitcoins into eight different BitMEX accounts. (FAC ¶ 237.) The FAC alleges that all eight accounts are under Hardy's name. (*See id.* [chart].) Plaintiffs established two-factor authentication ("2FA") for seven of the eight BitMEX accounts. (*Id.* ¶ 240.) Upon opening their accounts, Plaintiffs acknowledge that they were presented with and accepted written Terms of Service for the BitMEX trading platform. (*Id.* ¶ 267.) Plaintiffs allege that BitMEX disclosed Hardy's email addresses associated with his BitMEX accounts when BitMEX sent a mass email on November 1, 2019 to its users with users' email addresses in the "To" field of the email, instead of in the "BCC" field (the "Email Disclosure"). (*Id.* ¶ 242.) Plaintiffs claim that Hardy's email addresses were part of the Email Disclosure and subsequently divulged to hackers. (*Id.* ¶ 251.) Plaintiffs also allege that the BitMEX Twitter account run by BitMEX's Public Relations team was hacked on

2

*Hardy v. HDR Global Trading Limited.* CGC-20-588283 Order Granting Defendants' Renewed Motion to Dismiss or Stay on Grounds of Inconvenient Forum

November 1, 2019. (*Id.* at ¶¶ 246–247.) Similarly, Plaintiffs allege that a Twitter account not purported to be operated by Defendants allegedly leaked "individual user IDs and emails of many BitMEX customers". (*Id.* at ¶ 247.)

On January 2, 2020, Plaintiffs were unable to access Hardy's accounts due to invalid login credentials. (FAC ¶ 252.) Plaintiffs contacted BitMEX customer support on January 3, 2020 after being unable to reset Hardy's password. (*Id.* at ¶¶ 253–254; Höptner Decl. ¶ 22.) After undergoing a standard identity verification check to confirm that Hardy was the owner of all eight of his BitMEX accounts, BitMEX customer support informed Hardy on January 21, 2020 that the bitcoin account balance for each account was zero. (FAC ¶ 254; Höptner Decl. ¶ 23.)

Plaintiffs also allege that during 2020 their trading positions on BitMEX were wrongfully liquidated because of certain actions by Defendants' "Insider Trading Desk" in violation of the Terms of Service. (FAC ¶ 261.) Finally, Plaintiffs allege that false and misleading statements on the BitMEX website induced them to open accounts on the platform. (*Id.* at ¶¶ 235–236.)

### b.    Defendants' Evidentiary Submissions

Defendants submitted a declaration from Alexander Höptner, the CEO for the 100x group of companies, which is held under parent company HDR and includes ABS. (Höptner Decl. ¶ 1.) The declaration states that Hardy is the owner of all eight of the allegedly affected BitMEX accounts and accessed his accounts from Europe. (*Id.* ¶ 9.) In a communication with BitMEX customer support, Hardy confirmed no one else had access to his BitMEX accounts. (*Id.* ¶ 25.) Erickson is expressly prohibited from trading on the BitMEX platform under the Terms of Service as a U.S. citizen and resident of Puerto Rico. (*Id.* ¶ 10.) HDR has been unable to identify a BitMEX account registered to Erickson. (*Id.*)

The Terms of Service govern all access to and trading on the BitMEX platform. (Höptner Decl. ¶ 7.) By accessing the BitMEX platform, users acknowledge that they have read and considered and understand the BitMEX Risk Disclosure Statement and Privacy Notice and must also agree unconditionally to be bound by the Terms of Service as may be amended from time to time by HDR without notice. (*Id.*) The Terms of Service expressly prohibit U.S. persons from trading on the BitMEX platform. (*Id.*; see also FAC ¶ 84.) Specifically, Section 16 ("Governing Law") establishes that "[t]he

3

Terms and any non-contractual obligations arising out of or in connection with them are governed by and construed in accordance with English law." (Declaration of Stephen D. Hibbard in Support of Defendants' Renewed Motion to Dismiss or Stay on the Ground of Inconvenient Forum ["Hibbard Decl."] ¶ 19, Ex. B.) Section 17 ("Dispute Resolution") further provides that "the courts of England have non-exclusive jurisdiction to settle any dispute arising from or connected with these Terms." (*Id.*)

The BitMEX platform, including the website, application programming interface ("API") data and all related code, seed values to verify tokens submitted by users when 2FA is enabled, pretty good privacy ("PGP") encryption keys, along with relevant user data, including user activity logs, transaction history, wallet balance, margin balance, passwords, and user preferences, is all hosted on servers in Ireland. (Höptner Decl. ¶ 11.) The HDR team responsible for the "Funds" software service—which runs the BitMEX wallet system handling deposits and withdrawals and is hosted on an Amazon Web Services server located in Ireland—is located primarily in Hong Kong, with additional personnel located in the Asia-Pacific region and a contractor in the United Kingdom. (*Id.* at ¶¶ 12–13.) The team responsible for the liquidation process is also located primarily in Hong Kong, with no members in the U.S. (*Id.* at ¶ 14.) And the treasury desk, which Plaintiffs refer to as the "Insider Trading Desk," is based in Asia, as well. (*Id.* at ¶ 15.) The HDR representatives who corresponded with Hardy and responded to his concerns prior to his initiating this suit, along with the entire customer support team, are all located outside the U.S. (*Id.* at ¶¶ 18, 21.) The primary HDR representative handling Hardy's claim is based in Hong Kong, and other representatives are in Bermuda. (*Id.* at ¶ 21.) HDR's customer service teams were tasked with handling questions from accountholders regarding the Email Disclosure, including those relating to any security concerns, and dealt with accountholders' requests to change the email addresses associated with their accounts. None of the members of those teams was or is based in the U.S. (*Id.* at ¶ 18.)

The substance of the mass email sent on Friday, November 1, 2019 was drafted by a member of the HDR Financial Products team in Hong Kong. (Höptner Decl. ¶ 16.) While HDR used Denver, Colorado-based email distribution platform SendGrid, Inc., to manage the sending of the emails on behalf of HDR, HDR has itself retained a full record of the email distribution list. (*Id.*) On November 4, 2019 (the Monday following the Email Disclosure), HDR published a blog post on the BitMEX website (which

4

*Hardy v. HDR Global Trading Limited.* CGC-20-588283 Order Granting Defendants' Renewed Motion to Dismiss or Stay on Grounds of Inconvenient Forum

was and is hosted in Ireland) updating users on the Email Disclosure and advising them to take measures to protect their accounts by using strong and unique passwords, enabling 2FA, and using a password manager.  The preparation of the blog post was directed from Hong Kong and signed by then-Deputy Chief Operating Officer Vivien Khoo.  Emails replicating the contents of the blog post were also sent to BitMEX accountholders in early November 2019 and were signed by Ms. Khoo.  (*Id.* ¶ 17.)  In November 2019, the official BitMEX Twitter account was operated and maintained by an external public relations team based in Hong Kong.  (*Id.* at ¶ 20; see also FAC ¶ 247.)  A team of HDR engineers in Hong Kong resolved any issues following the unauthorized access to the official BitMEX Twitter account on November 1, 2019.  (Höptner Decl. ¶ 20; see also FAC ¶ 246.)  No BitMEX accountholder information was disclosed, and user account security was not compromised, as a result of the unauthorized access to the BitMEX Twitter account.  (Höptner Decl. ¶ 20.)

The Höptner Declaration also discusses the role of ABS, the sole U.S. subsidiary of HDR and a Delaware corporation with offices in San Francisco.  (Höptner Decl. ¶ 5.)  ABS provides system maintenance support, software engineering, and digital security services to HDR on a contractual basis.  (*Id.*)  ABS had no involvement in drafting statements on the BitMEX website that allegedly enticed Plaintiffs to trade on the BitMEX platform.  (*Id.* at ¶ 6.)  Similarly, the BitMEX Terms of Service were drafted and placed on the BitMEX website from outside California, not by ABS personnel in California.  In fact, the Terms of Service pre-date ABS's formation.  (*Id.* at ¶ 8.)

## REQUESTS FOR JUDICIAL NOTICE

As a preliminary matter, pursuant to Evidence Code § 451, subdivision (a) and Evidence Code § 452, subdivisions (c)-(d), the Court rules on the parties' requests for judicial notice as follows.

The Court **GRANTS** Defendants' requests for judicial notice set forth in their brief.  The Court takes judicial notice of the following:

- Plaintiffs' original Complaint in this action;
- The BitMEX website; and
- Certain flight times between different forums (see Hibbard Decl. ¶ 18).

5

*Hardy v. HDR Global Trading Limited.* CGC-20-588283 Order Granting Defendants' Renewed Motion to Dismiss or Stay on Grounds of Inconvenient Forum

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's request for judicial notice. The Court takes judicial notice of the following:

- Plaintiff's RJN Ex. A (Bail Disposition in *United States v. Hayes*, No. 1:20-cr-0050-JGK (S.D.N.Y.), ECF No. 47); and

- Plaintiff's RJN Ex. B (Case Management Statement in *Amato v. HDR Global Trading Limited, et al.*, Case No. CGC-19-581267 (S.F. Sup. Ct.), Oct. 14, 2020).

## LEGAL STANDARDS

"Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751.) When a court finds "in the interest of substantial justice an action should be heard in a forum outside this state," it "shall stay or dismiss the action in whole or in part on any conditions that may be just." (Code Civ. Proc. § 410.30(a).)

Under the traditional forum non conveniens analysis, the Court must first "determine whether a suitable alternative forum exists." (*Nat. Football League v. Fireman's Fund Insurance Co.* (2013) 216 Cal.App.4th 902, 917.) A suitable alternative forum is one where the defendant is subject to jurisdiction (or otherwise stipulates) and the statute of limitations would not bar the plaintiff's case in that forum. (*Stangvik, supra*, 54 Cal.3d at 752, n. 3.)

If there is a suitable alternative forum, the Court proceeds to the next step, balancing "the private interests of the parties and the public interest in keeping the case in California." (*Nat. Football League, supra*, 216 Cal.App.4th at 917.) These factors must be balanced flexibly, and no single factor should be unduly emphasized. (*Stangvik, supra*, 54 Cal.3d at 753.) An action should "be dismissed or stayed if a suitable alternative exists and the balance of private and public interest factors weigh in favor of" the litigation proceeding in an alternative forum. (*Hansen v. Owen-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, 758.)

"[T]he defendant, as the moving party, bears the burden of proof" on a motion based on *forum non conveniens*. (*Stangvik, supra*, 54 Cal.3d at 751.) The Court's determination that another forum is suitable

6

*Hardy v. HDR Global Trading Limited.* CGC-20-588283 Order Granting Defendants' Renewed Motion to Dismiss or Stay on Grounds of Inconvenient Forum

and that litigation should proceed there must be supported by evidence.  (See *Chong v. Sup. Ct.* (1997) 58 Cal.App.4th 1032, 1038 [granting FNC motion where defendant provided evidence of suitability of alternate forum and plaintiff "provides no evidence to support" contrary inference].)  For the purposes of deciding a forum non conveniens motion, courts are not required to accept the allegations in a complaint as true, but rather, "must consider and review all the declarations, papers and data which are submitted in connection with the motion[.]"  (*Hemmelgarn v. Boeing Co.* (1980) 106 Cal.App.3d 576, 587.)[2]  Finally, while the doctrine is discretionary, it is "an abuse of discretion" to hear a case with "an obvious absence of any legitimate interest to be served by a trial in [California]."  (*Outboard Marine Corp. v. Sup. Ct.* (1976) 59 Cal.App.3d 434, 442.)

## DISCUSSION AND ANALYSIS

### I.   Suitable Alternative Forum

"An alternative forum is suitable if it has jurisdiction and the action in that forum will not be barred by the statute of limitations."  (*Guimei v. Gen. Electric Co.* (2009) 172 Cal.App.4th 689, 696.)  Courts find this requirement satisfied where defendants agree to consent to jurisdiction in the alternative forum and agree not to assert a statute of limitations defense (or to toll the statute of limitations for the pendency of the California action).  (See also *Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1190 ["moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the jurisdiction of the alternative forum and to waive any applicable statute of limitations"].)  Because all Defendants consent to jurisdiction in England and agree to toll the statute of limitations, the Court finds this factor met.[3]  (See Memorandum of Points and Authorities in Support of Defendants' Renewed

---

[2] Although disapproved insofar as *Hemmelgarn* "would require that the court congestion factor always be decided in favor of the plaintiff and against a California corporation which caused injury to consumers anywhere in the world, if the product was manufactured here," *Stangvik* did not challenge *Hemmelgarn*'s holding that a court need not accept allegations as true on a *forum non conveniens* motion.  (See *Stangvik, supra,* 54 Cal.3d at 761.)

[3] The Court is aware of no authority, and Plaintiffs cite none, that requires the Court to ascertain the ability of a defendant to travel to a forum in assessing whether that forum is a suitable alternative.  Accordingly, the Court need not consider this as a factor in determining the suitability of England as a forum for this dispute.  However, even if the Court were to consider Plaintiffs' assertion that Defendant Hayes "cannot freely travel internationally to the U.K.," this argument holds little weight.  First, Plaintiffs have not established any need for Hayes' physical presence in any forum as relates to this action.  Second, there is also no certainty that Hayes would be able to travel to San Francisco for trial.  Plaintiffs' suggestion that Hayes would be more likely to be able to attend trial in San Francisco than in England is purely speculative and unsupported by evidence.  (See Plaintiffs' RJN Ex. A [permitting Hayes "to reside

7

Motion to Dismiss or Stay on Ground of Inconvenient Forum ["Motion"], 14; Höptner Decl. ¶¶ 27-28;

Declaration of Pavel I. Pogodin, Esq. in Support of Plaintiffs' Opposition to Defendants' Motion to

Dismiss or Stay on Grounds of Forum Non Conveniens; Exhibits A-C ["Pogodin Decl."], Ex. C [Hayes'

Response to Special Interrogatory No. 1].)

## II.    Private and Public Interests

### a.    Background Law

The second step in the forum non conveniens analysis is the balancing of the private interests of

the parties and the public interest in keeping the case in California.  (*NFL*, *supra*, 216 Cal.App.4th at

917.)  "The private interest factors are those that make trial and the enforceability of the ensuing judgment

expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining

the attendance of witnesses, and the availability of compulsory process for attendance of unwilling

witnesses."  (*Stangvik*, *supra*, 54 Cal.3d at 751.)  "A case-by-case examination of the parties, their dispute

and the relationship of each to the state of California is the heart of the required analysis."  (*NFL*, *supra*,

216 Cal.App.4th at 921.)  "The public interest factors include avoidance of overburdening local courts

with congested calendars, protecting the interests of potential jurors so that they are not called upon to

decide cases in which the local community has little concern, and weighing the competing interests of

California and the alternate jurisdiction in the litigation."  (*Stangvik*, *supra*, 54 Cal.3d at 751.)

### b.    Application

#### i.    Plaintiffs' Choice of Forum

The parties disagree over the level of deference due to Plaintiffs' choice of forum.  Relying

primarily on *Ford Motor Co. v. Insurance Co. of North America*, Plaintiffs argue that Defendants' burden

is to establish that California is a "seriously inconvenient" forum given the "strong presumption" afforded

to Plaintiffs' choice of forum.  ((1995) 35 Cal.App.4th 604, 611 ["the plaintiff's choice of forum is

entitled to great weight even though the plaintiff is a nonresident . . . the inquiry is . . . whether California

is a *seriously inconvenient* forum."].)  As Defendants point out, a plaintiff's choice of forum "is not given

in Singapore, with pre-approved travel to and from New York"].)  Third, the Court otherwise accords
little weight to where Hayes might appear for proceedings in-person since there are not well-pleaded facts
or evidence showing that Hayes had any personal involvement with the matters that Plaintiffs allege
caused their losses.

8

1  substantial weight[] when, as here, the plaintiff[] [is] not [a] resident[] or citizen[] of the United States."

2  (Motion, 17 [quoting *Hahn, supra*, 194 Cal.App.4th at 1195].)

3      Plaintiffs' reliance on *Ford* is misplaced, as *Ford* in fact supports Defendants' position that "a

4  foreign, noncitizen plaintiff's choice of forum is entitled to less deference." (*Ford, supra*, 35 Cal.App.4th

5  at 611; see also *Stangvik, supra*, 54 Cal.3d at 755 ["Where, however, the plaintiff resides in a foreign

6  country, *Piper [Aircraft Co. v. Reyno* (1981) 454 U.S. 235] holds that the plaintiff's choice of forum is

7  much less reasonable and is not entitled to the same preference as a resident of the state where the action

8  is filed."].) "There are manifest reasons for preferring residents in access to often overcrowded Courts,

9  both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts

10 concerned." (*Stangvik, supra*, 54 Cal.3d at 751 [internal quotation omitted].) Accordingly, Hardy here, a

11 United Kingdom citizen and resident (FAC ¶ 22), is entitled to less deference in his choice of California

12 as a forum.

13     While Erickson is a U.S. citizen and resident of Puerto Rico (FAC ¶ 23), the FAC does not

14 identify any facts connecting Erickson to the alleged losses sustained by Hardy. The accounts are under

15 Hardy's name, not Erickson's. (*See id.* at ¶ 237 [chart].) HDR was unable to identify a BitMEX account

16 registered to Erickson (Höptner Decl. ¶ 10), and there are no records that Erickson has ever contacted

17 HDR's customer support or client development teams (*id.* at ¶ 21). The dispute with Defendants appears

18 to be entirely Hardy's. Plaintiffs' argument in their Opposition that Hardy shared his accounts and

19 account passwords with Erickson (Opp., 17) is found nowhere in the FAC and is contradicted by what

20 Hardy told HDR representatives (Höptner Decl. ¶ 25). Erickson's choice of forum is not entitled to the

21 deference typically granted to a U.S. citizen and resident, and even if the Court did accord Erickson "due

22 deference" (see *Nat. Football League, supra*, 216 Cal.App.4th at 929), the ultimate outcome would not

23 change here.

24     **ii.    Public Factors**

25         **A.    Local Interest in Controversy**

26     California courts "have little or no interest in litigation involving injuries incurred outside of

27 California by nonresidents." (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1467 [internal

28

9

*Hardy v. HDR Global Trading Limited.* CGC-20-588283 Order Granting Defendants' Renewed Motion to Dismiss or Stay on
Grounds of Inconvenient Forum

quotation omitted].)  Thus, the *forum non conveniens* doctrine allows California courts to focus on "the interest in trying the case in a forum familiar with the applicable law, and the interest in avoiding unnecessary conflicts of laws." (*Fox Factory, Inc. v. Sup. Ct.* (2017) 11 Cal.App.5th 197, 204 [quoting *Ravelo Monego v. Rosa* (9th Cir. 2000) 211 F.3d 509, 512].)

This dispute is governed by English law[4], and any injuries sustained by Hardy (who is a citizen and resident of the United Kingdom) occurred in the United Kingdom.  Defendants have submitted specific evidence that the sole Defendant with any California presence, ABS, was not involved with any of the operations relevant to Plaintiffs' alleged loss.[5]  (See Motion, 11, 18-19.)  Plaintiffs' citation to allegations in their FAC is insufficient to challenge Defendants' evidence. (*Hemmelgarn, supra*, 106 Cal.App.3d at 587 ["If a court were required to accept any allegation made by a plaintiff as true, the likelihood of the motion based on forum non conveniens being granted in that case would be substantially reduced."].)  Plaintiffs' allegation that Californians use the BitMEX platform in violation of the Terms of Service is similarly insufficient to establish any California interest in this case as Plaintiffs do not allege any connection between any such California-based use and Plaintiffs' purported loss.  The Court finds that California has no substantial interest in this dispute that would weigh in favor of denying Defendants' motion because Plaintiffs do not reside here, and Defendants are being sued for operations that took place abroad.  (See Höptner Decl. ¶¶ 6-8, 11-18, 20, 26.)  This factor weighs in favor of granting the motion.

**B.    Competing Interests of California and England**

The Court must also consider the interest of the alternative forum in adjudicating this matter.

---

[4] Plaintiffs' Opposition does not contest that English law applies to their claims, all of which assert obligations "arising out of or in connection with the Terms of Service" to which Plaintiffs agreed and under which Plaintiffs accessed the BitMEX platform. (Hibbard Decl. ¶ 19, Ex. B, § 16; Höptner Decl. ¶ 8.)  However, at the hearing, Plaintiffs' counsel argued that Plaintiffs' agreement to the BitMEX Terms of Service was procured by fraud and that California law applies.  But even if, as Plaintiffs claim, Hardy was fraudulently induced by Defendants' advertising to trade on the BitMEX platform and in so doing agree to the Terms of Service, this argument has no effect on the applicability of the Terms of Service's choice-of-law and forum-selection provisions, as Plaintiffs do not claim that these provisions were themselves obtained through fraud. (See *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1676–1677; *Seidman & Seidman v. Wolfson* (1975) 50 Cal.App.3d 826, 831.)

[5] Plaintiffs' allegation that HDR and ABS are a single enterprise (Opp. 19) is immaterial to this analysis, given that the only evidence submitted by the parties shows that the individuals relevant to the dispute at issue here are outside the U.S. (See Höptner Decl.¶¶ 12-14, 18, 21.)

10

Where, as here, the alleged harm was incurred in the alternative forum and is governed by the alternative forum's law, that forum—England—has a "substantial interest" in the case. (*Hahn, supra*, 194 Cal.App.4th at 1198.)  An English court would naturally be more familiar with the applicable law and would be better suited to adjudicate Plaintiffs' claims given that English law governs obligations arising out of BitMEX's Terms of Service.  (See *Nat. Football League, supra*, 216 Cal.App.4th at 925 [recognizing choice of law as bearing on "suitability" and "convenience" of alternative forum] [citation omitted].)  Even absent the choice-of-law clause, a California court would likely look to English substantive law in this matter, where the alleged injury was incurred by a U.K. citizen residing in England. (See *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 713 ["The circumstances of this case-including the site of the tortious acts and their manifestation, and the lack of a significant California connection to those events-provide strong reasons to believe that a California court would look to the substantive law of New York."][citations omitted].) However, the Court need not even resolve the choice of law question in granting this motion:  "the fact that a California court would have to 'untangle problems in conflict of law' is itself a basis to apply the doctrine of forum non conveniens." (*Id.* [quoting *Gulf Oil Corp. v. Gilbert* (1947) 330 U.S. 501, 508].)  This factor weighs in favor of granting the motion.

### C.    Avoidance of Overburdening Local Courts

"[P]reventing court congestion resulting from the trial of foreign causes of action is an important factor in the forum non conveniens analysis." (*Stangvik, supra*, 54 Cal.3d at 758.) Given that this Court has determined that there is little or no California interest in this case, it would be "unduly burdensome for California residents to be expected to serve as jurors on a case having so little to do with California." (*Morris, supra*, 144 Cal.App.4th at 1467 [internal quotation omitted].)  "California's interest in the case is not sufficient to justify the commitment of judicial time and resources that would be required if the case were tried here." (*Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542 [dismissing in favor of Australia, where accident occurred and plaintiffs resided].)

Plaintiffs argue that this case is related to others filed in this Court, which weighs in favor of keeping this action in California.  (Plaintiffs' Opposition to Defendants' Motion to Dismiss or Stay on Grounds of Forum Non Conveniens ["Opp."], 20.)  But Plaintiffs have not filed the required notice of related cases to

11

*Hardy v. HDR Global Trading Limited.* CGC-20-588283 Order Granting Defendants' Renewed Motion to Dismiss or Stay on Grounds of Inconvenient Forum

support that contention (see Cal. Rules of Court 3.300(e)), nor do Plaintiffs provide the Court with sufficient detail that this case is related to any others, instead indicating only that one case "involved some of the same issues as here" and that another case "involves alleged fraudulent conduct by the same Defendants" and includes "intentional misconduct and fraud." (Opp., 20.) The Court is unpersuaded by Plaintiffs' argument that this case is related to others pending in San Francisco courts, but even if it were, the Court does not find that keeping this case in this forum, proceeding before a different judge than the purportedly related cases, would be an efficient use of judicial resources. This factor weighs in favor of granting the motion.

### iii.    Private Factors

### A.    Ease of Access to Evidence and Witnesses

Although there is one Defendant with an office located in this state, the Court finds that Defendants have overcome the presumption of convenience with evidence that California is a seriously inconvenient forum, and that England is a more convenient place for litigation of this action. (*Stangvik, supra*, 54 Cal.3d at 756.) First, two of the three Defendants are not California residents. The sole Defendant with any California presence, ABS, was not involved with any of the operations relevant to Plaintiffs' alleged loss. (See, e.g., Höptner Decl. ¶¶ 6,8, 26.) Second, Defendants have provided specific facts about the location of evidence and witnesses relevant to this action—all of which are located abroad. (Höptner Decl. ¶¶ 9, 11-18, 20.) While Plaintiffs disagree with Defendants on both of these points, they offer nothing more than their allegations in the FAC to substantiate that disagreement. However, "the court [is not] required to accept any allegation made by a plaintiff as true" on a *forum non conveniens* motion; accordingly, Plaintiffs' reliance on their allegations, and only their allegations, is misplaced and insufficient. (*Hemmelgarn, supra*, 106 Cal.App.3d at 587.)

Plaintiffs point to a dozen third party "data storage providers" that they assert have relevant evidence, including companies like Google, Slack, and Amazon Web Services. (Opp., 13.) However, Plaintiffs offer no evidence to support their contention that any of these third parties have relevant information. Plaintiffs describe categories of *Defendants'* records that they believe these third parties possess, but the Court is not persuaded that Plaintiffs must subpoena these records from the third parties rather than seek them from Defendants directly through available discovery mechanisms. That Plaintiffs

1  may nevertheless choose to pursue discovery of Defendants' own documents through non-party

2  subpoenas does not support a finding that they will have easier access to Defendants' evidence if this case

3  were to proceed in California.  In any event, Defendants have already produced documents in response to

4  Plaintiffs' discovery requests in this action and would presumably continue to do so if this matter

5  proceeded in England.  (See Reply, 13, n. 16.)

6          Likewise, the key evidence from Plaintiffs bearing on an alleged security breach—a two-factor

7  authentication code application and a computing device, which "never left Plaintiffs' possession" and

8  stored Hardy's mobile bitcoin wallet—is located in England.  (FAC ¶¶ 240, 258.)  Because the Court

9  credits Defendants' evidence that there are no material witnesses in California and that the systems and

10  witnesses with information relevant to Plaintiffs' claims are located abroad, and in some cases closer to

11  England than to San Francisco, the Court concludes that California is a seriously inconvenient forum.

12  This factor supports granting the motion.

13          Plaintiffs argue that there are relevant witnesses located in California by referencing Hayes'

14  statement in other litigation that services provided by ABS to HDR include digital security.  (Opp., 12.)

15  But Plaintiffs do not offer any evidence to rebut Defendants' evidence that there are no documents or

16  witnesses in California related to the Email Disclosure underlying Plaintiffs' claims of a security breach,

17  which originated in Hong Kong, and the status of Hardy's accounts before and after the Email Disclosure.

18  (See Höptner Decl. ¶¶ 6, 8, 19, 26.)  Plaintiffs also submit a "Witness List" that purportedly identifies

19  relevant witnesses in California.  But Plaintiffs, again, provide no basis for their allegation that these

20  witnesses have specific knowledge about Plaintiffs' claims here other than that some of them have or had

21  job titles related to "security."  Plaintiffs offer no evidence corroborating their "Witness List," and do not

22  provide any explanation or identify any allegations showing the relevance of those individuals to

23  Plaintiffs' claim.  "[T]he court is not required to accept any allegation made by a plaintiff as true" on a

24  *forum non conveniens* motion; accordingly, Plaintiffs' reliance on their allegations, and only their

25  allegations, is misplaced and insufficient.  (*Hemmelgarn, supra,* 106 Cal.App.3d at 587.)  As a result,

26  Plaintiffs' "mere conclusions" here are rejected.  (See *Baird v. Smith* (1937) 21 Cal.App.2d 221, 223;

27  *Chong, supra,* 58 Cal.App.4th at 1038 [granting FNC motion where defendant provided evidence of

28

13

suitability of alternate forum and plaintiff "provides no evidence to support" contrary inference].)

### B. Availability of Compulsory Process for Attendance of Unwilling Witnesses and Enforcement of Judgments

To the extent that documents and testimony from California witnesses are needed in a proceeding in England, there are available mechanisms for obtaining such evidence for use in trial in England. However, the Court is not persuaded that Plaintiffs have identified any relevant witnesses or documents in California that would be required for trial in England, let alone California-based witnesses or documents that would be unavailable to Plaintiffs in an English proceeding. Likewise, the Court finds that English courts are capable of issuing provisional remedies and that, if warranted, Plaintiffs could enforce any judgment obtained in an English proceeding. (*See, e.g.*, CPR Rule 25.1(f)(ii) [authorizing court to grant broad range of interim remedies, including "a 'freezing injunction[]' . . . restraining a party from dealing with any assets whether located within the jurisdiction or not"]; *Crockford's Club Ltd. v. Si-Ahmed* (1988) 203 Cal.App.3d 1402, 1406 [enforcing English judgment in California].) This renders this factor neutral.

### c. Conclusion

Having considered all factors and the totality of the circumstances, the Court finds the public and private interest factors weigh in favor of this action proceeding in England.

### CONCLUSION

The Court **GRANTS** Defendants' Renewed Motion to Dismiss or Stay on Ground of Inconvenient Forum as to both Plaintiffs. Plaintiffs' First Amended Complaint is dismissed.

IT IS SO ORDERED.

Dated: June 28, 2021

_____
ANDREW Y.S. CHENG
Judge of the Superior Court

14

## CERTIFICATE OF ELECTRONIC SERVICE
### (CCP 1010.6(6) & CRC 2.260(g))

I, KEITH TOM, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On June 28, 2021, I electronically served the ATTACHED DOCUMENT(S) via File&ServeXpress on the recipients designated on the Transaction Receipt located on the File&ServeXpress website.

Dated:   June 28, 2021

T. Michael Yuen, Clerk

By:   _____
KEITH TOM, Deputy Clerk

# EXHIBIT C

**F I L E D**

San Francisco County Superior Cou.

JUN 2 8 2021

CLERK OF THE COURT

BY: _____

Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 613

| | |
|---|---|
| JEROME WILSON-CHALKLEY, | Case No. CGC-20-588042 |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS OR STAY ON GROUNDS OF INCONVENIENT FORUM |
| v. | |
| HDR GLOBAL TRADING LIMITED (d/b/a BitMEX); ABS GLOBAL TRADING LIMITED; ARTHUS HAYES; and DOES 1-10, | |
| Defendants. | |

## **INTRODUCTION**

This matter came on regularly for hearing on June 6, 2021 in Department 613, the Honorable Andrew Y.S. Cheng, presiding. Pavel I. Pogodin appeared for plaintiff Jerome Wilson-Chalkley ("Plaintiff"). Stephen D. Hibbard, Matthew J. Silveira and Dennis F. Murphy, Jr. appeared for defendants HDR Global Trading Limited ("HDR") and ABS Global Trading Limited ("ABS"). Peter I. Altman appeared for defendant Arthur Hayes ("Hayes"). [1]

## **BACKGROUND**

### I.    Procedural History

Defendants responded to Plaintiffs' original complaint on January 6, 2021 by filing a motion to dismiss or stay on the ground of inconvenient forum. After the motion was fully briefed on January 26,

---

[1] HDR, ABS and Hayes are collectively referred to as "Defendants."

1

1  2021, Judge Schulman vacated the hearing date upon finding on the Court's own motion that the case

2  should be designated complex and singly assigned.  On March 1, 2021, before the case was reassigned

3  Plaintiff filed his first amended complaint ("FAC").  Plaintiff's FAC asserts sixteen common law and

4  statutory claims against Defendants.  Defendants filed their Renewed Motion on April 2, 2021.

5  **II.    Relevant Facts**

6         Plaintiff is a United Kingdom citizen who currently resides in London.  (FAC ¶ 21.)  HDR is a

7  Republic of Seychelles company and is the owner and operator of an online digital asset trading platform

8  called BitMEX.  (*Id.* at ¶ 22; Declaration of Alexander Höptner in Support of Defendants' Renewed

9  Motion to Dismiss or Stay on the Ground of Inconvenient Forum ["Höptner Decl."] ¶¶ 3, 4.)  ABS,

10 HDR's U.S. affiliate, is a Delaware corporation and maintains an office in San Francisco, California.

11 (FAC ¶ 38; Höptner Decl. ¶ 5.)  Hayes is a U.S. citizen living abroad and one of three co-founders of

12 HDR.  (*Id.* at ¶¶ 22, 26.)

13        Plaintiff opened an online trading account with BitMEX on November 26, 2017.  (FAC ¶ 238.)

14 Plaintiff identified himself as a resident of the United Kingdom on the BitMEX platform, and the majority

15 of the recorded logins on Plaintiff's account have originated from the region of London, England.

16 (Höptner Decl. ¶ 9.)  All of Plaintiff's claims derive from Plaintiff's use of the BitMEX trading platform,

17 which is wholly owned and operated by HDR and governed by the Terms of Service to which Plaintiff

18 agreed.  (See FAC ¶ 27, 238; see also Declaration of Stephen D. Hibbard in Support of Defendants'

19 Renewed Motion to Dismiss or Stay on the Ground of Inconvenient Forum ["Hibbard Decl."], Ex. B; see

20 Höptner Decl. ¶ 7.)  Section 16 ("Governing Law") of the Terms of Service provides that "[t]he Terms

21 and any non-contractual obligations arising out of or in connection with them are governed by and

22 construed in accordance with English law."  (Höptner Decl. ¶ 8; Hibbard Decl., Ex. B § 16; see also FAC,

23 Ex. 15.)  Section 17 ("Dispute Resolution") further provides that "the courts of England have non-

24 exclusive jurisdiction to settle any dispute arising from or connected with these Terms."  (Höptner Decl. ¶

25 8; Hibbard Decl., Ex B § 17.)  BitMEX's Terms of Service expressly prohibit United States citizens and

26 residents from trading on the platform.  (FAC ¶ 82.)

27

28

On March 12, 2020,[2] Plaintiff's leveraged position was liquidated. (Höptner Decl. ¶ 16a.) Prior to this liquidation, Plaintiff alleges that he deposited additional collateral in his account, but that this collateral was not credited to his account in time to avoid the liquidation of his trading position. (FAC ¶ 241.) The FAC also alleges that the HDR Treasury Desk—a risk management team that provides hedging and treasury services as well as market making in certain products (Höptner Decl. ¶ 14)—traded against Plaintiff's open position so as to cause the index price to move downwards, which Plaintiff alleges resulted in his liquidation. (FAC ¶ 243.) Plaintiff also alleges that various false and misleading statements on the BitMEX website induced him to open his account on the platform. (*Id.* at ¶¶ 242, 249.)

Defendants submitted evidence supporting that HDR's sole U.S. subsidiary ABS has had no involvement in preparing the BitMEX Terms of Service or any of the statements that Plaintiff alleges enticed him to trade on the BitMEX platform. (Höptner Decl. ¶¶ 6, 8.) Defendants' evidence also supports that the BitMEX platform is hosted on servers in Ireland and that the HDR teams responsible for various functions relevant to Plaintiff's claims are located outside the United States, including the teams responsible for user deposits (located in Hong Kong, elsewhere in the Asia-Pacific region, and the U.K.), liquidation (based in Hong Kong, Singapore, and New Zealand), customer service (in Bermuda and Germany), and the Treasury Desk (in Asia). (*Id.* at ¶¶ 10–15, 17.)

## REQUESTS FOR JUDICIAL NOTICE

As a preliminary matter, pursuant to Evidence Code § 451, subdivision (a) and Evidence Code § 452, subdivisions (c)-(d), the Court rules on the parties' requests for judicial notice as follows.

The Court **GRANTS** Defendants' requests for judicial notice set forth in their brief. The Court takes judicial notice of the following:

- Plaintiff's original Complaint in this action;

---

[2] Plaintiff's FAC (and his original Complaint) alleges that his position was liquidated "at or about UTC 10:46 AM on March 13, 2020." (FAC ¶ 241; see also Compl. ¶ 160–162.) However, Defendants submitted evidence (both with this Motion and with their original FNC Motion responding to Plaintiff's Complaint) that Plaintiff's position was liquidated one day earlier, at UTC 10:46 on March 12, 2020. (Höptner Decl. ¶ 16a; see also Motion, 10.) Plaintiff does not address Defendants' evidence in his Opposition. Although it does not affect the Court's analysis of this Motion whether Plaintiff's position was liquidated on March 12 or March 13, 2020, the Court credits Defendants' evidence over Plaintiff's allegations as to the timing of Plaintiff's liquidation. (See *Hemmelgarn v. Boeing Co.* (1980) 106 Cal. App. 3d 576, 587 [courts are not required to accept allegations as true in evaluating a *forum non conveniens* motion].)

1    • The BitMEX website; and

2    • Certain flight times between different forums (see Hibbard Decl. ¶ 18).

3    The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's request for judicial notice.

4    The Court takes judicial notice of the following:

5    • Plaintiff's RJN Ex. A (Bail Disposition in *United States v. Hayes*, No. 1:20-cr-0050-JGK

6    (S.D.N.Y.), ECF No. 47); and

7    • Plaintiff's RJN Ex. B (Case Management Statement in *Amato v. HDR Global Trading*

8    *Limited, et al.*, Case No. CGC-19-581267 (S.F. Sup. Ct.), Oct. 14, 2020).

9    <u>**LEGAL STANDARD**</u>

10    "Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to

11    decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action

12    may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744,

13    751.) When a court finds "in the interest of substantial justice an action should be heard in a forum

14    outside this state," it "shall stay or dismiss the action in whole or in part on any conditions that may be

15    just." (Code Civ. Proc. § 410.30(a).)

16    Under the traditional forum non conveniens analysis, the Court must first "determine whether a

17    suitable alternative forum exists." (*Nat. Football League v. Fireman's Fund Insurance Co.* (2013) 216

18    Cal.App.4th 902, 917.) A suitable alternative forum is one where the defendant is subject to jurisdiction

19    (or otherwise stipulates) and the statute of limitations would not bar the plaintiff's case in that forum.

20    (*Stangvik, supra*, 54 Cal.3d at 752, n. 3.)

21    If there is a suitable alternative forum, the Court proceeds to the next step, balancing "the private

22    interests of the parties and the public interest in keeping the case in California." (*Nat. Football League,*

23    *supra*, 216 Cal.App.4th at 917.) These factors must be balanced flexibly, and no single factor should be

24    unduly emphasized. (*Stangvik, supra*, 54 Cal. 3d at 753.) An action should "be dismissed or stayed if a

25    suitable alternative exists and the balance of private and public interest factors weigh in favor of" the

26    litigation proceeding in an alternative forum. (*Hansen v. Owen-Corning Fiberglas Corp.* (1996) 51

27    Cal.App.4th 753, 758.)

28

1   "[T]he defendant, as the moving party, bears the burden of proof" on a motion based on *forum non*

2   *conveniens*. (*Stangvik, supra*, 54 Cal.3d at 751.)  The Court's determination that another forum is suitable

3   and that litigation should proceed there must be supported by evidence. (See *Chong v. Sup. Ct.* (1997) 58

4   Cal.App.4th 1032, 1038 [granting FNC motion where defendant provided evidence of suitability of

5   alternate forum and plaintiff "provides no evidence to support" contrary inference].)  For the purposes of

6   deciding a forum non conveniens motion, courts are not required to accept the allegations in a complaint

7   as true, but rather, "must consider and review all the declarations, papers and data which are submitted in

8   connection with the motion[.]"  (*Hemmelgarn, supra,* 106 Cal.App.3d at 587.[3])  Finally, while the

9   doctrine is discretionary, it is "an abuse of discretion" to hear a case with "an obvious absence of any

10  legitimate interest to be served by a trial in [California]." (*Outboard Marine Corp. v. Sup. Ct.* (1976) 59

11  Cal.App.3d 434, 442.)

12  **DISCUSSION AND ANALYSIS**

13  **I.    Suitable Alternative Forum**

14          "An alternative forum is suitable if it has jurisdiction and the action in that forum will not be

15  barred by the statute of limitations." (*Guimei v. Gen. Electric Co.* (2009) 172 Cal.App.4th 689, 696.)

16  Courts find this requirement satisfied where defendants agree to consent to jurisdiction in the alternative

17  forum and agree not to assert a statute of limitations defense (or to toll the statute of limitations for the

18  pendency of the California action).  (See also *Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1190

19  ["moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the

20  jurisdiction of the alternative forum and to waive any applicable statute of limitations"].)

21          Because all Defendants consent to jurisdiction in England and agree to toll the statute of

22  limitations, the Court finds this factor met.[4]  (See Memorandum of Points and Authorities in Support of

23

24  [3] Although disapproved insofar as *Hemmelgarn* "would require that the court congestion factor always be decided in favor of the plaintiff and against a California corporation which caused injury to consumers anywhere in the world, if the product was manufactured here," *Stangvik* did not challenge *Hemmelgarn*'s

25  holding that a court need not accept allegations as true on a *forum non conveniens* motion. (See *Stangvik, supra*, 54 Cal.3d at 761.)

26  [4] The Court is aware of no authority, and Plaintiff cites none, that requires the Court to ascertain the ability of a defendant to travel to a forum in assessing whether that forum is a suitable forum.

27  Accordingly, the Court need not consider this as a factor in determining the suitability of England as a forum for this dispute.  However, even if the Court were to consider Plaintiff's assertion that Defendant

28  Hayes "cannot freely travel internationally to the U.K.," this argument holds little weight.  First, Plaintiff

5

Defendants' Renewed Motion to Dismiss or Stay on Ground of Inconvenient Forum ["Motion"], 14;

Höptner Decl. ¶¶ 18–19; Declaration of Pavel I. Pogodin, Esq. in Support of Plaintiff's Opposition to

Defendants' Motion to Dismiss or Stay on Grounds of Forum Non Conveniens; Exhibits A-C ["Pogodin

Decl."], Ex. C [Hayes's Response to Special Interrogatory No. 1].)

## II.   Public and Private Interests

### a.   Background Law

Because the Court finds that England is a suitable alternative forum for Plaintiff's claims, "the

next step is to consider the private interests of the litigants and the interests of the public in retaining the

action for trial in California." (*Stangvik, supra,* 54 Cal.3d at 751.) "The public interest factors include

avoidance of overburdening local courts with congested calendars, protecting the interests of potential

jurors so that they are not called upon to decide cases in which the local community has little concern, and

weighing the competing interests of California and the alternate jurisdiction in the litigation." (*Id.*) "The

private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious

and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining the

attendance of witnesses, and the availability of compulsory process for attendance of unwilling

witnesses." (*Id.*)  The interest-factor balancing analysis is guided by the "practical reality" of an action's

ties to California and the alternative forum. (*Nat. Football League, supra,* 216 Cal.App.4th at 922.)

### b.   Application

#### i.   Plaintiff's Choice of Forum

The parties disagree over the level of deference due to Plaintiff's choice of forum.  Relying

primarily on *Ford Motor Co. v. Insurance Co. of North America*, Plaintiff argues that Defendants' burden

is to establish that California is a "seriously inconvenient" forum given the "strong presumption" afforded

to Plaintiff's choice of forum. ((1995) 35 Cal.App.4th 604, 611 ["the plaintiff's choice of forum is

---

has not established any need for Hayes's physical presence in any forum as relates to this action.  Second, there is also no certainty that Hayes would be able to travel to San Francisco for trial.  Plaintiff's suggestion that Hayes would be more likely to be able to attend trial in San Francisco than in England is purely speculative and unsupported by evidence.  (See Plaintiff's RJN Ex. A [permitting Hayes "to reside in Singapore, with pre-approved travel to and from New York"].)  Third, the Court otherwise accords little weight to where Hayes might appear for proceedings in-person since there are not well-pleaded facts or evidence showing that Hayes had any personal involvement with the matters that Plaintiff alleges caused his losses.

entitled to great weight even though the plaintiff is a nonresident…the inquiry is…whether California is a *seriously inconvenient* forum"] [emphasis in original].)  As Defendants assert, a plaintiff's choice of forum "is not given substantial weight[] when, as here, the plaintiff[] [is] not [a] resident[] or citizen[] of the United States." (See Motion, 17 [quoting *Hahn, supra*, 194 Cal.App.4th at 1195].)  Plaintiff's reliance on *Ford* is misplaced, as *Ford* in fact supports Defendants' position that "a foreign, noncitizen plaintiff's choice of forum is entitled to less deference." (*Ford Motor Co., supra*, 35 Cal.App.4th at 611; see also *Stangvik, supra*, 54 Cal.3d at 755 ["Where, however, the plaintiff resides in a foreign country, *Piper* [*Aircraft Co. v. Reyno* (1981) 454 U.S. 235] holds that the plaintiff's choice of forum is much less reasonable and is not entitled to the same preference as a resident of the state where the action is filed."].) "There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned." (*Stangvik, supra*, 54 Cal.3d at 751 [internal quotation omitted].)  Accordingly, Plaintiff here, a United Kingdom citizen and resident (FAC ¶ 21), is entitled to less deference in his choice of California as a forum.

####    ii.    **Public Factors**

#####    A.    **Local Interest in Controversy**

California courts "have little or no interest in litigation involving injuries incurred outside of California by nonresidents." (*Morris v. AGFA Corp* (2006) 144 Cal.App.4th 1452, 1467 [internal quotation omitted].)  Thus, the forum non conveniens doctrine allows California courts to focus on "the interest in trying the case in a forum familiar with the applicable law, and the interest in avoiding unnecessary conflicts of laws." (*Fox Factory, Inc. v. Sup. Ct.* (2017) 11 Cal.App.5th 197, 204 [quoting *Ravelo Monegro v. Rosa* (9th Cir. 2000) 211 F.3d 509, 512].)

This dispute is governed by English law[5], and any injuries sustained by Plaintiff (who is a citizen

---

[5] Plaintiff's Opposition does not contest that English law applies to his claims, all of which assert obligations "arising out of or in connection with the Terms of Service" to which Plaintiff agreed and under which Plaintiff accessed the BitMEX platform. (Hibbard Decl., Ex. B § 16; Höptner Decl. ¶ 8.) However, at the hearing, Plaintiff's counsel argued that Plaintiff's agreement to the BitMEX Terms of Service was procured by fraud and that California law applies. But even if, as Plaintiff claims, he was fraudulently induced by Defendants' advertising to trade on the BitMEX platform and in so doing agree to the Terms of Service, this argument has no effect on the applicability of the Terms of Service's choice-of-law and forum-selection provisions, as Plaintiff does not claim that these provisions were themselves

7

*Wilson-Chalkley v. HDR Global Trading Limited* CGC-20-588042 Order Granting Defendants' Renewed Motion to Dismiss or Stay on Grounds of Inconvenient Forum

and resident of the United Kingdom) occurred in the United Kingdom. Defendants have submitted specific evidence that the sole Defendant with any California presence, ABS, was not involved with any of the operations relevant to Plaintiff's alleged loss.[6] (See Höptner Decl. ¶¶ 6, 8, 10–15, 17.) Plaintiff's citation to allegations in his FAC is insufficient to challenge Defendants' evidence. (*Hemmelgarn*, *supra*, 106 Cal.App.3d at 587 ["If a court were required to accept any allegation made by a plaintiff as true, the likelihood of the motion based on forum non conveniens being granted in that case would be substantially reduced."].) Plaintiff's allegation that Californians use the BitMEX platform in violation of the Terms of Service is similarly insufficient to establish any California interest in this case as Plaintiff does not allege any connection between any such California-based use and Plaintiff's purported loss. The Court finds that California has no substantial interest in this dispute that would weigh in favor of denying Defendants' motion because Plaintiff does not reside here, and because Defendants are being sued for operations that took place abroad. (See Höptner Decl. ¶¶ 10–15, 17.) This factor supports granting the motion.

### B.    Competing Interests of California and England

The Court must also consider the interest of the alternative forum in adjudicating this matter. Where, as here, the alleged harm was incurred in the alternative forum and is governed by the alternative forum's law, that forum—England—has a "substantial interest" in the case. (*Hahn*, 194 Cal.App.4th at 1198.) An English court would be more familiar with the applicable law and would be better suited to adjudicate Plaintiff's claims given that English law governs obligations arising out of BitMEX's Terms of Service. (See *Nat. Football League*, *supra*, 216 Cal.App.4th at 925 [recognizing choice of law as bearing on "suitability" and "convenience" of alternative forum] [citation omitted].) Moreover, English courts have an interest in applying their own law consistently. Even absent the choice-of-law clause, a California court would likely look to English substantive law in this matter, where the alleged injury was incurred by a U.K. citizen residing in England. (See *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 713 ["The circumstances of this case-including the site of the tortious acts and their manifestation, and the

---

obtained through fraud. (See *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1676–1677; *Seidman & Seidman v. Wolfson* (1975) 50 Cal.App.3d 826, 831.)

[6] Plaintiff's allegation that HDR and ABS are a single enterprise (Opp., 19) is immaterial to this analysis, given that the only evidence submitted by the parties shows that the individuals relevant to the dispute at issue here are also outside the U.S. (See Höptner Decl. ¶¶ 10–15, 17.)

8

1  lack of a significant California connection to those events-provide strong reasons to believe that a

2  California court would look to the substantive law of New York."][citations omitted].)  However, the

3  Court need not resolve the choice of law question in granting this motion:  "the fact that a California court

4  would have to 'untangle problems in conflict of law' is itself a basis to apply the doctrine of forum non

5  conveniens."  (*Id.* [quoting *Gulf Oil Corp. v. Gilbert* (1947) 330 U.S. 501, 508].)  This factor favors

6  granting the motion.

### C.    Avoidance of Overburdening Local Courts

8      "[P]reventing court congestion resulting from the trial of foreign causes of action is an important

9  factor in the forum non conveniens analysis."  (*Stangvik, supra,* 54 Cal.3d at 758.)  Given that this Court

10  has determined that there is little or no California interest in this case, it would be "unduly burdensome

11  for California residents to be expected to serve as jurors on a case having so little to do with California."

12  (*Morris, supra,* 144 Cal.App.4th at 1467 [internal quotation omitted].)  "California's interest in the case is

13  not sufficient to justify the commitment of judicial time and resources that would be required if the case

14  were tried here."  (*Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542 [dismissing in

15  favor of Australia, where accident occurred and plaintiffs resided].)

16      Plaintiff argues that this case is related to others filed in this Court, and thus weighs in favor of

17  keeping this action in California.  But Plaintiff has not filed the required notice of related cases to support

18  that contention (see Cal. Rules of Court 3.300(e)), nor does Plaintiff provide the Court with sufficient

19  detail that this case is related to any others, instead indicating only that one case "involved some of the

20  same issues as here" and that another case "involves alleged fraudulent conduct by the same Defendants"

21  and includes "intentional misconduct and fraud."  (Plaintiff's Opposition to Defendants' Motion to

22  Dismiss or Stay on Grounds of Forum Non Conveniens ["Opp."], 20.)  The Court is unpersuaded by

23  Plaintiff's argument that this case is related to others pending in San Francisco courts, but even if it were,

24  the Court does not find that keeping this case in this forum, proceeding before a different judge than the

25  purportedly related cases, would be an efficient use of judicial resources.  This factor weighs in favor of

26  granting the motion.

27  ///

28

9

*Wilson-Chalkley v. HDR Global Trading Limited* CGC-20-588042 Order Granting Defendants' Renewed Motion to Dismiss or Stay on Grounds of Inconvenient Forum

### iii.   Private Factors

#### A.   Ease of Access to Evidence and Witnesses

Although there is one Defendant with an office located in this state, the Court finds that Defendants have overcome the presumption of convenience with evidence that California is a seriously inconvenient forum, and that England is a more convenient place for litigation of this action. (*Stangvik, supra*, 54 Cal. 3d at 756.) First, two of the three Defendants are not California residents. The sole Defendant with any California presence, ABS, was not involved with any of the operations relevant to Plaintiff's alleged loss. (See Höptner Decl. ¶¶ 10–15, 17.) Second, Defendants have provided specific facts about the location of evidence and witnesses relevant to this action—all of which are located abroad. (*Id.*) While Plaintiff disagrees with Defendants on both of these points, he offers nothing more than his allegations in the FAC to substantiate that disagreement. (See Opp., 12–13 [citing FAC ¶¶ 295, 256].) However, "the court is not required to accept any allegation made by a plaintiff as true" on a *forum non conveniens* motion; accordingly, Plaintiff's reliance on his allegations, and only his allegations, is misplaced and insufficient. (*Hemmelgarn, supra,* 106 Cal. App. 3d at 587.)

Plaintiff points to a dozen "third-party data providers" that he alleges have relevant evidence, including companies like Google, Slack, and Amazon Web Services. (Opp., 13.) However, Plaintiff offers no evidence to support his contention that any of these third parties have relevant information. Plaintiff describes categories of *Defendants'* records that he believes that these third parties possess, but the Court is not persuaded that Plaintiff must subpoena these records from the third parties rather than seek them from Defendants directly through available discovery mechanisms. That Plaintiff may nevertheless choose to pursue discovery of Defendants' own documents through non-party subpoenas does not support a finding that he will have easier access to Defendants' evidence if this case were to proceed in California.

Because the Court credits Defendants' evidence that there are no relevant witnesses in California and that the systems and witnesses with information relevant to Plaintiff's claims are located abroad, and in some cases closer to England than to San Francisco, the Court concludes that California is a seriously inconvenient forum. This factor supports granting the motion.

10

**B.      Availability of Compulsory Process for Attendance of Unwilling Witnesses and Enforcement of Judgments**

To the extent that documents and testimony from California witnesses are needed in a proceeding in England, there are available mechanisms for obtaining such evidence for use in trial in England. However, the Court is not persuaded that Plaintiff has identified any relevant witnesses or documents in California that would be required for trial in England, let alone California-based witnesses or documents that would be unavailable to Plaintiff in an English proceeding.  Likewise, the Court finds that English courts are capable of issuing provisional remedies and that, if warranted, Plaintiff could enforce any judgment obtained in an English proceeding.  (See, e.g., CPR Rule 25.1(f)(ii) [authorizing court to grant broad range of interim remedies, including "a 'freezing injunction[]' . . . restraining a party from dealing with any assets whether located within the jurisdiction or not"]; *Crockford's Club Ltd. v. Si-Ahmed* (1988) 203 Cal.App.3d 1402, 1406 [enforcing English judgment in California].)  This renders this factor neutral.

**c.      Conclusion**

Having considered all factors and the totality of the circumstances, the Court finds the public and private interest factors weigh in favor of this action proceeding in England.

**CONCLUSION**

The Court **GRANTS** Defendants' Renewed Motion to Dismiss or Stay on Ground of Inconvenient Forum.  Plaintiff's First Amended Complaint is dismissed.


IT IS SO ORDERED.


Dated: June 28, 2021

_____
ANDREW Y.S. CHENG
Judge of the Superior Court

11

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.260(g))

I, KEITH TOM, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On June 28, 2021, I electronically served the ATTACHED DOCUMENT(S) via File&ServeXpress on the recipients designated on the Transaction Receipt located on the File&ServeXpress website.

Dated:   June 28, 2021

T. Michael Yuen, Clerk

By: _____
KEITH TOM, Deputy Clerk

# EXHIBIT D

F I L E D
Superior Court of California
County of San Francisco

NOV 10 2021

CLERK OF THE COURT
BY: _____
Deputy Clerk

E-SERVICE
67085682
Nov 10 2021
02:55PM
File & ServeXpress

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 613

| | |
|---|---|
| DOMAGOJ ZDILAR,<br><br>Plaintiff,<br><br>v.<br><br>HDR GLOBAL TRADING LIMITED (d/b/a BitMEX); ABS GLOBAL TRADING LIMITED; ARTHUS HAYES; and DOES 1-10,<br><br>Defendants. | Case No. CGC-21-590192<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR STAY ON GROUND OF INCONVENIENT FORUM |

## **INTRODUCTION**

This matter came on regularly for hearing on September 30, 2021 in Department 613, the Honorable Andrew Y.S. Cheng presiding. Pavel I. Pogodin appeared for plaintiff Domagoj Zdilar ("Plaintiff"). Stephen D. Hibbard, Matthew Silveira, Dennis Murphy, and Diana L. Calla appeared for defendants HDR Global Trading Limited ("HDR") and ABS Global Trading Limited ("ABS"). Marshall L. Baker and Jessica H. Ro appeared for defendant Arthur Hayes ("Hayes").[1] Having reviewed and considered the arguments, pleadings, and written submissions of all parties, the Court **GRANTS** Defendants' motion to Dismiss or Stay on Grounds of Inconvenient Forum.

---

[1] HDR, ABS and Hayes are collectively referred to as "Defendants".

1

*Zdilar v. HDR Global Trading Limited.* CGC-21-590192 Order Granting Defendants' Motion to Dismiss or Stay on Ground of Inconvenient Forum

**BACKGROUND**

**I.     PROCEDURAL HISTORY**

On March 9, 2021, Plaintiff filed his Complaint against Defendants. (Compl. at p. 1.) On May 5, 2021, Defendants responded by filing a motion to dismiss or stay on the ground of inconvenient forum. Concurrently, Defendants applied for complex designation. On June 4, 2021, Judge Richard B. Ulmer took the hearing of that fully briefed motion off calendar and found that this case should be designated complex. On June 10, 2021, this case was designated as complex and reassigned to Department 613. On July 23, 2021, the Court continued the motion to dismiss hearing to September 30, 2021.

On September 30, 2021, Plaintiff filed his First Amended Complaint ("FAC"). Although improper and in violation of the Court's June 30, 2021 order, the Court exercised its discretion and permitted the filing of Plaintiff's FAC. The Court considered the FAC as the operative complaint in its analysis. The parties submitted simultaneous seven-page briefs regarding the effect of the FAC on this motion.

**II.     RELEVANT FACTS**

**a.  Plaintiff's Allegations**

Plaintiff is a European Union citizen who currently resides in continental European Union. (FAC ¶ 6.) HDR is a Republic of Seychelles company and is the owner and operator of an online digital asset trading platform called BitMEX. (*Id.* ¶¶ 7, 15; Decl. of Alexander Höptner in Supp. of Defs.' Mot. to Dismiss or Stay on the Ground of Inconvenient Forum ("Höptner Decl.") ¶¶ 3-4.) ABS, HDR's U.S. affiliate, is a Delaware corporation and maintains an office in San Francisco, California. (FAC ¶¶ 23-24; Höptner Decl. ¶ 5.) Hayes is a U.S. citizen who lives in South Florida and one of three co-founders of HDR. (FAC ¶¶ 12, 37.) The FAC asserts twenty common law and statutory claims against Defendants. (*Id.* ¶¶ 83-357.)

Plaintiff became a BitMEX customer when he established an online trading account on October 23, 2018. (*Id.* ¶ 61.) Plaintiff asserts that he was enticed to trade on BitMEX due to Defendants' advertisements which advertised BitMEX as "Bitcoin's most advanced trading platform" with "industry-leading security" and with "0 Bitcoin Lost through Intrusion or Hacking," offering "Next generation of bitcoin trading products" with "1500% more Bitcoin/USD Liquidity than any other platform" and with

"BitMEX's XBRUSD market [being] the most liquid in the world." (*Ibid.*) Plaintiff was presented with BitMEX's written Terms of Service ("Service Agreement") on October 23, 2018. (*Id.* ¶ 63.)

On March 13, 2020, Plaintiff traded on BitMEX and had a short XBTUSD perpetual swap open on BitMEX's platform. (*Id.* ¶ 65.) The position was opened at 12:57 a.m. Central European Time ("CET") with the entry price of $4,400 and the size of the trade as 106 BTC ($465,310). (*Ibid.*) At or about 4:08 p.m. CET, Plaintiff's $465,310 leveraged short XBUSD perpetual swap position on BitMEX. (*Id.* ¶ 66.) Part of Plaintiff's collateral -- 20.1 bitcoins with a present market value of $1,005,000.00—was later confiscated from Plaintiff's account. (*Ibid.*) Plaintiff alleges that the liquidation was wrongful and occurred due to deliberate actions of the Defendants' Insider Trading Desk, which acted based on Plaintiff's highly confidential position information provided to the Defendants' Insider Trading Desk by the BitMEX exchange operated by Defendants in violation of the Service Agreement's Warranty and Representation. (*Ibid.*)

Plaintiff contends that the Service Agreement's Warranty and Representation is materially false because Defendants' Insider Trading Desk was specifically designed and specifically equipped with special automated tools built by BitMEX to trade against Plaintiff using Plaintiff's own confidential information, by manipulating bitcoin and ether prices on "reference" spot exchanges. (*Id.* ¶ 64.) Furthermore, Plaintiff asserts that BitMEX routinely used fraudulent server freezes to prevent Plaintiff and traders like Plaintiff from escaping liquidations. (*Ibid.*) Defendants' Insider Trading Desk was not subject to the server freezes and continued to liquidate BitMEX traders during the freeze times, and thus, received undisclosed access and trading privileges not available to Plaintiff. (*Ibid.*)

Plaintiff alleges that Defendants' BitMEX platform personally represented to Plaintiff that a liquidation price for Plaintiff's short position was $7,584, starting from the opening of the XBTUSD perpetual swap position at 12:57 a.m. CET and until at least 4:32 p.m. CET, or 24 minutes after the alleged liquidation of the short XBTUSD perpetual swap position. (*Id.* ¶ 67.) Plaintiff contends that Defendants' representation of the liquidation price of $7,584 is material because it determined at which price Plaintiff's position was subject to liquidation, and thus, confiscation of Plaintiff's collateral. (*Ibid.*)

Plaintiff also claims that Defendants actively concealed Insider Trading Desk wrongdoing by deliberately making all BitMEX accounts anonymous, deleting critical records, and deliberately using anonymous "burner" email addresses (e.g. @gmail.com) as opposed to "official" BitMEX email addresses (e.g. @bitmex.com) to open trading accounts for their Insider Trading Desk with the BitMEX platform. (*Id.* ¶¶ 52, 80, 157, 184, 336.)

### b. Defendants' Evidentiary Submissions

Defendants submitted a declaration from Alexander Höptner, the CEO for the 100x group of companies, which is held under parent company HDR and includes ABS (Höptner Decl. ¶ 1.) The declaration states that Plaintiff identified himself on the BitMEX platform as a resident of Croatia and that the vast majority of recorded logins have originated from Serbia. (*Id.* ¶ 9.) At the time of Plaintiff's liquidation in March 2020, Plaintiff was accessing the BitMEX platform from Serbia. (*Ibid.*)

The BitMEX Terms of Service govern all access and trading on the BitMEX platform. (*Id.* ¶ 7.) By accessing the BitMEX platform, users acknowledge that they have read and considered and understand the BitMEX Risk Disclosure Statement and Privacy Notice and must also agree unconditionally to be bound by the Terms of Service as may be amended from time to time by HDR without notice. (*Ibid.*) The Terms of Service explicitly prohibit U.S. persons from trading on the BitMEX platform. (*Ibid.*) The Terms of Service state that English law is the governing law for the Terms and any non-contractual obligations arising out of or in connection with them..(Höptner Decl. ¶ 8, Ex. 1, §15; Exs. 2-3, §16.) Since approximately March 5, 2019, the Terms of Service also state that the courts of England have non-exclusive jurisdiction to settle any dispute arising from or connected with the Terms. (*Id.* ¶ 8, Exs. 2-3, §17.)

The BitMEX platform, including the website, application programming interface data and all related code, seed values to verify tokens submitted by users when two-factor authentication is enabled, pretty good privacy encryption keys, user data such as user activity logs, transaction history, wallet balance, margin balance, passwords and user preferences, is all hosed on servers in Ireland. (*Id.* ¶ 10.) The HDR team responsible for the liquidation process consists of employees located in Hong Kong and Singapore and a contractor based in New Zealand. (*Id.* ¶ 11.) HDR has a risk management team that

4

*Zdilar v. HDR Global Trading Limited.* CGC-21-590192 Order Granting Defendants' Motion to Dismiss or Stay on Ground of Inconvenient Forum

provides hedging and treasury services, as well as market making in certain products, which is the "Treasury Desk." (*Ibid.*) The Treasury Desk, which Plaintiff refers to as the "Insider Trading Desk," is based in Asia and is operated through a separate company with its own staff and offices premises, entirely separate and distinct from the business of the trading platform. (*Id.* ¶ 12.)

After opening his account on October 23, 2018, Plaintiff traded regularly from his account until March 15, 2020, when his trading activity ceased. (*Id.* ¶ 13.) HDR's records indicate that Plaintiff's trading was successful during the 17-month period and realized total profits in the sum of 36.9 XBT through March 15, 2020. (*Ibid.*) On March 13, 2020, Plaintiff withdrew 60 XBT from his account prior to the liquidation. (*Ibid.*)

From March 2020 through April 2020, Plaintiff communicated with several HDR customer service representatives regarding his BitMEX account, including in relation to the March 13, 2020 liquidation. (*Id.* ¶ 14.) None of the customer support representatives handling Plaintiff's inquiries were in the United States at the relevant times or are currently in the United States. (*Ibid.*) The customer support representatives were based in Europe at the relevant times. (*Ibid.*)

The Höptner Declaration also discusses the role of ABS, the sole U.S. subsidiary of HDR and a Delaware corporation with an office in California. (*Id.* ¶ 5.) ABS provides system maintenance support, software engineering, and digital security services to HDR on a contractual basis. (*Ibid.*) ABS had no involvement in drafting statements on the BitMEX website that allegedly enticed Plaintiff to trade on the BitMEX platform. (*Id.* ¶ 6.) Moreover, ABS is not, and has never been, involved in preparing the BitMEX Terms of Service, which were drafted and placed on the BitMEX website from outside of California. (*Id.* ¶ 8.) The Terms of Service pre-date ABS's formation. (*Ibid.*)

## JUDICIAL NOTICE

As a preliminary matter, pursuant to Evidence Code § 451, subdivision (a) and Evidence Code § 452, subdivisions (c)-(d), the Court rules on the parties' request for judicial notice as follows.

The Court **GRANTS** Defendants' request for judicial notice set forth in their brief. The Court takes judicial notice of the following:

- The BitMEX website; and

1    • Certain flight times between different forums (*See* Decl. of Stephen D. Hibbard ¶ 18).

2    The Court **GRANTS** Plaintiff's request for judicial notice. The Court takes judicial notice of the

3    following:

4    • Plaintiff's RJN Ex. A (Bail Disposition in *United States v. Hayes*, No. 1:20-cr-00500-JGK,

5    ECF No. 47); and

6    • Plaintiff's RJN Ex. B. (Case Management Statement in *Amato v. HDR Global Trading*

7    *Limited et al.*, Case No. CGC-19-581267 (S.F. Sup. Ct.), Oct. 14, 2020).

8    <u>**EVIDENTIARY OBJECTIONS**</u>

9    Plaintiff's objections to the Declaration of Alexander Höptner are **OVERRULED**.

10    <u>**LEGAL STANDARD**</u>

11    "Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to

12    decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action

13    may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744,

14    751.) When a court finds "in the interest of substantial justice an action should be heard in a forum

15    outside this state," it "shall stay or dismiss the action in whole or in part on any conditions that may be

16    just." (Code Civ. Proc., § 410.30, subd. (a).)

17    Under the traditional forum non conveniens analysis, the Court must first "determine whether a

18    suitable alternative forum exists." (*Nat. Football League v. Fireman's Fund Insurance Co.* (2013) 216

19    Cal.App.4th 902, 917.) A suitable alternative forum is one where the defendant is subject to jurisdiction

20    (or otherwise stipulates) and the statute of limitations would not bar the plaintiff's case in that forum.

21    (*Stangvik, supra*, 54 Cal.3d at p. 752, n. 3.)

22    If there is a suitable alternative forum, the Court proceeds to the next step, balancing "the private

23    interests of the parties and the public interest in keeping the case in California." (*Nat. Football League,*

24    *supra*, 216 Cal.App.4th at p. 917.) These factors must be balanced flexibly, and no single factor should

25    be unduly emphasized. (*Stangvik, supra*, 54 Cal.3d at p. 753.) An action should "be dismissed or stayed

26    if a suitable alternative exists and the balance of private and public interest factors weigh in favor of" the

27    litigation proceeding in an alternative forum. (*Hansen v. Owen-Corning Fiberglas Corp.* (1996) 51

28

6

*Zdilar v. HDR Global Trading Limited.* CGC-21-590192 Order Granting Defendants' Motion to Dismiss or Stay on Ground of Inconvenient Forum

1    Cal.App.4th 753, 758.)

2        "[T]he defendant, as the moving party, bears the burden of proof" on a motion based on *forum non*

3    *conveniens.* (*Stangvik, supra,* 54 Cal.3d at 751.)  The Court's determination that another forum is suitable

4    and that litigation should proceed there must be supported by evidence. (*Chong v. Super. Ct.* (1997) 58

5    Cal.App.4th 1032, 1038 [granting FNC motion where defendant provided evidence of suitability of

6    alternate forum and plaintiff "provides no evidence to support" contrary inference].)  For the purposes of

7    deciding a forum non conveniens motion, courts are not required to accept the allegations in a complaint

8    as true, but rather, "must consider and review all the declarations, papers and data which are submitted in

9    connection with the motion[.]" (*Hemmelgarn v. Boeing Co.* (1980) 106 Cal.App.3d 576, 587.)[2]  Finally,

10   while the doctrine is discretionary, it is "an abuse of discretion" to hear a case with "an obvious absence

11   of any legitimate interest to be served by a trial in [California]." (*Outboard Marine Corp. v. Super. Ct.*

12   (1976) 59 Cal.App.3d 434, 442.)

13                              **DISCUSSION AND ANALYSIS**

14   **I.    SUITABLE ALTERNATIVE FORUM**

15        "An alternative forum is suitable if it has jurisdiction and the action in that forum will not be

16   barred by the statute of limitations." (*Guimei v. Gen. Electric Co.* (2009) 172 Cal.App.4th 689, 696.)

17   Courts find this requirement satisfied where defendants agree to consent to jurisdiction in the alternative

18   forum and agree not to assert a statute of limitations defense (or to toll the statute of limitations for the

19   pendency of the California action).  (See also *Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1190

20   ["moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the

21   jurisdiction of the alternative forum and to waive any applicable statute of limitations"].)  Because all

22   Defendants consent to jurisdiction in England and agree to toll the statute of limitations, the Court finds

23   this factor met.[3] (*See* Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss or Stay on Ground of

24   Inconvenient Forum ("Motion") at p. 14; Höptner Decl. ¶¶ 24-25.)

25   _____

26   [2] Although disapproved insofar as *Hemmelgarn* "would require that the court congestion factor always be
     decided in favor of the plaintiff and against a California corporation which caused injury to consumers

27   anywhere in the world, if the product was manufactured here," *Stangvik* did not challenge *Hemmelgarn's*
     holding that a court need not accept allegations as true on a *forum non conveniens* motion. (*See Stangvik,*
     *supra,* 54 Cal.3d at p. 761.)

28   [3] The Court is aware of no authority, and Plaintiff cites none, that requires the Court to ascertain the

                                              7

## II.    PRIVATE AND PUBLIC INTERESTS

### a.    Background Law

The second step in the *forum non conveniens* analysis is the balancing of the private interests of the parties and the public interest in keeping the case in California. (*NFL*, *supra*, 216 Cal.App.4th at p. 917.) "The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses." (*Stangvik*, *supra*, 54 Cal.3d at p. 751.) "A case-by-case examination of the parties, their dispute and the relationship of each to the state of California is the heart of the required analysis." (*NFL*, *supra*, 216 Cal.App.4th at p. 921.) "The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation." (*Stangvik*, *supra*, 54 Cal.3d at p. 751.)

### b.    Application

#### i.    Plaintiff's Choice of Forum

The parties disagree over the level of deference due to Plaintiff's choice of forum.

Plaintiff asserts that a plaintiff's choice of forum is entitled to great weight even if the plaintiff is a non-resident of California. (*Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, 760, citing *Ford Motor Co v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 610-11 ["Case law adheres to the principles that the plaintiff's choice of forum is entitled to great weight even though the plaintiff is a nonresident. [U]nless the balance is strongly in favor of the defendant, the plaintiff's choice

---

ability of a defendant to travel to a forum in assessing whether that forum is a suitable alternative. Accordingly, the Court need not consider this as a factor in determining the suitability of England as a forum for this dispute. However, even if the Court were to consider Plaintiff's assertion that Defendant Hayes "cannot freely travel internationally to the U.K.," this argument holds little weight. First, Plaintiff has not established any need for Hayes's physical presence in any forum as relates to this action. Second, there is also no certainty that Hayes would be able to travel to San Francisco for trial. Plaintiff's suggestion that Hayes would be more likely to be able to attend trial in San Francisco than in England is purely speculative and unsupported by evidence. (*See* Plaintiff's RJN Ex. A [permitting Hayes "to reside in Singapore, with pre-approved travel to and from New York"].)  Third, the Court otherwise accords little weight to where Hayes might appear for proceedings in-person since there are not well-pleaded facts or evidence showing that Hayes had any personal involvement with the matters that Plaintiff alleges caused his loss.

of forum should rarely be disturbed"]; *Ford Motor Co.*, 35 Cal.App.4th at p. 610 ["it remains the case in this state that the plaintiff's choice of forum is entitled to great weight even though the plaintiff is a nonresident"]; *Brown v. Clorox Co.* (1976) 56 Cal.App.3d 306, 311 ["It is recognized that a plaintiff's choice of forum should not be disturbed except for weighty reasons"].)

However, as Defendants assert, a plaintiff's choice of forum "is not given substantial weight[] when, as here, the plaintiff[] [is] not a resident[] or citizen[] of the United States." (*See* Motion at p. 16 [quoting *Hahn, supra*, 194 Cal.App.4th at p. 1195].) Plaintiff's reliance on *Hansen, Ford,* and *Brown* is misplaced. *Ford* supports Defendants' position that "a foreign, noncitizen plaintiff's choice of forum is entitled to less deference." (*Ford, supra*, 35 Cal.App.4th at p. 611; see also *Stangvik, supra*, 54 Cal.3d at p. 755 ["Where, however, the plaintiff resides in a foreign country, *Piper* [*Aircraft Co. v. Reyno* (1981) 454 U.S. 235] holds that the plaintiff's choice of forum is much less reasonable and is not entitled to the same preference as a resident of the state where the action is filed"].)  "There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned."  (*Stangvik, supra*, 54 Cal.3d at 751 [internal quotation omitted].)

*Brown* is distinguishable.  In *Brown*, the case involved a stay rather than a dismissal and a nonresident plaintiff and resident defendants. (*Brown, supra*, 56 Cal.App.3d at p. 310.) The Court recognized that the mere fact of a defendant's incorporation in the forum state does not give that state any real connection with the controversy as to require that state to retain jurisdiction. (*Id.* at p. 311.)  It determined that there was more than a tenuous connection between the defendants and their business activity and the state. (*Id.* at p. 312.)  Here, Defendants are not California residents with more than a tenuous connection to California.  HDR, the owner of the BitMEX platform and the service provider to Plaintiff under the Terms of Service, is incorporated and located abroad. (Höptner Decl. ¶¶ 3-4.)  Hayes, who is not alleged to have had any substantive role in Plaintiff's alleged losses, resides in South Florida and has never lived in California. (Motion, at p. 17; FAC ¶ 37.)  ABS has an office in California, but the relevant evidence is located abroad. (*Id.* at p. 17-18.)

1    Plaintiff, a European Union citizen who resides in Europe, is entitled to less deference in his

2    choice of California as a forum.

3           ii.   Public Factors

4               1.   *Local Interest in Controversy*

5    California courts "have little or no interest in litigation involving injuries incurred outside of

6    California by nonresidents." (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1467 [internal

7    quotation omitted].) Thus, the *forum non conveniens* doctrine allows California courts to focus on "the

8    interest in trying the case in a forum familiar with the applicable law, and the interest in avoiding

9    unnecessary conflicts of laws." (*Fox Factory, Inc. v. Super. Ct.* (2017) 11 Cal.App.5th 197, 204 [quoting

10   *Ravelo Monegro v. Rosa* (9th Cir. 2000) 211 F.3d 509, 512].)

11          This dispute is governed by English law,[4] and any injuries sustained by Plaintiff occurred in

12   Serbia. (*See* Höptner Decl. ¶¶ 1, 9.) Defendants have submitted specific evidence that ABS, the sole

13   Defendant with any California presence, was not involved with any of the operations relevant to

14   Plaintiff's alleged loss[5]. (*Id.* ¶¶ 5-6, 8.) Plaintiff's citation to allegations in his FAC is insufficient to

15   challenge Defendants' evidence. (*Hemmelgarn, supra*, 106 Cal.App.3d at p. 587 ["If a court were

16   required to accept any allegation made by a plaintiff as true, the likelihood of the motion based on forum

17   non conveniens being granted in that case would be substantially reduced."].) Plaintiff's allegation that

18   Californians use the BitMEX platform in violation of the Terms of Service is similarly insufficient to

19   establish any California interest in this case as Plaintiff does not allege any connection between any such

20   California-based use and Plaintiff's purported loss. The Court finds that California has no substantial

21   interest in this dispute that would weigh in favor of denying Defendants' motion because Plaintiff does

22   not reside here, and Defendants are being sued for operations that took place abroad. (*See* Höptner Decl.

23   ¶¶ 6-8, 10-12, 14-19.) This factor weighs in favor of granting the motion.

24               2.   *Competing Interests of California and England*

25   ───────────────────

26   [4] Plaintiff's Opposition does not contest that English law applies to his claims, all of which assert
     obligations "arising out of or in connection with the Terms of Service" to which Plaintiff agreed and
     under which Plaintiff accessed the BitMEX platform. (Höptner Decl. ¶ 7, Exs. 1-3, §7.)

27   [5] Plaintiff's allegation that HDR and ABS are a single enterprise (Opp., at p. 19-20) is immaterial to this
     analysis, given that the only evidence submitted by the parties shows that the individuals relevant to the

28   dispute at issue here are outside the U.S. (*See* Höptner Decl.¶¶ 8, 11-12, 14.)

10

*Zdilar v. HDR Global Trading Limited.* CGC-21-590192 Order Granting Defendants' Motion to Dismiss or Stay on Ground of
Inconvenient Forum

The Court must also consider the interest of the alternative forum in adjudicating this matter. Where, as here, the alleged harm is governed by the alternative forum's law, that forum—England—has a "substantial interest" in the case. (*Hahn, supra*, 194 Cal.App.4th at p. 1198.) An English court would naturally be more familiar with the applicable law and would be better suited to adjudicate Plaintiff's claims given that English law governs obligations arising out of BitMEX's Terms of Service. (*See Nat. Football League, supra*, 216 Cal.App.4th at p. 925 [recognizing choice of law as bearing on "suitability" and "convenience" of alternative forum] [citation omitted].) Even absent the choice-of-law clause, a California court would likely not look to California substantive law in this matter, where the alleged injury was incurred by a European Union citizen residing in continental European Union and the events took place outside of California. (*See Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 713 ["The circumstances of this case—including the site of the tortious acts and their manifestation, and the lack of a significant California connection to those events—provide strong reasons to believe that a California court would look to the substantive law of New York"][citations omitted].) However, the Court need not even resolve the choice of law question in granting this motion: "the fact that a California court would have to 'untangle problems in conflict of law' is itself a basis to apply the doctrine of forum non conveniens." (*Id.* [quoting *Gulf Oil Corp. v. Gilbert* (1947) 330 U.S. 501, 508].) This factor weighs in favor of granting the motion.

### 3. *Avoidance of Overburdening Local Courts*

"[P]reventing court congestion resulting from the trial of foreign causes of action is an important factor in the forum non conveniens analysis." (*Stangvik, supra*, 54 Cal.3d at p. 758.) Given that this Court has determined that there is little or no California interest in this case, it would be "unduly burdensome for California residents to be expected to serve as jurors on a case having so little to do with California." (*Morris, supra*, 144 Cal.App.4th at p. 1467 [internal quotation omitted].) "California's interest in the case is not sufficient to justify the commitment of judicial time and resources that would be required if the case were tried here." (*Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542 [dismissing in favor of Australia, where accident occurred and plaintiffs resided].)

Plaintiff contends that this case is related to others filed in this Court, which weighs in favor of

11

*Zdilar v. HDR Global Trading Limited.* CGC-21-590192 Order Granting Defendants' Motion to Dismiss or Stay on Ground of Inconvenient Forum

keeping this action in California. (Plaintiff's Opposition to Defendants' Motion to Dismiss or Stay on Ground of Inconvenient Forum ("Opp.") at p. 20.) However, Plaintiff did not file the required notice of related cases to support that contention. (*See* Cal. Rules of Court 3.300(e).) Moreover, Plaintiff does not provide the Court with sufficient details that this case is related to any others and instead only indicates that one case involves "some of the same issues as here" and another case "also involves alleged fraudulent conduct by the same Defendants and has a substantial issue overlap (e.g. intentional misconduct and fraud)." (Opp. at p. 21.)

The Court is unpersuaded that this case is related to others pending in San Francisco courts. Even assuming *arguendo* that it were, the Court does not find that keeping this case in this forum and proceeding before a different judge than the purportedly related cases would be an efficient use of judicial resources. This factor weighs in favor of granting the motion.

### iii. Private Factors

#### 1. *Ease of Access to Evidence and Witnesses*

Although there is one Defendant with an office located in this state, the Court finds that Defendants have overcome the presumption of convenience with evidence that California is a seriously inconvenient forum, and that England is a more convenient place for litigation of this action. (*Stangvik, supra*, 54 Cal.3d at p. 756.) First, two of the three Defendants are not California residents. The sole Defendant with any California presence, ABS, was not involved with any of the operations relevant to Plaintiff's alleged loss. (*See*, e.g., Höptner Decl. ¶¶ 5-6, 8.) Second, Defendants have provided specific facts about the location of evidence and witnesses relevant to this action—all of which are located abroad. (Höptner Decl. ¶¶ 8, 11-12, 14.) While Plaintiff disagrees with Defendants on both points, Plaintiff offers nothing more than his allegations in the FAC to substantiate that disagreement. However, "the court [is not] required to accept any allegation made by a plaintiff as true" on a *forum non conveniens* motion; accordingly, Plaintiff's reliance on his allegations, and only his allegations, is misplaced and insufficient. (*Hemmelgarn, supra*, 106 Cal.App.3d at p. 587.)

Plaintiff points to third party "data storage providers" that he asserts have relevant evidence, including companies like Google, Slack, and ProofPoint Inc. (Opp. at p. 4, 13.) However, Plaintiff offers

no evidence to support his contention that any of these third parties have relevant information. Plaintiff describes categories of *Defendants'* records that he believes these third parties possess, but the Court is not persuaded that Plaintiff must subpoena these records from the third parties rather than seek them from Defendants directly through available discovery mechanisms. Plaintiff's decision to pursue discovery of Defendants' own documents through non-party subpoenas does not support a finding that Plaintiff will have easier access to Defendants' evidence if this case were to proceed in California.

Likewise, Plaintiff's evidence bearing on the alleged fraud and improper liquidation is in Europe where Plaintiff resides and has accessed BitMEX. (FAC ¶¶ 6, 61, 63, 65-67.) Because the Court credits Defendants' evidence that there are no material witnesses in California and that the systems and witnesses with information relevant to Plaintiff's claims are located abroad, and in some cases closer to England than to San Francisco, the Court concludes that California is a seriously inconvenient forum. This factor supports granting the motion.

Plaintiff argues that there are relevant witnesses located in California by referencing Hayes's statement in other litigation that services provided by ABS to HDR include software development and developing the front-end interface of the BitMEX platform. (Opp. at p. 13.) However, Plaintiff does not offer any evidence to rebut Defendants' evidence that there are no documents or witnesses in California related to Plaintiff's claims. (*See* Höptner Decl. ¶¶ 5-6, 8.) Plaintiff also submits a "Witness List" that purportedly identifies relevant witnesses in California. Plaintiff claims that the California witnesses will testify about the operation and reliability of BitMEX's front-end interface. Yet, Plaintiff, again, provides no basis for his allegation that these witnesses have specific knowledge about Plaintiff's claims.

Furthermore, Plaintiff offers no evidence corroborating his "Witness List," and does not provide any explanation or identify any allegations showing the relevance of those individuals to Plaintiff's claim. The witnesses are likely irrelevant as Plaintiff has not disputed that he moved his trading position to 100x shortly before the liquidation and that he had a problem with his browser cache. (*See* Höptner Decl., Exs. 4-7.) Most importantly, Plaintiff has not denied that he assumed the risk of using the platform in a browser environment outside of Defendants' control under the Terms of Service that he "accept[ed]." (FAC ¶ 126; Höptner Decl. ¶ 7; Exs. 1-3, §7.) "[T]he court is not required to accept any allegation made

13

by a plaintiff as true" on a *forum non conveniens* motion; thus, Plaintiff's reliance on his allegations, and only his allegations, is misplaced and insufficient. (*Hemmelgarn, supra*, 106 Cal.App.3d at p. 587.) As a result, Plaintiff's "mere conclusions" here are rejected. (*Baird v. Smith* (1937) 21 Cal.App.2d 221, 223; *Chong, supra*, 58 Cal.App.4th at p. 1038 [granting FNC motion where defendant provided evidence of suitability of alternate forum and plaintiff "provides no evidence to support" contrary inference].)

        2.  *Availability of Compulsory Process for Attendance of Unwilling Witnesses and Enforcement of Judgments*

To the extent that documents and testimony from California witnesses are needed in a proceeding in England, there are available mechanisms for obtaining such evidence for use in trial in England. The Court is unconvinced that Plaintiff has identified any relevant witnesses or documents in California that would be required for trial in England, let alone California-based witnesses or documents that would be unavailable to Plaintiff in an English proceeding. Likewise, the Court finds that English courts are capable of issuing provisional remedies and that, if warranted, Plaintiff could enforce any judgment obtained in an English proceeding. (*See, e.g.*, CPR Rule 25.1(f)(ii) [authorizing court to grant broad range of interim remedies, including "a 'freezing injunction[]' . . . restraining a party from dealing with any assets whether located within the jurisdiction or not"]; *Crockford's Club Ltd. v. Si-Ahmed* (1988) 203 Cal.App.3d 1402, 1406 [enforcing English judgment in California].) This factor is neutral.

## **CONCLUSION**

Having considered all factors and the totality of the circumstances, the Court finds the public and private interest factors weigh in favor of this action's proceeding in England. The Court **GRANTS** Defendants' Motion to Dismiss or Stay on Ground of Inconvenient Forum. Plaintiff's FAC is dismissed.

IT IS SO ORDERED.

Dated: November 10, 2021

                                 ANDREW Y.S. CHENG
                                 Judge of the Superior Court

14

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.251)


I, CLARK BANAYAD, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On November 10, 2021, I electronically served the ATTACHED DOCUMENT(S) via File&ServeXpress on the recipients designated on the Transaction Receipt located on the File&ServeXpress website.


Dated:  November 10, 2021


T. Michael Yuen, Clerk

By: _____

CLARK BANAYAD, Deputy Clerk

# EXHIBIT E



**Pavel Pogodin, Esq.** @ppogodin · Nov 24

#BitMEX just lost their frivolous appeal of adverse jurisdictional ruling in California.  Fraudsters can be sued in California courts, which are very plaintiff-friendly.  Hunting season is open!  If you sustained losses on #BitMEX, DM me!



**JoyBangla** @Joy_Bangla_1979 · Nov 24

Replying to @ppogodin

What happened? May you enlighten the non-lawyer followers of yours?

**Pavel Pogodin, Esq.** @ppogodin · Nov 24

#BitMEX just lost their frivolous appeal of adverse jurisdictional ruling in California.  Fraudsters can be sued in California courts, which are very plaintiff-friendly.  Hunting season is open!

# EXHIBIT F

BitMEX (/app/)    Trade (/app/trade/XBTUSD)    Buy Crypto NEW (/buy-crypto)    Earn NEW (/earn)    Information    Support (/app/support/contact)    (/login)    Log In    Register

# Trading on BitMEX

At first, our documentation section may seem daunting as derivatives trading has a lot of depth. While it's easy to get started and make your first trades, there is much to learn.

- Overview of BitMEX
  - Where To Start?
- Trading Overview
  - BitMEX Contracts
  - Margin Trading
  - What's Next?

## Overview of BitMEX

- BitMEX is a Peer-to-Peer Trading Platform that offers leveraged contracts that are bought and sold in cryptocurrency.
- BitMEX handles cryptocurrency. BitMEX does not handle fiat currency.
- BitMEX allows trading with a high amount of leverage.

There are 5 main navigation tabs of BitMEX:

- **Trade (/app/trade/XBTUSD):** The trading dashboard of BitMEX. Here you can select the instrument you wish to trade, select leverage, place and cancel orders, view important information in the contract details and see your position information.
- **Account (/app/wallet):** This tab displays all your account information such as current Available Margin Balances, Deposit (/app/deposit/xbt) and Withdrawal (/app/withdraw/xbt) information, Trade History (/app/tradeHistory) and Affiliate (/affiliates) information.
- **Contracts (/app/perpetualContractsGuide):** This is an important tab for information related to the instruments such as the Funding History (/app/fundingHistory), minimum contract sizes, leverage offered, expiry, Funding (/app/perpetualContractsGuide#funding), underlying reference Price Index data, Settlement History (/app/settlementHistory) and a few other pages relevant for a trader.
- **References (/app/tradingOverview):** This is the education corner of BitMEX. Here you can learn about Futures (/app/futuresGuide), Perpetual Contracts (/app/perpetualContractsGuide), how BitMEX indices (/app/indices) are calculated, how positions are Marked (/app/fairPriceMarking), when and how Liquidation (/app/liquidation) occurs, BitMEX Fees (/app/fees), Support (/sso/freshdesk) and other informative material to help you understand the Exchange.
- **API (/app/apiOverview):** Here you will be able to find out information pertaining to developing and maintaining an API connection with BitMEX. We offer a fully featured REST API (/app/restAPI) and a powerful streaming WebSocket API (/app/wsAPI).

## Where To Start?

- The first step is to read through the **References Tab (/app/tradingOverview)** and go through the terms and pages on the left. The Exchange Guide (/app/exchangeGuide) is also a good introduction to placing orders and PNL calculation.

We recommend the following should be read through in detail:

- **Perpetual Contracts Guide (/app/perpetualContractsGuide):** XBTUSD is our most popular product and is a Perpetual Contract. We encourage all new users to read over the Perpetual Contracts Guide to understand key concepts such as the mechanics of Perpetual Contracts markets and funding.
- **Futures Guide (/app/futuresGuide):** Some of our other products are in the form of a Futures Contract. This guide will help explain the mechanics of futures markets such as basis.
- **Auto Deleveraging (/app/autoDeleveraging):** This page is important as it determines what happens to an opposite trader's position if another trader's position cannot be liquidated in the current market.
- **Fair Price Marking (/app/fairPriceMarking):** This page explains how your positions are marked and is important for all users, especially if you are using leverage as this determines your liquidation prices.
- **Liquidation (/app/liquidation):** This page explains how a position is liquidated and all traders should understand this page.
- **Risk Limits (/app/riskLimits):** This page describes how much leverage you can use at particular position sizes.

## Trading Overview

- Trading on BitMEX may be a new experience for some users given the products and product types. To see the main differences between BitMEX and other competitors please click here (/app/whatsDifferent).
- Traders should be aware of the Margin Terminology (/app/marginTermReference) used on BitMEX.
- For the type of orders you can place on BitMEX please see our Order Type FAQ (/app/orderTypeFAQ).

**BitMEX Contracts**

- BitMEX offers Perpetual Contracts (/app/perpetualContractsGuide) and Futures (/app/futuresGuide).
  - As opposed to futures, perpetual contracts do not have an expiry date and thus do not have a settlement.
  - Perpetual Contracts have a Funding Rate (/app/perpetualContractsGuide#funding) that occurs every 8 hours. Users who hold a position over the funding timestamp either pay or receive funding.
  - When a futures contract settles, all users who hold a position are settled at the contract's settlement price.
- You can go long or short on these contracts by simply buying or selling them. You can sell even if you don't hold any contracts, making BitMEX a valuable tool for shorting purposes.

**Margin Trading**

- BitMEX offers up to 100x leverage on some of its products. This means that you can buy as much as 100 Bitcoin of contracts with only 1 Bitcoin to back it. But be careful - with high leverage comes accelerated profit, but also the potential for accelerated loss (/app/liquidation).
- BitMEX employs Auto Deleveraging (/app/autoDeleveraging) which means that in some rare cases, leveraged positions in profit may be reduced during certain time periods if a liquidated order cannot be executed in the market.

**What's Next?**

- We encourage new users who are unfamiliar with trading to practice placing, executing and cancelling orders of various order types and sizes on our sandbox testing exchange, testnet.BitMEX.com (https://testnet.bitmex.com/). You can sign up with a new account, deposit some testnet cryptocurrency, and interact with a test market that looks and feels exactly like the real thing.
- Take a look over the FAQ (/app/faq) for more basic information.
- If you need more help, come back here to check the references or contact us directly via the chatbox below right. Someone from BitMEX is almost always online, and if not, there are many helpful users.



BitMEX is a P2P crypto-products trading platform.

BitMEX and the mobile apps issued under BMEX are wholly owned and operated by HDR Global Trading Limited, a Republic of Seychelles incorporated entity or its relevant authorised affiliates.

Trading in cryptocurrency derivatives involves significant risks. Please consider whether using BitMEX is appropriate for you.

US Persons are prohibited from accessing the services of the BitMEX trading platform. (https://www.bitmex.com/us-person-definition)

Cryptocurrency charts by TradingView. (https://www.tradingview.com/ideas/cryptocurrency/)

## About

Our Story (/app/aboutUs)
Partners (/partners)
Affiliate Program (/affiliates)
Careers (/careers)
Mobile (/mobile)
Security (/security)
About 100x (https://100x.group)
BitMEX Academy (https://academy.bitmex.com)

## References

API (/app/apiOverview)
Fees (/app/fees)
Futures Guide (/app/futuresGuide)
Perpetuals Guide (/app/perpetualContractsGuide)
Trading on BitMEX (/app/tradingOverview)

## Contact Us

Contact (/app/support/contact)
FAQ (/app/faq)
Knowledge Base (https://support.bitmex.com/support/home)
PGP Communication (/technical-contact)

## Legal

Affiliate Program Terms (/affiliate-terms)
Privacy Notice (https://www.bitmex.com/privacy-notice)
Risk Disclosure (https://www.bitmex.com/risk-disclosure)
Terms of Service (https://www.bitmex.com/terms)
Exchange Rules (/exchange-rules)
Restricted Jurisdiction Policy (/restricted-jurisdiction-policy)
Compliance Statement (/compliance)

## Community

Blog (https://blog.bitmex.com/)
Reddit (https://www.reddit.com/r/BitMEX/)
Telegram (https://t.me/BitMEX_Announcements)
Twitter (https://twitter.com/bitmex)
YouTube (https://www.youtube.com/channel/UCQ9eXM9P9-f93eeRImPcpUA)